23- they decide that shrimping is what their going to do.

April 23 at 6:52pm via Farm Town · Comment · Like · Visit Jodi's Farm

**Jodi Arnett Vaughan** I had forgotten just how moist my strawberry cake is, it has dehydrated strawberries that I done from last years crop, pureed strawberries and strawberry slices ...mmmmm...moist
April 23 at 1:41pm · Comment · Like

Dolores Gates Sullivan and 4 others like this.

View all 7 comments

**Sandra Figueroa** Yummy!!! I'm still not over my bro's white Choc cake, lol! Ur the best!
April 23 at 2:58pm

**Jo Peyregne-Lollar** Do you have a recipe for banana cake? With a cream cheese icing?
April 24 at 10:09am

Write a comment...

**Jodi Arnett Vaughan** I want to start a competition here in the bayou for everyone in the local states anyone have any idea how to accomplish this?
April 23 at 12:27pm · Comment · Like

View all 13 comments

**Jodi Arnett Vaughan** yes Ices and I just shot the lady in charge last year an email but I dont even know if the email addy still works or not
April 23 at 7:29pm

**Mindy Hunt Hatfield** Ices day of sharing for 2011 is in NC, I do not see anything on the website for Duala
April 23 at 7:32pm

Write a comment...

Posting

**Jodi Arnett Vaughan** Well the decision has been made...we are running the boat this summer and I can't wait
April 23 at 12:15pm · Comment · Like

Dolores Gates Sullivan likes this.

**Charlene Knight Grable** good.... we are gonna need some shrimps!!! YUMMM!!!! =)
April 23 at 6:20pm

Write a comment...

RECENT ACTIVITY

Jodi commented on Janie Daugherty's photo.

Jodi wrote on Kristy Wells Seaman's Wall.

4 more similar stories

Jodi and Kids Kottage are now friends. · Comment · Like · Add as Friend

Jodi likes Pete's Party Castle. · Like

Jodi and Vallorie Garcia are now friends. · Comment · Like · Add as Friend

**Jodi Arnett Vaughan** Well we are on our way home, they didnt find anything wrong except a little gastritis. They also took out her piccline! Proof that prayer works! Thanks everyone
April 22 at 11:46am via Mobile Web · Comment · Like

Dolores Gates Sullivan and 7 others like this.

**Anna Sullivan** God is so good.
April 22 at 12:23pm

**Kista McGallagher** Yay for taking out the PICC
April 22 at 12:45pm

**Alison Douglas Mayfield** Yay! It was so good seeing you guys this morning!

1125972

Facebook | Perry Vaughan

Search

Home  Profile  Account



**Perry Vaughan**

Wall  Info  Photos

*Handwritten note:* 4/23- Lynn Post on FB that he's taking over family business

Write something...

Attach

Share

Filters

**RECENT ACTIVITY**

Perry commented on Peggy Bowman Duell's status.

Perry listed Andrea Adka Balcalova as his daughter. · Comment · Like

Perry and Amy Bates Bender are now friends. · Comment · Like · Add a Friend

Perry and Mary Lou Metcalf are now friends. · Comment · Like

2 more similar stories

**Jessica Pelletier** It was awesome talking to you also. I am glad to hear that your daughter is doing better and that you are going to take over the family business and do what you love to do.

And no there is no peeing on the vampire lounge. Its just blood.

And as you said earlier. See you in the world of vampires.
April 23 at 10:03pm · Comment · Like · See Wall-to-Wall

*Handwritten note:* Reply

**Perry Vaughan**



Perry is movin' up in Zombie Farm!
Perry attained level 18 in Zombie Farm!
check out: Zombie Farm

April 23 at 9:54pm via Zombie Farm · Comment · Like

**RECENT ACTIVITY**

Perry and Jessica Pelletier are now friends. · Comment · Like

Perry joined the group Alba Class of 95...15 Year Reunion Page · Comment · Like · Join this Group

Perry joined the group Jodi's Cakes and Treats. · Comment · Like · Join this Group

Perry and Linda Arnett are now friends. · Comment · Like · Add as Friend

Perry and Janie Daugherty are now friends. · Comment · Like · Add as Friend

2 more similar stories

**Perry Vaughan**



Perry is movin' up in Zombie Farm!
Perry attained level 17 in Zombie Farm!
check out: Zombie Farm

April 9 at 10:17pm via Zombie Farm · Comment · Like

**Debra Gibson**



I just had a playdate with your pet, bounce, on SuperPoke! Pets!
I visited the home you picked out for bounce and my pet, Pipper is hoping to get visitors too!

April 9 at 3:43pm via SuperPoke! Pets · Comment · Like · See Wall-to-Wall · Visit Debra's Pet

**Debra Gibson**

New Gift!



Debra just gave a gift to Perry on SuperPoke! Pets!
Sending a gift back to Debra on SuperPoke! Pets is a great way to show herself and her pet, Pipper that you care!

April 4 at 10:34am via SuperPoke! Pets · Comment · Like · See Wall-to-Wall · Give a gift back

**View Photos of Perry (1)**

Send Perry a Message

Poke Perry

**Information**

Relationship Status:
Married to
Jodi Arnett Vaughan

Children:
Carla Jay Arnett- Vaughan
Andrea Adka Balcalova

Birthday:
July 24, 1977

Current City:
Mobile, AL.

**Mutual Friends**
5 friends in common    See All

  

Debra          Destiny        Mary Lou
Gibson         LeAnn          Metcalf
               Vaughan

**Friends**
75 friends    See All

  

Renie Baya    Kelly Slate    Kevin Ross

  

Linda         Josette        Kenneth
Arnett        Vigée-         Higgins
              Lebrun

**Vampire Wars**

Create an Ad

TheClassOf1974 .co



Look Up pictures from your high school class at TheClassOf1974.com. Reconnect with friends from high school today.

Like

**Fun knitting T-shirts**

**Matter is Matting**



Love Knitting? Tell the world with fun teas, stickers and more. Tons of unique designs - one at CafePress.

Like

**Black River Imaging**

We start new love affairs with our professional photographers every day. Visit our page to see why we're so likable.

Like

More Ads

1125972

## Hi Question

**From:** **Linda Burton Vaughan** (lvaughan26@hotmail.com)
**Sent:** Sat 5/01/10 4:42 PM
**To:** Linda Burton Vaughan (lvaughan26@hotmail.com)

*4/24 wanted meeting with Lynn: Jodi on Boat*

From: lvaughan26@hotmail.com
To: kingmufosa@yahoo.com
Subject: RE: Hi Question
Date: Sun, 25 Apr 2010 02:35:55 -0400

OK;) about what time and where should we meet???

