UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: OIL SPILL BY THE OIL RIG** | **MDL 2179** |
| **"DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010** | **SECTION: J** |
| **THIS DOCUMENT RELATES TO:** | **JUDGE: CARL BARRBIER** |
| **21-cv-02243 and Future B3 Cases** | **MAG JUDGE: CURRAULT** |

## MEMORANDUM IN SUPPORT OF MOTION FOR CLARIFICATION OR CORRECTION OF THE B3 CASE MANAGEMENT ORDER

The Downs Law Group, P.A. ("DLG") as Counsel for Plaintiff Sonja Johnson ("**Johnson**") and other similarly situated B3 Plaintiffs, current and potential, hereby respectfully submits this Memorandum of Law in Support of the Motion for Clarification or Correction of the Court's B3 Case Management Order.[1]

### FACTS AND BACKGROUND

On February 23, 2021, this Court issued a Case Management Order ("**B3 CMO**") for the roughly 810 remaining B3 cases[2] which, *inter alia*, addressed Future B3 Cases and severed the B3 Bundle from the main MDL docket. This Court noted that the issue of causation for B3 cases "will

---

[1] *See* Rec Doc 26924 dated February 23, 2021, hereto attached as **Exhibit A.**

[2] Although the exact number of those 810 are Resident, Non-Class Members are unknown, it is estimated that ***less than 10%*** of those 810 B3 cases are Resident, Non-Class Members.

require an individualized inquiry" and will likely be the "make-or-break issue."[3] Second, the B3 CMO specifically incorporated that prior rulings in the MDL have narrowed the issues in the B3 cases.[4] Finally, this Court ordered that "Any B3 case filed in this Court <u>after</u> the issuance of this CMO ("**Future B3 Case**") shall be consolidated with MDL 2179 . . ."[5] Notably absent from this B3 CMO is instructions to file **all** cases with common issues of fact in Eastern District of Louisiana.

After the issuance of the B3 CMO, Plaintiff Sonja Johnson's complaint was filed on July 16, 2021, in the United States District Court for the Southern District of Alabama seeking damages against BP, Transocean, and Halliburton for injuries, including cancer, caused by exposure to crude oil and toxic dispersants resulting from the *Deepwater Horizon* oil spill ("**BP Oil Spill**").[6] Ms. Johnson alleges that she suffers from cancer because she was exposed to harmful toxins and oil that polluted the waters in and around her residence in Mobile, Alabama as a result of the BP Oil Spill and Defendants' negligence. Ms. Johnson is a citizen and resident of Mobile, Alabama, her witnesses, and other relevant sources of proof, are in the Southern District of Alabama, her chosen venue.

On July 27, 2021, Counsel for BP Exploration & Production Inc., and BP America Production Company ("**BP Defendants**") filed a Notice of Potential Tag Along for Ms. Johnson's case with the Judicial Panel on Multi District Litigation ("**JPML**") arguing that, *inter alia*, the B3

---

[3] *See* 2/23/2021 "Case Management Order for the B3 Bundle", Rec. Doc. 26924, pp. 4-5, attached hereto as **Exhibit A**.

[4] *Id*. at p. 6, n.10.

[5] *Id*. at p. 8 (Emphasis in original).

[6] *See* Johnson's Complaint, hereto attached as **Exhibit B.**

2

CMO directed future "B3 cases" to be consolidated with MDL 2179 and that plaintiffs shall comply with the requirements of Court's Pretrial Orders. After the parties' briefing, the JPML denied Ms. Johnson's motion to vacate the conditional transfer order and Ms. Johnson's case was transferred to the Eastern District of Louisiana ("**JPML Transfer Order**").[7] Within this order, the JPML cited lack of guidance on the issue of whether B3 cases outside the transferee court should be transferred to the MDL or whether such cases are exempted from the Pre-Trial Order requirements.