Date: Sat, 24 Apr 2010 22:54:43 -0700
From: kingmufosa@yahoo.com
Subject: Re: Hi Question
To: lvaughan26@hotmail.com

Tomorrow night is fine. When we get back.

On Apr 25, 2010, at 12:17 AM, Linda Burton Vaughan <lvaughan26@hotmail.com> wrote:

It doesn't hav e to be tomorrow:) anytime next week is fine — what night is best for your guys??? are you ok with this??
Love ya Linda

Date: Sat, 24 Apr 2010 20:32:17 -0700
From: kingmufosa@yahoo.com
Subject: Re: Hi Question
To: lvaughan26@hotmail.com

You want to keep it the three of us. But we are going to the scotland high games tomorrow in Pensacola when we get back we can meet.

On Apr 24, 2010, at 10:13 PM, Linda Burton Vaughan <lvaughan26@hotmail.com> wrote:
Hey you two:) I want to take you two out to dinner and talk about the boat.

I want it to just be the 3 of us. Nothing bad:) just want to make sure we're all on the same page:) DON'T READ ANYTHING INTO THIS - other then I just want to talk:) OK:)

Are you OK with this and not including Perry?

If you are just let me know what night is best, what time and where to be.  I'll meet you there.

Love ya Linda

**11Z5972**

Hotmail is redefining busy with tools for the New Busy. Get more from your inbox. See how.

## FW: Hey

From: **Linda Burton Vaughan** (lvaughan26@hotmail.com)
Sent: Sat 5/01/10 4:30 PM
To:    Linda Burton Vaughan (lvaughan26@hotmail.com); Lynn Bitner Lester (lynnandchris@yahoo.com)

Date: Thu, 29 Apr 2010 15:54:27 -0700
From: kingmufosa@yahoo.com
Subject: Re: Hey
To: lvaughan26@hotmail.com

*Lynn*
*4/29 was going to give 2 wk notice*

The biggest problem with it all is that if it makes it to the la coast line it will shut the shrimping down in la and all those guys will either come here, miss, Florida or Texas. So like u said I was all tamped up for it and now this. Was actually going to turn in my two week notice tomorrow but now I am going to hold off. We need to see what is going to happen in the gulf first. The value of the boat just dropped even more with this situation going on. Wow oh wow.

------------------------
------------------------
On Apr 29, 2010, at 5:49 PM, Linda Burton Vaughan <lvaughan26@hotmail.com> wrote:

I just don't believe that it's happing, I'm watching the new tight now. You need to talk to your father, he understands that more then I do - like where do baby shrimp come from??? What impact it will have on the shrimp in the gulf compared to gulf in the sound?? I don't understand it at all:( And Lynn, if we don't have bad luck we don't have luck at all - we just can't catch a break with that boat!!! Love ya Linda

PS your dad has been sleeping since around 3:00 plus he slept last night so it's just a little nap:) call him later tonight.

Date: Thu, 29 Apr 2010 09:08:26 -0700
From: kingmufosa@yahoo.com
Subject: Re: Hey
lvaughan26@hotmail.com
This oil spil in the gulf really has me worried

Hotmail is redefining busy with tools for the New Busy. Get more from your inbox. **See how.**


1125972

Income    Captain SJ 2010

| Date | # lbs & type | $ per lb | Gross | | Crew 50' Boat Act | |
|------|--------------|----------|-------|--|-------------------|--|
| 16-May | 30 lbs White | | | | 10 lbs | 20 lbs |

**7-Jun-10 Hired onto BP Vessel of Opportunity MOB57202**

| Date | Gross | 60% Boat | 40% Crew | Lynn | Jodi | Lorri | Jamie | Chris | |
|------|-------|----------|----------|------|------|-------|-------|-------|--|
| 6/7 - 6/13 | $18,200.00 | $10,920.00 | $7,280 | $2,426 | $2,426 | $2,080 | $348 | | Wages |
| 13-Jun | $600.00 | | $600 | $200 | $200 | $200 | $100 | | Classes |
| | | | | | | | | | |
| 6/14- 6/20 | $17,600.00 | $10,560.00 | $7,040 | $2,240 | $960 | $1,920 | $1,920 | | Wages |
| 20-Jun | $1,700.00 | | $1,700 | $200 | $1,100 | $200 | $200 | | Classes |
| 20-Jun | | $201.54 | | | | | | | Expenses |
| | | | | | | | | | |
| 6/21 - 6/27 | $20,000.00 | $12,000.00 | $8,000 | $2,667 | $2,285 | $2,285 | $763 | | Wages |
| | | | | | | | | | |
| 6/28 - 7/4 | $20,300.00 | $12,180.00 | $8,120 | $2,707 | $2,320 | $773 | $2,320 | | Wages |
| | | | | | | | | | |
| 7/5- 7/11 | $20,300.00 | $12,180.00 | $8,120 | $2,584 | $738 | $2,214 | $2,584 | | Wages |
| | | | | | | | | | |
| 7/12 - 7/18 | $20,300.00 | $12,180.00 | $8,120 | $2,967 | $1,547 | $2,320 | $386 | $900 | Wages |
| | $900.00 | | $900 | | | $900 | | | Classes |
| | $119,900.00 | $70,020 | $49,980 | $15,991 | $11,576 | $12,892 | $8,621 | $900 | |
| | | | | ck 1566 | ck 1567 | ck 1568 | ck 1565 | ck 1569 | |

VOO Payment Rec.
  70,020.⁰⁰
- 12,260.⁴⁴ Expenses pd during
  ───────     VOO program
  57,759.⁵⁶
-  7,497.⁰⁰ Payroll tax
  50,262.⁵⁶ Profit From VOO Program

Payroll
49,980.⁰⁰
 x  15% payroll
────────    tax
$7497.⁰⁰

1125972



**RBC Bank**

CAPTAIN S J
PERRY L VAUGHAN SR, AGENT
PO BOX 397
IRVINGTON, AL 36544-0397

BANK USE

| | |
|---|---|
| 00000 | |
| T | HS |
| D=0002 | |
| C=0001 | |

6/30/09
512 304-932-5

June 1, 2009 - June 30, 2009

******Please be advised that effective August 1, 2009 Wire Transfer Origination
Fees will increase by $5.00. This will include origination of both Domestic and
International Wires.**********

## Checking Summary

**Business 150 Checking**          **# 512 304-932-5**

| | | |
|---|---|---|
| Beginning Balance | | $ 827.83 |
| Additions | + | 10,000.00 |
| Reductions | − | 156.63 |
| Ending Balance | | $ 10,671.20 |