## NEED FOR CLARIFICATION

The Downs Law Group, P.A., as counsel for Plaintiff Sonja Johnson and other similarly situated B3 Plaintiffs[8] respectfully requests the Court to clarify whether the Case Management Order for B3 cases applies to all B3 cases, including those filed outside this Court and other personal injury cases who share a common issues of fact with MDL-2179. Absent this Court expressly stating otherwise, the JPML will continue to transfer every non-class member case that shares a common issue of fact with MDL-2179 to this Court:

> Until the transferee judge *indicates* that B3 cases no longer are required to complete this process, we see no reason to exempt plaintiff's action from complying with the pretrial orders applicable to all other B3 cases.

> But the case management order does not address the question whether B3 cases *filed outside the transferee court* should be transferred to the MDL or whether such cases are exempt from the B3 claim substantiation process. As such, it does not provide a ground to deny transfer.

---

[7] JPML Transfer Order is attached hereto as **Exhibit C.**

[8] *Marian Law v. BP Exploration & Production, Inc., et al.*, Civil Action No.:1:21-cv-00520, Rec. Doc. 1, (S.D. Ala. Dec. 2, 2021) is another similar B3 case currently pending before the JPML for a determination on the same issue.

3

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (J.P.M.L. filed December 7, 2021) (Doc No. 2066) (Emphasis in bold and italics added).

The B3 CMO issued by this Court states that it applies only to future B3 cases filed in this Court, and thus it is not applicable to all opt-outs who rejected the Medical Settlement Agreement[9] or to all other B3 resident plaintiffs who do not fall within the purview of the Medical Settlement Agreement. Thus, the B3 Case Management Order in its current form does not address whether **all** future B3 cases need to be filed in the Eastern District of Louisiana and comply with the Pre-Trial Orders.

The District Courts in each respective district are qualified to adjudicate cases arising out the BP Oil Spill and may adopt orders from this Honorable Court in their discretion. Accordingly, DLG, as counsel for B3 Plaintiffs, seeks clarification from the Court to prevent an additional barrier to such Plaintiffs' right to petition the courts for relief, and to avoid inefficiencies and delays as a result of the Notice of Potential Tag Along to this MDL Court filed by BP Defendants each time a B3 is filed in another district.

## LAW AND ARGUMENT

**(i)       LEGAL STANDARD FOR MOTIONS TO CLARIFY/INTERPRET**

Motions for interpretation or clarification, although not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper.[10] Moreover, motions for clarification may be made at any time and are grounded in the

---

[9] Deepwater Horizon *Medical Benefits Class Action Settlement Agreement*, *as Amended on May 1, 2012*, MDL 2179, Rec. Doc. 6427-1 (May 3, 2012), § I.A; § II.EEE.

[10] *Holcombe v. Holcombe,* 22 Conn. App. 363, A.2d 1317 (1990).

4

trial court's equitable authority to protect the integrity of its judgments.[11] The B3 CMO was issued last year and a clarification is required to prevent prejudice to current and future B3 Plaintiffs who will be needlessly subjected to duplicative discovery which will ultimately result in inefficiencies, delays and a waste of judicial resources.

### (ii)     MDL CONDITIONAL TRANSFER ORDERS

In a multi-district litigation (MDL), related federal civil cases in different jurisdictions are transferred to one judge for consolidated pretrial proceedings via 28 U.S.C. §1407. Three criteria must be satisfied before the JPML may transfer a case: (1) the actions must share common questions of fact; (2) transfer must be convenient for the parties and witnesses; and (3) transfer must "promote the just and efficient conduct of such actions."[12] All of these criteria must be satisfied in order for the Panel to transfer a case to an existing MDL.[13]

When the Judicial Panel on Multidistrict Litigation created MDL-2179, the Panel noted that the purpose of centralization was to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.[14] However, consolidating actions, like Johnson, future B3 plaintiffs and other non-class members who share common facts with MDL 2179, twelve years later, will not achieve the traditional

---

[11] *Light v. Grimes,* 136 Conn. App. 161, 166, 43 A.3d 808, *cert. denied*, 305 Conn. 926, 47 A.3d 885 (2012); *see also United States v. Philip Morris USA Inc*., 793 F. Supp. 2d 164, 168 (D.D.C. 2011) (explaining that while here is no Federal Rule of Civil Procedure governing motions for clarification, federal courts frequently will rule on a motion for clarification without resort to Federal Rule of Civil Procedure standards).