## Checking Detail

**Deposits**                                                                **Amount**
6/24   Branch Deposit                                                    $ 10,000.00

**Checks**

| Number | Reference | Amount | Date | Number | Reference | Amount | Date |
|---|---|---|---|---|---|---|---|
| 1525 | 1030644456 | 66.64 | 6/04 | 1527* | 1040331146 | 89.99 | 6/29 |

* Indicates one or more missing checks

## Checking Balance History

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 6/04 | $ 761.19 | 6/24 | 10,761.19 | 6/29 | 10,671.20 |

1125972

## V00 Claim Update On out standing Invoice #MOB-CSJ-013-A, Sent 10/20/10

From: **Linda Burton Vaughan** (lvaughan26@hotmail.com)
Sent: Mon 2/14/11 4:50 PM
To:   BP VOO Final Invoice Tommy Lambright (tommy.lambright@bp.com)

I have not received any letter regarding from Danos and Curole regarding my outstanding Invoice.

**I did receive** my 1099 from Danos and Curole when they sent the 1099 to Perry L. Vaughan Sr. DBS Captain S.J. PO box 397. Irvington, AL 36544

When will I receive an answer to the below outstanding Invoice #MOB-CSJ-013-A, Originally submitted 10/20/10??? I've sent numerous emails and registered letters to the VOO program with no response. I last heard from Danos & Curole in the middle of December, at that time they was suppose to respond to this invoice by January 31, 2011. When I did not hear from them at that time I again wrote to you. Tommy, you then told me I would hear a response to this invoice by the end of last week February 11, 2011. To date I have heard nothing...

**On Friday July 23, 2010 one of my deck hands, Jodi Vaughan, received a call from the VOO program that the crews last day was Monday, July 26th 2010. As owner of the boat and under contract with BP we never received notification from the VOO program that our Shrimp Boat was no longer under contract until I received a registered letter 9/8/10 that we were off contract effective 8/27/10. During this time period the boat continued under contract and was on standby. BP products (pompoms, absorbent pads, garbage cans & rolls of plastic bags) were also being stored on board.**

**As owner of the boat, during this time period I continued to submit invoices to the VOO program. I also call 251-445-3000, 251-445-3500, 251-445-3113 & 281-366-5511 almost everyday leaving messages with no return phone calls. I also sent and invoice in and email to the VOO program on 8/9/10 asking them what our status was. This was the response I received from them, "Good Afternoon, I apologize but we do not have that information here we only handle invoicing. Thanks, VOO Payment Center"**

**Based on these facts: As owner we never received notice that our contract was cancelled with BP until 8/27/10, the Shrimp Boat was on standby and ready for deployment, and BP continued to store supplies on the boat. I believe that this invoice for 7/22/10-8/26/10 in the amount $72,000.00 should be paid as soon as possible, or at the very least, denied in writing.**

**Thank you for your time Linda & Perry Vaughan Owners of the Captain S.J.**

**07/22/10 – 08/26/10 Boat under contract...........................1............36.............$2,000.00............$72,000.00**

-----------------------------------------------------------------------------------------------------------------
**This invoice was sent on Oct 20th to Danos & Curole, all was paid, expect the above noted period.**
Date: Wed, 20 Oct 2010 14:07:24 -0400

FINAL INVOICE; MOB57202

Invoice date: October 20,2010

Invoice number : MOB-CSJ-013-A

From: Perry L Vaughan Sr. DBA Captain S.J., P.O. Box 397, Irvington, AL 36544
Home Phone 251-957-1316, Cell 251-377-0415

Bill To: Danos & Curoleo Staffing, LLC, P.O. Box 1460, Larose, LA 70373

Name of Vessel:  Captain S.J.
Vessel Official Number:  1107530
Daily Vessel Log:  See below notes, logs sent for 07/19/10-08/26/10 on prior invoices.
Time Period covering: July 19, 2010 - up to and including – September 26, 2010
Location: Mobile Alabama / leaving daily from Bayou La Batre, Alabama

Expense Description; Compensation
Dates......................Description......................................Quantity..........Days...........Daily Rat...................Amount

**07/19/10 – 07/21/10, Called in to fuel boat..............................3.................3.................$2,000.00...................$6,000.00**
...
07/19/10 - 07/21/10, Crew on boat...............................3.............3.............$200.00...................$1,800.00
07/19/10 - 07/21/10, Crew on boat...............................3.............3.............$200.00...................$1,800.00

07/22/10 – 08/26/10 Boat under contract.................................1............36.............$2,000.00...................$72,000.00

09/11/10 - 09/13/10, waiting on
decontamination.......................................3.................3.................$2,000.00......................$6,000.00
09/11/10 - 09/13/10,
crew..................................................................2.................3.......................$200.00.....................$1,200.00

09/14/10, Boat taken in for Offload of BP equipment & pictures...........1..............1.....................$2,000.00....................$2,000.00
09/14/10,
crew..................................................................2.................1................$200.00.......................$400.00

09/15/10 - 09/25/10, Waiting on decontamination...............................1...............11.............$2,000.00.................$22,000.00
09/15/10 -  09/25/10,
crew..................................................................2.................11...................$200.00...................$4,400.00

09/26/10 Boat Coast Guard inspected for decontamination...................1...............1.............$2,000.00.......$2,000.00
09/26/10, crew........................................................................2..............1..................$200.00......  ...........$400.00

**Total Amount of Invoice $118,200.00**

## FINAL INVOICE MOB57202 & MOB55267

Invoice date: September 27, 2010                    Invoice number : MOB-CSJ-013

Perry L Vaughan Sr. DBA Captain SJ                    Bill to:
P.O. Box 397                                          Danos & Curole Staffing, LLC
Irvington, AL 36544                                   P.O. Box 1460
Home 251-957-1316, Cell 251-377-0415                 Larose, LA 70373
                                                     985-693-8502-or-985-693-5835

**Description**
 Name of Vessel:  Captain S.J.
Vessel Official Number:  1107530
Daily Vessel Log:  See below notes, logs sent for 07/19/10-08/26/10 on prior invoices.
Time Period covering: July 19, 2010 - up to and including – September 26, 2010
Location: Mobile Alabama / leaving daily from Bayou La Batre Alabama