[12] 28 U.S.C. §1407(a)

[13] *In re Highway Acc. Near Rockville, Connecticut, on December 30, 1972*, 388 F.Supp. 574, 575 (J.P.M.L. 1975).

[14] *See In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico*, on April 20, 2010, 731 F.Supp.2d 1352, 1354 (J.P.M.L. 2010).

efficiency benefits that were contemplated by the Panel in 2010 because this Court has completed (or nearly) all objectives of the multidistrict litigation and the common issues of fact and otherwise have already been resolved by the Phase One Findings of Liability and Apportionment.  As such, a transfer now will not eliminate duplicative discovery nor conserve the resources of the parties, their counsel, and the judiciary.  If B3 plaintiffs, and other non-class members who share common facts, are forced to file every claim in the MDL Court, Plaintiffs would be burdened by additional and duplicative discovery that Plaintiffs must already complete in the transferee court. Additionally, technical miscues in the MDL Court, pre-transfer, could also result in dismissals on procedural technicalities rather than the merits of the case.  Thus, the benefit gained by completion of Pre-Trial Order Forms, in the MDL Court does not outweigh the burdens, inefficiencies, delays, and potential prejudice to Plaintiffs.  On the other hand, under the Pre-Trial stage, the BP Defendants receive the advantage of responses to typical interrogatories and requests for production while they produce no responsive documents because plaintiffs like Johnson were not clean-up workers nor involved in response activities and simply refer the plaintiffs to previously produced common documents.[15]  Additionally, unlike BELO cases, the BP Defendants do not even file an answer at this stage.

Moreover, this Court, issued an order severing the B3 bundle from MDL-2179 and issued instructions for Future B3 Cases after holding two B3 status hearings.  The order only addresses future B3 complaints that are filed **in** the Eastern District of Louisiana.  This Court did not order all future B3 complaints to be filed in Eastern District of Louisiana.  For this reason, it can be

---

[15] See BP's Response to PTO 68 discovery for Sonja Johnson, attached hereto as **Exhibit D.**

inferred that this Court understood that not all future B3 cases need to be subject to the Pre-Trial Orders issued for future B3 cases filed specifically in the Eastern District of Louisiana.

The JPML Transfer Order in Johnsons case is unreasonable, serves no effective purpose and is the functional equivalent of an impermissible "Lone Pine" order.[16] which the Eleventh Circuit has found to be an abuse of discretion at this early stage in discovery.[17] Traditionally, a *Lone Pine* Order is appropriate only in exceptional circumstances. For example, if the defendant can establish that it would be unduly burdensome to conduct discovery using the standard discovery methods provided by the Federal Rules of Civil Procedure.[18] While the Federal Rules of Civil Procedure affords district judges wide discretion to issue *Lone Pine* orders[19], ultimately the district courts should strive to strike a balance between efficiency and equity; this balance was disrupted when Johnson was forced to litigate and conduct duplicative burdensome discovery outside of her chosen forum despite the well settled principle that the plaintiff is the master of her complaint.

### (iii) COMMON ISSUES OF MDL 2179 HAVE BEEN RESOLVED

The common issues of fact between MDL 2179, Johnson, future B3 plaintiffs, and non-class members who share common facts, have already been resolved by this Court's Phase One Findings of Liability and Apportionment. A consolidation now for pretrial proceedings will not reduce BP's obligation to litigate the individualized issues as those are not common issues and

---

[16] *See Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J. Super. 1986).

[17] *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161 (11th Cir. 2014).

[18] *See Jackson v. Syngenta Crop Protection*, LLC, CIV. A. No. 12–581, 2013 WL 4039403, at *1 (M.D. La. Aug. 7, 2013).