**Expense Description; Compensation**

| Dates | Description | Quantity | Days | Daily Rat | Amount |
|---|---|---|---|---|---|
| 07/19/10 – 07/21/10, | Called in to fuel boat | 1 | 3 | $2,000.00 | $.6,000.00 |
| 07/19/10 – 07/21/10, | Crew on boat | 3 | 3 | $200.00 | $1,800.00 |
| ~~07/22/10 – 08/26/10~~ | ~~Boat under contract~~ | ~~1~~ | ~~36~~ | ~~$2,000.00~~ | ~~$72,000.00~~ |
| 09/14/10, | Remove of equipment & pictures | 1 | 1 | $2,000.00 | $2,000.00 |
| 09/15/10 – 09/25/10, | Waiting on decontamination | 1 | 11 | $2,000.00 | $22,000.00 |
| 09/26/10 | Boat Coast Guard inspected for decontamination | 1 | 1 | $2,000.00 | $2,000.00 |

**Total Amount of Invoice $105,800.00**

**Notes:** 07/19/10 – 07/21/10 , Ref. #34222 See daily log on original 7/19/10 invoice MOB-CSJ- 007. Also spoke with Doug Bernard on July 23rd.  251-213-7578 told to bill up to and including July 21st 2010.

**7/20/10-08/26/10** The boat was on stand-by under contract by BP.  A crew member Jodi Vaughan received a phone call on 7/16/10 that the crew was off hire effective 7/19/10. As owners of the boat, and under contract with BP we never received notice of Off Hire. BP continued to store equipment on our boat which was off loaded on 9/14/10. Our boat was available for deployment until 8/27/10 when we received a letter of termination of contract.

**09/14/10**, Boat was taken to dock in Bayou La Batre AL, for removal of BP equipment and pictures.

**9/21/10** Working with Hieu Do (251-442-1933) he's looking into invoice and decontamination. Received a call from Doug Bernard (251-213-7578) he's working on invoice, he  will pay 7/19 – 7/21, will not pay 7/22 – 8/26, will pay for 9/14 – final decontamination verification.

CC: BP Exploration & Productions Inc.
Charlotte A. Thompson
501 West Lake Park Blvd.
Houston, TX 77079

## Notice of Non-renewal of Master Vessel Charter

| Charterer:<br>**BP Exploration & Production Inc.**<br>501 WestLake Park Boulevard<br>Houston, Texas 77079 | Project: **Mississippi Canyon (MC-252)**<br><br>Sent 9/3   Rec 9/9 |
|---|---|

Perry Vaughan
PO Box 397
Irvington, AL 36544

Master Vessel Charter Agreement No.: 55267
Vessel Name: Capt SJ
Vessel Location: Bayou La Batre

Dear Vessel Owner:

Please be advised that pursuant to the terms of the Master Vessel Charter Agreement ("MVCA"), BP is providing this "Off Hire Dispatch Notification" which terminates the MVCA immediately as of the date noted below.

If you have not had your vessel properly decontaminated and an off-hire survey performed please immediately contact your local Vessel of Opportunity coordinator to schedule your off-hire survey and decontamination as soon as possible.

Please submit your final invoices within (thirty-five) 35 days of the date on this Notice. Failure to timely submit your invoice(s) may result in delayed or non-payment.

We at BP would like to thank you for your efforts in supporting this response.

Sincerely,
**BP Exploration & Production, Inc. (Charterer):**

Charlotte A. Thompson

VOO Logistics Branch Director

Termination Date: August 27, 2010

0196

Contract No: MOB 5 2202   50ft Shrimp boat

AL

## MASTER VESSEL CHARTER AGREEMENT

This Master Vessel Charter Agreement (hereinafter referred to as CHARTER) is made effective as of 14th May, 2010 by and between BP America Production Company (hereinafter referred to as CHARTERER), and Perry Vaughan _____ hereafter referred to as VESSEL OWNER).

### ARTICLE 1.   TERM OF CHARTER

A. Subject to the availability (as mutually agreed upon between CHARTERER and VESSEL OWNER) of the vessel described in Exhibit "A" (hereinafter referred to as VESSEL), VESSEL OWNER agrees to let and CHARTERER agrees to hire the VESSEL from time to time as may be requested by CHARTERER. VESSEL OWNER shall deliver or otherwise make available the VESSEL to CHARTERER and place the VESSEL at CHARTERER'S disposal at a mutually agreed location,. The term of the CHARTER shall commence on the date of the departure of the Vessel from the mutually agreed location of delivery into the service of Charterer, and shall be referred to as the "CHARTER TERM." CHARTERER may terminate the CHARTER at any time and the CHARTER TERM will terminate as set out in Paragraph B of this Article 1.

B. The VESSEL shall be delivered at the commencement of the CHARTER TERM, fully tanked with fuel, hydraulic fluid, lubricated, manned, provisioned and ready in all respects to perform SERVICES as required by this CHARTER. The VESSEL shall be redelivered to VESSEL OWNER at the close of each CHARTER TERM to the original point of delivery by CHARTERER, as determined by off-hire dispatch notification, unless VESSEL OWNER elects not to return directly to the point of dispatch, in which case, the CHARTER TERM shall cease immediately upon such election.

### ARTICLE 2.   EMPLOYMENT AND SERVICES OF VESSEL

A. During each CHARTER TERM, the VESSEL shall be employed exclusively for CHARTERER'S use as a vessel of opportunity in the carriage of CHARTERER'S employees, contractors, business invitees, equipment and provisions and in the performance of various tasks associated with oil spill response and containment efforts as directed by CHARTERER (hereinafter referred to as SERVICES). Such SERVICES shall include, but not be limited to, tending or deploying boom and skimming equipment, skimming operations, recovering oiled debris, collecting garbage, assistance with wildlife operations and towing equipment. The VESSEL shall be required to attend training, participate in training exercises and drill to receive the necessary oil spill clean up credentials as appropriate to develop skills and procedures for oil spill response and containment. The VESSEL shall be available and at CHARTERER's disposal for operation twenty-four (24) hours per day. The VESSEL shall not be used for any purpose other than performance of SERVICES during the CHARTER TERM.

B. The whole reach of the VESSEL's deck and accommodation spaces shall be at CHARTERER's disposal, reserving only proper and sufficient space for VESSEL OWNER's crew.

### ARTICLE 3.   PERFORMANCE OF VOYAGES

During the employment under this CHARTER, the VESSEL OWNER or its designated master shall perform all voyages without delay. VESSEL OWNER or its designated master shall load, stow, and trim the VESSEL. The decision to proceed on a trip in the face of adverse or changing weather or sea conditions shall be the sole decision of the VESSEL OWNER or the designated master.