[19] See *Acuna v. Brown & Root Inc.*, 200 F.3d 335 (5th Cir. 2000).

need to be litigated individually for which the other district courts have their own case management and/or scheduling orders in place. The same information required to be produced in the Eastern District of Louisiana will also be produced in discovery responses in the appropriate venue.[20] This makes the requirement for a transfer order overly burdensome for future B3 plaintiffs, duplicative to the answers submitted through discovery, and provides only a tactical advantage to the BP Defendants and increased costs to plaintiffs. Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.

When this BP Oil Spill litigation began in 2010, JPML concluded that consolidated pretrial proceedings were necessary because several diverse plaintiffs filed lawsuits in courts across the country. After twelve years this Court has made substantial progress in this litigation. Additionally, other district courts have also gained experience with several cases in this toxic tort litigation and have formulated their own respective case management orders for the BP Oil Spill cases. Despite other district courts' substantial experience with this litigation, plaintiffs are required to comply with strict and burdensome pretrial orders in the Eastern District of Louisiana. Specifically, PTO 68 requires B3 plaintiffs to submit all medical records for medical conditions identified in PTOs 63 and 66 and execute medical authorization releases. BP Defendants conversely are required to produce documents related to plaintiffs' employment history and badging data, in addition to general production of publicly available documents. Again, here, BP Defendants are getting the advantage of early or advance discovery while BP will produce **no** responsive or helpful documents because plaintiffs like Johnson were not clean-up workers nor involved in response activities.[21] The *only* issues left for personal injury Plaintiffs bringing

---

[20] *See In re 2004 DuPont Litigation,* 2006 WL 5097316 (E.D. Ky. Mar. 8, 2006) (holding that *Lone Pine* orders are an improper substitute for obtaining information through normal discovery).
[21] *See* Exhibit D.

personal injury claims arising from the Deep-Water Horizon Incident, are highly specific and individualized to each plaintiff – namely, routes of exposure, levels of duration, location of exposure (*i.e.*, causation) and damages. For this reason, where the remaining issues to be litigated are individualized and unique to the Plaintiff, and where pretrial proceedings on common validity issues have been concluded, allowing the case to continue in the Plaintiff's chosen forum preserves the just, inexpensive, and efficient resolution of the matter.

### (iv) PLAINTIFFS' FORUM OF CHOICE AND INHERENT POWERS OF DISTRICT COURTS

The Supreme Court has long stressed that "unless the balance [of considerations] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[22] Such deference is required because "[t]he plaintiff is the master of his complaint and has the privilege of choosing his forum in the first instance . . ."[23]

Furthermore, The Supreme Court has "long recognized that a district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[24] How a court manages its docket "calls for the exercise of judgment, which must weigh

---

[22] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see also Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed.").

[23] *Keys By Washington v. Konrath*, 1994 WL 75037, at *1 (N.D. Ill. Mar. 10, 1994).

[24] *Dietz v. Bouldin*, 136 S.Ct. 1885, 1891, 195 L.Ed.2d 161 (2016). *See also Link v. Wabash Railroad Co.,* 370 U.S. 360.

competing interests and maintain an even balance."[25] Where consolidation in the MDL court will not serve the convenience of the parties and witnesses, eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, counsel, and the judiciary, transfer and consolidation in the MDL court is not appropriate.[26]  Congress intended for consolidation to be ordered "*only* where significant economy and efficiency in judicial administration may be obtained."[27]  As the original purpose of consolidation and common discovery has since been accomplished  the future B3 cases should be filed in their appropriate district. The JPML Order serves as a barrier to access the plaintiff's chosen forum and petition the courts for relief.  Plaintiff has a substantial interest in choosing the forum where her rights will be vindicated, and Plaintiff's chosen forum should not be disturbed unless other factors strongly favor transfer.

The court in *Humble Oil*, reasoned that disrupting the plaintiff's chosen forum, requires a showing of good cause.[28]  This "good cause" burden reflects the appropriate deference to which Plaintiff's choice of venue is entitled.[29]  Here, good cause does not exist to transfer all cases arising from the *Deepwater Horizon* incident to the Eastern District of Louisiana, even those filed out of state, because the common issues of fact have been resolved and even adopted by the BP Defendants in different district courts.