### ARTICLE 4.   OPERATION IN COMPLIANCE WITH LAW

A. VESSEL OWNER warrants (i) that it has the right to CHARTER the VESSEL to CHARTERER, (ii) that the VESSEL is entitled to perform the SERVICES under all applicable law (including having all endorsements on its documentation that may be required to perform the SERVICES in accordance with applicable law)

1

Contract No: MOB 5 __ __ __ __

and (iii) that the same is free of all encumbrances which might disturb CHARTERER'S full right to SERVICES described in this CHARTER. The VESSEL OWNER shall exercise due diligence to deliver and maintain the VESSEL in a seaworthy condition. The VESSEL must display a current United States Coast Guard Safety Examination decal, unless otherwise approved by the CHARTERER. The VESSEL shall be operated, manned and maintained by VESSEL OWNER at all times during the term of this CHARTER in accordance with all applicable state and federal laws, rules and regulations, including (but not limited to) life saving requirements. The VESSEL OWNER warrants to exercise good faith in the performance of each and every obligation under this CHARTER.

B.  VESSEL OWNER shall be responsible for paying any civil, criminal, or administrative fines, citations, or penalties that VESSEL OWNER may incur as a result of VESSEL OWNER'S violation of any laws, rules, or regulations during the term of this CHARTER.

C.  VESSEL OWNER shall indemnify and hold CHARTERER harmless from any liability for personal injury, death, or property damage attributable to VESSEL OWNER'S intentional misconduct constituting a violation of state or federal criminal law.

## ARTICLE 5.  DESCRIPTION OF VESSEL

The VESSEL and its capabilities and capacities are described in Exhibit "A". VESSEL OWNER warrants, in good faith, the accuracy of all information set forth in Exhibit "A" and that the VESSEL has the capabilities and capacities as set forth in Exhibit "A" and that it shall be seaworthy (Fit for Purpose) at the time of delivery to CHARTERER.

## ARTICLE 6.  MANNING REQUIREMENTS

A.  VESSEL OWNER shall at all times man the VESSEL with a sufficient number of competent and properly licensed crew and/or deckhands trained and experienced in the operation of the VESSEL in the waters in which the VESSEL is to operate under this CHARTER. The specific number of crew shall be two (2) crew members (captain and one crew) for vessels under 41 feet in length, and three (3) crew members (captain and 2 crew) for vessels 41 feet or greater in length, unless otherwise approved by CHARTERER. VESSEL OWNER shall cause the crew of the VESSEL to carry out their duties with due care and workmanship and the utmost dispatch and diligence. VESSEL OWNER shall be responsible for properly receiving and stowing all cargo, including maintenance of the proper trim and draft of the VESSEL. Cargo loading and unloading operations shall be under the supervision and control of VESSEL OWNER. VESSEL OWNER and crew shall operate the VESSEL in such a way as to not cause unreasonable risk or avoidable damage to any personnel or cargo. Through notification to the Fishing Vessel Administrator and upon advance approval by CHARTERER, VESSEL OWNER may provide additional crew members.

B.  VESSEL OWNER warrants that the crew to be provided by VESSEL OWNER shall meet legal manning requirements in accordance with all applicable law for uses and purposes of the VESSEL required hereunder and as more particularly stated in ARTICLE 2 - EMPLOYMENT AND SERVICES OF VESSEL. The VESSEL'S crew shall be VESSEL OWNER'S employees at all times. VESSEL OWNER shall pay all wages, fringe benefits, applicable taxes, expenses, applicable fees/taxes, and transportation costs required for the VESSEL'S crew.

## ARTICLE 7.  RADIO COMMUNICATIONS

VESSEL OWNER shall have, as a minimum, the following radio equipment in a functional and working condition at all times on VESSEL: one (1) VHF marine radio, and may maintain one (1) HF SSB marine radio. Except when outside of communication range, VESSEL OWNER may be required to maintain constant communications on an hourly basis with the assigned Group Supervisor (GS) and/or CHARTERER designated dispatcher by monitoring the VHF marine radio and providing VESSEL'S position as directed by FCP and/or dispatcher. If VESSEL OWNER fails to comply with the provisions of this Article, CHARTERER may terminate this CHARTER upon twenty-four (24) hours written notice.

2

Contract No: MOB 5 __ __ __ __

### ARTICLE 8.   VESSEL PROVISIONS

VESSEL OWNER shall provide and pay for any other supplies necessary for the VESSEL'S mechanical functioning, except as provided in Exhibit "B".  VESSEL OWNER shall provide and pay for all expenses necessary for the maintenance of the crew including, but not limited to, provisions (except as otherwise provided by CHARTERER as described in this ARTICLE), commissary, water, laundry and any necessary lodging. (At the start of any CHARTER TERM, VESSEL OWNER shall provide a minimum of three (3) days of such provisions required for the maintenance of the crew.  After three (3) days, during an actual oil spill, CHARTERER shall provision the VESSEL for the remainder of each CHARTER TERM.) The fixed rate per day set forth in Exhibit "B" shall be increased (as stated in Exhibit "B") per day per the most recent published rate schedule for every meal provided to a CHARTERER employee or business invitee while aboard the VESSEL.)



### ARTICLE 9.   MAINTENANCE OF VESSEL

VESSEL OWNER shall maintain the VESSEL'S hull and machinery in a seaworthy condition (Surveyor designation of "Fit for Purpose"). (CHARTERER shall provide or otherwise reimburse VESSEL OWNER'S actual cost of hull and gear cleaning and decontamination if VESSEL requires such cleaning as a direct result of SERVICES under this CHARTER.)

### ARTICLE 10.   HIRE

A.  CHARTERER will pay VESSEL/ OWNER for each CHARTER TERM or SERVICES satisfactorily performed and accepted by the CHARTERER in accordance with Exhibit "B".  Any amendment or modification of this CHARTER must be in writing and duly executed by both parties in order to be binding.  Provided, however, that CHARTERER shall be entitled at any time during the term of this CHARTER to revise Exhibit "B", by submitting or making available for viewing to VESSEL OWNER, a new Exhibit "B".

B.  CHARTERER shall pay Hire for the VESSEL and the SERVICES to be provided by the VESSEL OWNER, for each CHARTER TERM in accordance with the following provisions.  For the purposes of ARTICLE 10 – HIRE, a day shall be deemed to be any portion of a twenty-four (24) hour period beginning at 12:00 midnight and ending at 11:59 pm.  For the purposes of vessel length, all vessels will be rated on the generally accepted term of L.O.A., (Length Over All).

1.  For a CHARTER TERM during an actual oil spill, the rate is (as stated in Exhibit "A") a day rate.

2.  For a CHARTER TERM during an oil spill drill including but not limited to the requirement for deployment of boom the rate is (as stated in Exhibit "A") a day rate.