---

[25] *Landis v. N. Am. Co.,* 299 U.S. 248, 254–55 (1936); *see also* H.R. Rep. No. 1130, 90th Cong. 2nd Session, 1968 USCCAN 1898, 1900 (explaining that "pretrial consolidation must promote the just and efficient conduct of such actions and be for the convenience of the parties and witnesses").

[26] *See* 28 U.S.C. § 1407.

[27] See H.R. Rep. No. 1130, 1968 U.S.C.C.A.N. at 1900 (emphasis added).
[28] *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc*., 321 F.2d 53 (5th Cir.1963).

[29] *See id*. at 56.

### (v) PLAINITFFS' CONSTITUTIONAL RIGHTS

Compelling Johnson, all other future B3 plaintiffs, and all non-class members who share common facts, with MDL 2179 to merge in the MDL Court and comply with the Pre-Trial Orders without any corresponding benefit will result in preventing them from having their day in Court 'without delay'. Here, the interest of justice and the constitutional rights of the Plaintiff Johnson and other similarly situated B3 Plaintiffs to pursue a day in court without delay their constitutional rights[30] outweigh any competing interest of BP Defendants to have such cases transferred to the Eastern District of Louisiana to comply with Pre-Trial Orders.

### (vi) B3 CASES ARE DIFFERENT FROM BELO CASES

Finally, pursuant to the negotiated terms of the Medical Settlement Agreement all Class Members are required to file their Back- End Litigation Option Lawsuit ("BELO") in the Eastern District of Louisiana 31,32.  Sonja Johnson and other similar B3 plaintiffs are not BELO Class Members and either rejected the Medical Settlement Agreement or were excluded from the class definition. BP Defendants attempt to foist the identical procedure for Class Members on B3 plaintiffs to file and/or merge their lawsuit in the Eastern District of Louisiana and comply with the Pre- Trial Order issued for future cases filed **only** in that Court takes away a benefit of not

---

[30] Ala. Const., Art. I, § 13 ("That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."); Fl. Const. Art. 1, §21 ("The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial, or delay."); La. Const. Art. 1, § 22 ("All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.").

[31] Deepwater Horizon *Medical Benefits Class Action Settlement Agreement*, *as Amended on May 1, 2012*, MDL 2179, Rec. Doc. 6427-1 (May 3, 2012).

[32] See *MSA*, § VIII (G)(1)(c).

11

being a part of the Medical Settlement Agreement, a settlement agreement that many B3 plaintiffs elected to opt-out of on grounds of unfairness or were never a part of.

## **PROPOSED CLARIFICATION**

To streamline the process for future filing of complaints for B3 Plaintiffs the Downs Law Group respectfully requests that this Court clarify or modify the B3 CMO to make clear the following:

1. Lawsuits that share a common set of facts with MDL-2179 and filed in a district other than the Eastern District of Louisiana are not automatically required to be transferred and merged into MDL-2179.

2. The JPML shall apply the appropriate the statutory criteria when analyzing whether or not a lawsuit that shares a common set of facts with MDL-2179 should be transferred to the main MDL-2179.

3. B3 Lawsuits filed in a district other than the Eastern District of Louisiana are not required to comply with the Pre-Trial Orders 63, 66, and 68 that are applicable only to the future B3 cases filed in this Court.

4. Any other reliefs this Court seems just and equitable.

Respectfully submitted,

                                      **THE DOWNS LAW GROUP, P.A.**

                                      */s/ C. David Durkee*
                                      **C. DAVID DURKEE**
                                      Florida Bar No.: 998435
                                      3250 Mary Street Ste 307
                                      Coconut Grove, FL 33133
                                      Telephone: (305) 444-8226
                                      Facsimile: (305) 444-6773
                                      Email: ddurkee@downslawgroup.com

**CERTIFICATE OF SERVICE**

     I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Dated this 28th day of January 2022

                                                                          */s/ Charles D. Durkee*