3.  For any CHARTER TERM described in ARTICLE 10, Paragraph A, in the event VESSEL OWNER may be requested to provide a skiff in addition to the VESSEL when approved in advance by CHARTERER'S through notification to the FVA. For the purpose of payment, the skiff length shall be based on the L.O.A. of the skiff provided.

5.  Training may consist of any of the following:

a.  Classroom training will be defined and approved in advance by the CHARTERER. A fixed rate per crew member in attendance, per day, will be paid to the VESSEL OWNER . During periods such as classroom training, Workers Compensation Insurance will be provided. The VESSEL shall not be considered under HIRE for insurance purposes, therefore insurance shall not be provided during these times.

6.  Compensation for CHARTERER requested additional crew members will be paid to the VESSEL OWNER.)

7.  CHARTERER may request that the VESSEL OWNER perform SERVICES within the capabilities of

3

Contract No:  MOB 5 __ __ __ __

the VESSEL not identified above. SERVICES are to be performed by VESSEL OWNER only upon a receipt of a written WORK ORDER signed by the CHARTERER, except that a verbal order will suffice in an emergency; such verbal order to be confirmed by written WORK ORDER after issuance of the verbal order.  Compensation will be negotiated for each specific WORK ORDER.  No payment will be made for SERVICES or items not authorized by a written WORK ORDER.

D.  Only with CHARTERER'S prior written approval, CHARTERER shall reimburse VESSEL OWNER'S reasonable costs incurred and paid for by VESSEL OWNER and designated crew for travel, meals and lodging when attending CHARTERER provided or approved training or meetings unless otherwise provided by CHARTERER. Reimbursable costs will be stated in Exhibit "B".

E.  The termination of the CHARTER TERM  (termination of dispatch) is determined by the time the VESSEL is secure in its moorings at the original point of delivery during drills and exercises, and secure at its mooring after final decontamination after an oil spill response (which process shall be promptly undertaken without delay). If termination is by VESSEL OWNER, termination of dispatch shall be as mutually agreed by CHARTERER'S Group Supervisor and VESSEL OWNER.  VESSEL OWNER must ensure FVA is notified of release time.



F.  VESSEL OWNER shall be compensated at the end of the CHARTER TERM, and if the CHARTER TERM is longer than fourteen (14) days, invoices may be submitted every fourteen (14) days. The VESSEL OWNER shall provide all necessary information to the appropriate Fishing Vessel Administrator, who shall in turn submit an invoice to CHARTERER. Payment of all sums due shall be made within fifteen (15) days of receipt of an invoice by CHARTERER.

## ARTICLE 11.   PORT FEES, MOORAGE, TAXES

A.  CHARTERER shall pay for all port fees and moorage that may be incurred as a direct result of this CHARTER while the VESSEL is away from its home port. VESSEL OWNER shall pay all taxes incidental to use of the VESSEL.

B.  The VESSEL shall be loaded and unloaded at any dock, berth, or place that CHARTERER may direct, as approved by VESSEL OWNER, which approval shall not be unreasonably withheld. VESSEL OWNER shall assist CHARTERER in locating and selecting the docks and landings suitable to accomplish the safe loading and unloading of passengers and cargo.

## ARTICLE 12.   BREAKDOWN: DEFICIENCY OF CREWING OR STORES

A.  In the event of any loss of time, not due to fault of CHARTERER, on account of: dry-docking or other necessary measures to maintain the efficiency of the VESSEL; deficiency of crewing or stores; breakdown of machinery, gear or equipment, damage to hull; collision; breach of orders; neglect of duty of master, officer or crew; strike or other labor stoppages of master, officers or crew; refusal to sail; stranding; fire; difficulties to the VESSEL'S flag, ownership or previous ports of call; requisition of title or use of the VESSEL; failure to comply with rules, regulations or laws of ports of call; interference by authorities; detention of VESSEL or master or officers; or any other similar accident or event whatsoever either hindering or preventing the full working of the VESSEL, then no HIRE is to be paid for any time loss until the VESSEL is again in sufficient state to fully resume SERVICES and, has regained a position equivalent to the position occupied at the time just prior to the accident or occurrence.

B.  In the case of the VESSEL taken off-HIRE while on a voyage by reason of an accident or occurrence described in 12A above, the hire shall be suspended from the time of the accident or occurrence until the VESSEL is again in the same position as before the accident or occurrence and the VESSEL returns to an equivalent position or a substitute voyage directed by CHARTERER.

C.  During the period of off-HIRE all reimbursable items identified in ARTICLE 10 – HIRE and ARTICLE 11 – PORT FEES, MOORAGE, TAXES that would otherwise be for CHARTERER'S account under this CHARTER shall be for the VESSEL OWNER'S account.

D.  It is understood that the VESSEL shall use due diligence to comply with all applicable federal, state and

4

Contract No:  MOB 5 __ __ __ __

local environmental protection and safety laws, regulations, and stipulations when performing SERVICES in effect at all ports within the trading limits. If the VESSEL is found not to comply with any such rule, regulation or law, VESSEL OWNER shall take immediate measures to comply, and all expenses incurred as a result of such failure to comply shall be for VESSEL OWNER'S account under the off-HIRE provisions of ARTICLE 12.

E.  If the VESSEL is lost or becomes a constructive total loss, HIRE shall cease at 11:59 PM of the day of VESSEL loss or constructive total loss. If the VESSEL is missing, HIRE shall be suspended as of 11:59 PM on the day when the VESSEL was last heard from and until the VESSEL'S safety has been established, unless loss of contact is deemed to have occurred through no fault of VESSEL OWNER.

F.  Any HIRE paid for in advance is to be adjusted by refund or deduction from future payments for any off-HIRE or suspension during the period for which payment was made.

G.  If the VESSEL is off-HIRE for a period of time exceeding twenty-four (24) hours for any of the events referred to in ARTICLE 12, CHARTERER may terminate this CHARTER at its sole option if VESSEL OWNER is not making best efforts to return to a safe harbor.

## ARTICLE 13.   INSURANCE

A.  VESSEL OWNER confirms that it will maintain in place any insurance policies it is carrying as of the date immediately prior to entering into this CHARTER or that it routinely carries for its usual operations

B.  The insurance coverage referred to in Paragraph A above shall remain in effect during the CHARTER TERM, when the VESSEL is on HIRE for training as directed by CHARTERER, or the VESSEL is on HIRE for oil spill response. The time of coverage shall be from dispatch until termination of dispatch by either the VESSEL OWNER or CHARTERER.

C.  Insurance coverage may be activated for VESSELS that choose to travel to a remote site the day prior to an exercise or drill with prior approval by the CHARTERER.  The VESSEL will only be considered on-HIRE for the purpose of insurance and will not receive any compensation.

D.  In the event of any happening that may result in a claim against the coverage afforded in Paragraph A, prompt notice thereof shall be given to the party first aware of such claim in order to afford both parties an immediate opportunity to investigate the facts and circumstances giving rise to the potential claim.

E.  The parties understand and agree that the insurance coverage summarized in Paragraph A is more particularly described in the insurance policies, the terms, conditions and exclusions of which shall control..

Note:  Copies of the insurance policies summarized in Paragraph A are available upon request.

F.   VESSEL OWNER warrants that during the term of this CHARTER that as to the insurance described in Paragraph A of this Clause 13, it shall:

1.   Pay all premiums to keep such insurance policies in full force and effect on the terms and conditions more particularly described in such policies.

2.   Will not modify, amend or otherwise agree to any reduction in coverage afforded under the policies.

G.  If VESSEL OWNER has a claim against CHARTERER or has Notice of any claim(s) for which CHARTERER is or could be accountable;

1.   VESSEL OWNER will exercise good faith and prudent management of all claims, including third party claims, and will not defend or settle third-party claims without CHARTERER'S knowledge and prior written consent.

H.  In the event VESSEL OWNER's cost for insurance as provided for hereunder is, by virtue of the

5

Contract No: MOB 5 __ __ __ __

SERVICES being provided hereunder, in excess of that normally paid by VESSEL OWNER for its standard coverage, then CHARTERER agrees to pay the cost over and above that normally incurred by VESSEL OWNER for its standard coverage.   VESSEL OWNER shall advise CHARTERER of such excess cost before incurring same and shall document the amount of such cost it is claiming for.   Nothing herein shall prevent CHARTERER from taking out insurance for any risks it may deem appropriate but nothing herein shall require CHARTERER to do so.

## ARTICLE 14.   SALVAGE

All derelicts and salvage shall be for VESSEL OWNER'S and CHARTERER'S equal benefit, after deducting VESSEL OWNER'S and CHARTERER'S expenses and crew portion.

## ARTICLE 15.   CHARTER NOT A DEMISE

Nothing stated in this CHARTER is to be construed as demise of the VESSEL to CHARTERER.   VESSEL OWNER shall at all times remain responsible for the navigation of the VESSEL, acts of pilots, tug vessels, crew, and all other similar matters as if trading for its own account.

## ARTICLE 16.   CHARTERER'S USE OF VESSEL



During the CHARTER TERM the VESSEL OWNER shall not make any other use of the VESSEL without CHARTERER's prior authorization. In addition, the VESSEL OWNER shall not allow on board the VESSEL any non-crew member who would interfere with the VESSEL OWNER'S performance of SERVICES under this CHARTER.  If the VESSEL OWNER allows on board the VESSEL any persons who are not crew members, or CHARTERER employees, or business invitees, the VESSEL OWNER shall be solely responsible for any liability for any injury to or death to any such person attributable to that person's presence on board the VESSEL.] In no event shall CHARTERER be liable for any expenses resulting from the injury to or death of any such person allowed on board without CHARTERER'S prior authorization.

## ARTICLE 17.   VESSEL OWNER IS INDEPENDENT

A.  VESSEL OWNER and its employees and any approved Subcontractors and their employees are independent contractors and are not employees, partners, or joint ventures with CHARTERER. VESSEL OWNER and Subcontractors and their respective employees will not represent CHARTERER in performance of SERVICES under this CHARTER, or engage in any conduct that would imply that VESSEL OWNER and Subcontractors and their respective employees are other than independent contractors.

B.  VESSEL OWNER is responsible for the manner, means and methods of performing SERVICES under this CHARTER.

C.  VESSEL OWNER shall pay all federal and state taxes, contributions and/or assessments associated with the performance of SERVICES, including, but not limited to, income taxes and self-employment taxes, and shall be responsible for providing its own employee benefit plans.

D.  VESSEL OWNER acknowledges and understands that as an independent contractor, VESSEL OWNER and its employees and Subcontractors and their employees are not eligible for any employee benefits under any plans maintained by CHARTERER, including, but not limited to, the CHARTERER Savings and Investment Plan, Pension Plan, Sick Pay Plan, Long Term Disability Insurance Plan, Voluntary Personal Accident Insurance Plan, Severance Plan, Group Life Insurance Plan, Dental Plan, Occupational Death Plan, Business Travel Plan and Medical Plan.

E.  VESSEL OWNER will indemnify, defend and hold CHARTERER and its respective employees and agents harmless from and against any and all claims, demands, actions, losses, expenses and/or liabilities resulting from or related to:

6

Contract No:  MOB 5 __ __ __ __

1. Any claim, demand, and/or determination that VESSEL OWNER, its employees and/or Subcontractors and their employees are not independent contractors in connection with the performance of SERVICES under this CHARTER, including, but not limited to, any claims or liabilities for regular or overtime wages, salaries, taxes, contributions, and/or assessments; and/or

2. Any claim, demand, and/or determination that VESSEL OWNER, its employees and/or Subcontractors and their employees are entitled to benefits in connection with the performances of SERVICES under this CHARTER under any employee benefit plans maintained by CHARTERER; and/or

3. Any claim, demand, and/or determination that VESSEL OWNER'S employees or Subcontractors' employees are entitled to additional compensation or benefits as a result of VESSEL OWNER'S employment policies and practices; and/or

4. Any claim, demand, and/or determination that VESSEL OWNER'S employees or Subcontractors' employees are entitled to additional compensation or benefits, of whatever kind or character, or damages, of whatever kind or character, based on whole or in part upon theories that they are direct, dual, loaned, borrowed, and/or co- employees of CHARTERER, in addition to being employees of VESSEL OWNER or Subcontractor.

F. Should VESSEL OWNER or Subcontractor assume the defense of CHARTERER pursuant to Paragraph E, CHARTERER shall also be entitled to separate defense and representation of its interests through counsel acceptable to CHARTERER.

## ARTICLE 18.   NOTICES

All notices and communications from VESSEL OWNER to CHARTERER and from CHARTERER to VESSEL OWNER shall be addressed as follows:

**CHARTERER**
**BP America Production Company**

**501 Westlake Park Blvd**

**Houston, TX 77079**
**Attn: Tamara Garrett, Contract Manager**
**Telephone:**

**CONTRACTOR**

Perry Vaughan Capt. SJ _____  [[Contractor Co Name]]

8761 Draney St. _____  [[Contractor Address]]

Bayou La Batre AL. 36509 _____  [[City/State/ZIP]]

**Attn:** _____

**Telephone:** 251-622-4574

**Facsimile:** _____

**Email:** JodiA_V@yahoo.com

7

Contract No: MOB 5 __ __ __ __

**ARTICLE 19.   CHOICE OF LAW AND FORUM**

The rights and obligations of the Parties to this CHARTER including all matters of construction, validity and performance, shall in all respects be governed and enforced in accordance with the general maritime laws of the United States.  In the event, but only in the event, the maritime laws of the United States do not apply, the laws of the State of Louisiana shall govern.  Any litigation arising out of or relating to the CHARTER may be brought in a court of competent jurisdiction in New Orleans, Louisiana or Houston, Texas.

**ARTICLE 20.   AUDIT AND TERMINATION**

At any time during the term of this CHARTER, CHARTERER shall have the right to audit logs, books, payrolls, and records relating to any of the services performed hereunder.  In addition to any other right of termination herein, VESSEL OWNER may terminate this CHARTER or any company listed in Exhibit "A" at any time for any reason whatsoever by giving the said party twenty-four (24) hours advance written notice of such termination, and any company listed in Exhibit "A" may terminate its obligations upon (24) hours advance written notice to CHARTERER.

**ARTICLE 21.   ASSIGNMENT/SUBCONTRACTING**

A.  VESSEL OWNER will not assign any of its rights or delegate any of its obligations under this CHARTER without prior written approval from CHARTERER.  CHARTERER'S approval of any assignment, subcontract or delegation will not relieve VESSEL OWNER of any responsibility under this CHARTER.

B.  VESSEL OWNER shall not assign any rights or delegate any obligations hereunder without CHARTERER'S prior written approval, which shall not be unreasonably withheld. Any such unauthorized assignment shall be void. CHARTERER may assign this CHARTER to third parties specifically including any of its respective affiliates or a response action contractor..

**ARTICLE 22.   WAIVER**

If CHARTERER fails to enforce any right or remedy available under this CHARTER, that failure will not be construed as a waiver of any right or remedy.  A waiver of any claim, demand, right or remedy based on the breach of any provision of this CHARTER will not be construed as a waiver of any other claim, demand, right or remedy based on a subsequent breach of the same or any other provision.

**ARTICLE 23.   SEVERABILITY**

If any part, term or provision of this CHARTER is determined by a court of competent jurisdiction to be unlawful or unenforceable, the validity and enforceability of the remaining parts, terms and provisions will not be affected.

**ARTICLE 24.   ENTIRE AGREEMENT; SUCCESSORS**

A.  This CHARTER includes any and all Exhibits referenced in this CHARTER and constitutes the entire agreement between the Parties with respect to this CHARTER. This CHARTER cancels and supersedes all prior negotiations, representations or agreements, both written and oral, including any proposals submitted by VESSEL OWNER. The Parties have not been induced by any representation, statements or agreements other than those expressed in this CHARTER. No changes, alterations, or modifications to this CHARTER will be effective unless made in writing and signed by both Parties.

B.  This CHARTER will benefit and bind the successors, representatives and assignees of both Parties.

8

Contract No: MOB 5 __ __ __ __

### ARTICLE 25.   PRIORITY OF TERMS

In the event of any conflict or inconsistency between the various parts of this CHARTER, the Articles will take precedence over all other parts of this CHARTER, including any Exhibits, Attachments and Addenda, unless specifically stated otherwise.


**THE PARTIES HAVE EXECUTED THIS CHARTER** by their respective authorized representatives, as of the date first written above.

CONTRACTOR:                                      CHARTERER:
                                                 **BP America Production Company**

By: _Perry Vaughan_   _5-14-2010_         By: _____   _5/14/2010_
(Signature)           (Date)                (Signature)              (Date)

_Perry Vaughan_____                         _Joseph Litho_____
(Print or Type Name)                        (Print or Type Name)

_Captain_____                           _Vop Coordinator___
(Print or Type Title)                       (Print or Type Title)

9

## Exhibit A

Attached to and made part of the Master Vessel Charter Agreement
dated _____, 2010 between Charterer and Vessel Owners

### COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE

### PARAGRAPH 1 - COMPENSATION

As full and complete compensation to VESSEL OWNER for SERVICES satisfactorily performed and for assuming obligations hereunder, CHARTERER, for and on behalf of OWNERS, will pay VESSEL OWNER on the basis of the fixed rates (FIXED RATES), set forth below in PARAGRAPH 2 - FIXED RATES, and will reimburse VESSEL OWNER for the costs of specific items set forth below in PARAGRAPH 3 - REIMBURSABLE COSTS. CHARTERER shall be entitled at any time during the term of this CHARTER to revise EXHIBIT A – COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE, by submitting or making available for viewing to VESSEL OWNER, a new EXHIBIT A – COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE.

### PARAGRAPH 2 - FIXED RATES

VESSEL OWNER's FIXED RATES (hereinafter FIXED RATES) are agreed to be VESSEL OWNER's sole, complete, and exclusive compensation for performing and completing SERVICES under CHARTER, except as noted in PARAGRAPH 3 - REIMBURSABLE COSTS below, including, without limitation, all management, labor, supervision, salaries, wages, taxes of all kinds, insurance premiums, contributions, equipment, equipment maintenance, materials (not provided by CHARTERER), support facilities, transportation (if not provided by CHARTERER), tools, overhead and profit. FIXED RATES are not subject to renegotiation or retroactive adjustments based on actual experience and are not subject to escalation.

### FIXED RATES FOR SERVICES:

| SERVICES | FIXED RATES |
|---|---|

A.  Vessel Services:

  1.  Actual Spill Response:
      As defined in ARTICLE 10 - HIRE, Paragraph B1

| | |
|---|---|
| Vessels > 65' | $3000/24 hour day |
| Vessels > 45' – 65' | $2000/24 hour day |
| Vessels >30' - 45' | $1500/24 hour day |
| Vessels less than 30' | $1200/24 hour day |

      Plus:
      Specialized equipment required by BP reimbursable at cost +10%
      PPEs will be provided by CHARTERER

B.  Crew Services:

  1.  Actual Spill Response, Classroom Training, Table Top Activities, or Meetings:
      As defined in ARTICLE 10 – HIRE, Paragraph B5      $200.00/8 hour day/
                                                          crewmember

  2.  Meals for provided by Vessel Owner