IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 SECTION J(2) |
| This Document relates to: | * * | JUDGE BARBIER |
| *No. 21-02243 and Future B3 Cases* | * * * | MAGISTRATE JUDGE CURRAULT |

**DEFENDANTS' RESPONSE IN OPPOSITION TO THE DOWNS LAW GROUP'S
MOTION FOR CLARIFICATION OR CORRECTION
OF THE B3 CASE MANAGEMENT ORDER**

BP Exploration & Production Inc. and BP America Production Company (collectively "BP"), pursuant to the Court's January 31, 2022 Order (Rec. Doc. 27322), respectfully submit this response in opposition to the Downs Law Group's ("Downs") and Plaintiff Sonja Johnson's ("Plaintiff" or "Johnson") Motion for Clarification or Correction of the B3 Case Management Order and its accompanying Memorandum ("Mem.") (Rec. Doc. 27320-1).[1] The Motion lacks merit and should be denied.

In bringing this Motion, Downs seeks to avoid settled case management decisions of this Court and the well-reasoned judgment of the Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") that transfer of new B3 actions to MDL 2179 remains appropriate. After Plaintiff filed suit in the Southern District of Alabama, the question of whether her case should be transferred to MDL 2179 was fully briefed before the Panel. In December 2021, the Panel denied Plaintiff's motion to vacate the transfer of her B3 case and ordered that it be sent to this

---

[1] Halliburton Energy Services, Inc. and the Transocean Defendants (Transocean Holdings LLC, Transocean Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc.) join in this opposition.

Court as a tag-along action related to MDL 2179. ("Transfer Order") (Case No. 21-02243, Rec. Doc. 21.) The Panel's order expressly rejected Downs's contentions that this Court "did not intend that further B3 tag-alongs should be transferred to the MDL" and that there were no remaining issues in the B3 cases for this Court to address. (*Id*. at 2.) In denying the motion to vacate, the Panel noted that this Court continues to require the parties to any new B3 cases in MDL 2179 to comply with the disclosure and production requirements of Pretrial Orders 63, 66, and 68, and it found "no reason to exempt [Johnson's] action from complying with the pretrial orders applicable to all other B3 cases." (*Id*.)

Upon transfer to this Court, Downs filed the instant Motion, objecting to the Panel's decision as "unreasonable," "impermissible," and "serv[ing] no effective purpose." (Mem. at 7.) Under the guise of seeking "clarification or correction" of this Court's orders, Downs seeks to usurp and circumvent the role of the JPML via an order directing how the MDL Panel shall make its future transfer decisions: specifically, that the "JPML shall apply the appropriate the [sic] statutory criteria when analyzing whether or not a lawsuit that shares a common set of facts with MDL-2179 should be transferred to the main MDL-2179" and that future B3 cases filed in other districts "are not automatically required to be transferred and merged into MDL-2179." (*Id*. at 12.) Downs goes a step further and asks this Court to rule that plaintiffs in "B3 lawsuits filed in a district court other than the Eastern District of Louisiana are not required to comply with the Pre-Trial Orders 63, 66, and 68." *Id.*

Despite Downs's dissatisfaction with the recent transfer order and his desire to evade long-standing and effective pretrial orders governing B3 cases, the Panel is in no need of such admonitions. Nor has Downs provided any reason to depart now from well-established MDL case management procedures for future B3 cases that he or others choose to file outside of the

Eastern District of Louisiana. Indeed, this Court carefully considered the issue of how to handle future B3 cases and received briefing and argument on them before entering its thorough and well-crafted B3 CMO. Downs has identified no ambiguity or error in the Court's orders on this issue that requires "clarification" or "correction." Plaintiff's motion is both improper and unnecessary, and the Court should deny it.

## BACKGROUND

Plaintiff's case is one of thousands of personal injury claims alleging exposure to crude oil or chemical dispersants that were included in MDL 2179 as part of the "B3 Pleading Bundle." (*See* Pretrial Order No. 11, Rec. Doc. 569; Pretrial Order No. 25, Rec. Doc. 983.) Beginning in 2017, this Court issued a series of three pretrial orders ("PTOs") designed to address common issues among the remaining B3 cases and assist in effective case management:

- PTO 63, issued on February 22, 2017, required all B3 plaintiffs to (among other things) provide sworn statements with key information about their nature and status of their claims. (Rec. Doc. 22295.)

- PTO 66, issued on April 9, 2018, required all B3 plaintiffs to provide detailed information about their claims in a "Particularized Statement of Claim" form. (Rec. Doc. 24282.)

- PTO 68, issued on October 21, 2019, required BP to disclose to each remaining B3 plaintiff sixteen different categories of materials. (*See* Rec. Doc. 26070 at 2-4.) For their part, B3 plaintiffs were ordered to provide, among other things, their medical records and a "Supplemental Medical Disclosure Form" with information about each condition that allegedly "resulted from exposure to oil and/or chemical dispersants during the *Deepwater Horizon* spill," as well as when they "first experienced symptoms relating to the condition," when they "first sought medical treatment," and whether each "condition and/or injury persist[s] today." (Rec. Doc. 26070-1 at 1-2.)

Developed over the course of nearly three years, these PTOs represent the Court's and parties' refinement of the disclosures and productions most crucial to advance each B3 case efficiently and consistently in its early stages. Taken together, PTOs 63, 66, and 68 substantially

3

streamlined the number and scope of remaining B3 claims and provided the Court and the parties with information that both informed the appropriate next steps for management of the remaining B3 cases and also expedites future proceedings in individual cases. Every B3 plaintiff with a chemical exposure case in MDL 2179 has been required to comply with these PTOs.

By the fall of 2020, the time for the B3 parties then before the Court to comply with PTO 68 had come to an end, and the Court issued its orders identifying the B3 parties who had adequately complied with the Court's PTO requirements. (Rec. Docs. 26663, 26695.) Following extensive briefing from the parties, the Court held status conferences on September 23, 2020 and November 17, 2020 regarding the future case management of the B3 cases. (Rec. Docs. 26684, 26784.) In February 2021, the Court issued its Case Management Order for the B3 Bundle (the "B3 CMO") to address the 810 B3 cases that had complied with its PTOs and remained in the MDL, as well as to direct how future B3 cases that came before the Court would be handled. (Rec. Doc. 26924.) In that order, the Court announced that it intended to sever from MDL 2179 nearly all of the then-pending B3 cases. With respect to any *later-filed* B3 cases that might come before the Court, the Court specifically ordered that consolidated proceedings in MDL 2179 should continue so that parties to those new B3 cases could complete the PTO process before their cases proceeded further:

> Any B3 case filed in this Court after the issuance of this CMO ("Future B3 Case") shall be consolidated with MDL 2179, and the plaintiff shall comply with the requirements of PTO 63, PTO 66, and PTO 68 within 90 days of the date the Future B3 Case is filed.

(*Id*. at 8 (internal citations omitted).) Within 30 days of the new plaintiff's compliance with those PTOs, the parties would propose to the court where the case should be venued upon severance from the MDL. (*Id*.)

In April 2021, the Court issued (1) an Order Severing and Transferring 26 Cases in the B3 Pleading Bundle to Other Districts Pursuant to 28 U.S.C. § 1404(a) ("Transfer Order") (Rec. Doc. 27018); (2) an Order Severing 780 Cases in the B3 Pleading Bundle and Re-allotting Them Among the District Judges of the Eastern District of Louisiana ("Severance Order") (Rec. Doc. 27028); and (3) a Suggestion of Remand As to 2 Cases in the B3 Pleading Bundle ("Suggestion of Remand") (Rec. Doc. 27027). In each of those documents, the Court discussed the requirements of PTOs 63, 66, and 68 in detail, as well as the parties' compliance with those orders. Because the parties to those 808 B3 cases had completed the PTO 63, 66, and 68 processes, the Court concluded that those cases were ready for severance from MDL 2179:

> Although there is still work to do in the MDL with respect to certain other cases, the B3 cases on this Suggestion of Remand have been the subject of extensive proceedings focused on common issues. As set forth above, ***those proceedings have included the exchange of information and documents administered through the PTO 63, 66, and 68 processes. Those processes have been completed***, and the remaining cases turn on resolution of highly individualized facts and issues.

(Suggestion of Remand at 11-12 (emphasis added); *see also* Transfer Order at 13 (substantially identical language); Severance Order at 13-14 (substantially identical language).)

Since the April 2021 reallocation of most B3 cases, nine new B3 cases have been filed—each of them by the Downs Law Group Seven of those cases were first filed in this District and consolidated with MDL 2179, where the parties have engaged in the PTO compliance process consistent with the Court's CMO. In several of those cases, the parties completed the process of complying with the Court's PTOs and filing venue stipulations, and the Court has severed their cases from the MDL and transferred or reallocated them for further proceedings.[2]

---

[2] *Duddy, et al. v. BP Expl. & Prod. Inc., et al.*, Case No. 2:21-cv-01456 (E.D. La.) (venue stipulation filed 12/6/2021); *Bychurch v. BP Expl. & Prod. Inc., et al.*, Case No. 2:21-cv-01468 (E.D. La.) (venue stipulation filed 12/6/2021); *Clark, et al. v. BP Expl. & Prod. Inc., et al.*, Case No. 2:21-cv-01732 (E.D. La.); *Avila, et al.*

5

Plaintiff Sonja Johnson first filed her B3 case against BP and others in the United States District Court for the Southern District of Alabama on July 16, 2021. Her complaint alleges that she was injured by harmful exposure to crude oil and dispersants while she was "[f]ishing during 2010 and 2011 in Alabama including Dog River and in and around the Causeway, located in Southern Alabama" and "[r]egularly consuming the toxic seafood that she caught." (Compl., Case No. 2:21-cv-02243, Rec. Doc. 1, ¶¶ 22, 78-81.) As required by the Panel's Rules,[3] BP promptly notified the JPML of this case as a potential tag-along action to MDL 2179, and the Panel Clerk listed it on Conditional Transfer Order No. 141 ("CTO-141"). (JPML MDL 2179 Rec. Docs. 2047, 2049.) On August 19, 2021, Plaintiff moved to vacate CTO-141. (JPML MDL 2179 Rec. Doc.2058.)

After full briefing, the Panel issued its Transfer Order on December 7, 2021, denying Plaintiff's motion to vacate and ordering that her case be transferred to this Court. (JPML MDL 2179 Rec. Doc. 2066.) The Panel rejected Plaintiff's argument that no issues remained in her case to be addressed by this Court. Instead, it noted that transfer of Plaintiff's case was appropriate to allow the parties to participate in the disclosure process that has effectively governed all other B3 plaintiffs and continues under the B3 CMO and PTOs 63, 66, and 68 for new B3 cases in MDL 2179:

> In a series of pretrial orders, the transferee court has established procedures for determining which of the remaining personal injury claims in the MDL have a sufficient evidentiary basis to proceed further and should be remanded,

---

*v. BP Expl. & Prod. Inc., et al.*, Case No. 2:21-cv-01736 (E.D. La.) (transferred to S.D. Tex. on 2/4/2022); *Brightbill, et al. v. BP Expl. & Prod. Inc., et al.*, Case No. 2:21-cv-01811 (E.D. La.) (transferred to S.D. Ala. on 2/7/2022); *Byrd, et al. v. BP Expl. & Prod. Inc., et al.*, Case No. 2:21-cv-02104 (E.D. La.); *Shaina M.,, et al. v. BP Expl. & Prod. Inc., et al.*, Case No. 2:21-cv-02386 (E.D. La.).

[3]  See R.P.J.P.M.L. 7.1 ("Any party or counsel in actions previously transferred under Section 1407 shall promptly notify the Clerk of the Panel of any potential tag-along actions in which that party is also named or in which that counsel appears.").

>transferred, or assigned to a judge within the Eastern District of Louisiana for further proceedings. Those procedures require plaintiffs to provide basic information and documentation relating to the very issues of specific causation that plaintiff identifies as unique to her case. While most of the B3 cases in the MDL have completed that process, there remain a number of cases that have not. Until the transferee judge indicates that B3 cases no longer are required to complete this process, we see no reason to exempt plaintiff's action from complying with the pretrial orders applicable to all other B3 cases.

(*Id*. at 1-2 (footnote omitted).)

The Panel also rejected Plaintiff's assertions that the B3 CMO "indicates that the transferee judge did not intend that further B3 tag-alongs should be transferred to the MDL" and that the CMO exempts any B3 case filed outside this district from compliance with this Court's PTOs. (*Id.* at 2.) Instead, the Panel observed, the B3 CMO simply did not address how B3 cases newly-filed in other courts should be handled, and so did not impede the Panel's decision to transfer a new B3 case like Johnson's to MDL 2179. Johnson's case was transferred to this Court and filed in the Eastern District of Louisiana on December 9, 2021. The Court entered the B3 CMO in Johnson's individual case docket that same day. (Case No. 2:21-cv-02243, Rec. Doc. 25.)

While Plaintiff's motion to vacate was pending, Downs filed a second B3 case in the Southern District of Alabama. Plaintiff Marian Law filed suit against BP and others on December 2, 2021[4], and the JPML issued a conditional transfer order eight days later. (JPML MDL 2179 Rec. Doc. 2068)). On December 30, 2021, Ms. Law moved to vacate that conditional transfer order, informing the Panel that her counsel were "in the process of seeking a clarification from the transferee judge as to whether B3 cases filed outside the transferee court

---

[4] Ms. Law's complaint alleges personal injuries arising from alleged harmful exposure to crude oil and dispersants while she was working as a grocery deliverer and "assisting her husband in his law services business" in and around the Gulf Shores and/or Orange Beach, Alabama. (Compl., Case No. 21-cv-00520, Rec. Doc. 1¶¶ 22, 78-81). She further alleges she was exposed while taking weekly trips to beaches in these areas and ingesting "contaminated seafood from the waters of the Gulf of Mexico." (*Id*.)

should be transferred to the MDL or whether such cases are exempt from complying with the pretrial orders." ("M. Law Motion to Vacate Reply Br.") (JPML MDL 2179 Rec. Doc. 2079-1 at 1 n.3.) On January 21, 2022, BP submitted its response brief to the Panel, stating that "[c]ounsel for BP is not aware of any such request being submitted to Judge Barbier." (JPML MDL 2179 Rec. Doc. 2080 at 10 n.2.)

On January 28, 2022, Plaintiff filed the instant Motion. One hour later, Downs filed Ms. Law's reply brief in support her motion to vacate before the JPML, attaching its newly-filed Motion and informing the Panel that a "Motion to Clarify filed by the undersigned is pending a decision by the transferee judge and Ms. Law's case should not be transferred to the Eastern District of Louisiana until a clarification is received by [sic] the transferee judge." (JPML MDL 2179 Rec. Doc. 2082 at 6; *see also id.* at 9 (stating that the Panel "should reserve it's [sic] orders in this case" until this Court rules on Downs's motion).)

On January 31, 2022, the Court ordered that any response to Down's Motion be filed by February 14, 2022.

**ARGUMENT**

The Court's orders are clear and correct as to how future B3 cases are to be managed. Downs's Motion identifies no vagueness, ambiguity, or error in the B3 CMO that would require the "clarification or correction" it purports to seek. Likewise, the MDL Panel and other District Courts have expressed no confusion or lack of guidance regarding the B3 CMO. The "clarification or correction" that Downs's Motion requests is therefore unnecessary.

Indeed, the order to which Downs's Motion actually objects is not ***this Court's*** CMO, but the ***MDL Panel's*** Transfer Order, which Downs contends is "unreasonable, serves no effective purpose and is the functional equivalent of an impermissible 'Lone Pine' order." (Mem. at 7.)

8

Likewise, the "PROPOSED CLARIFICATION" to the CMO that Downs requests is not an explanation of any of its provisions, but rather a new admonition from this Court that "[t]he JPML shall apply the appropriate the [sic] statutory criteria" when making its transfer decisions. (Mem. at 12.) That collateral attack on the JPML's order is improper. The Panel's transfer order was well-reasoned, appropriate, and correctly interpreted this Court's orders regarding the case management of the B3 cases. Downs's Motion lacks any merit and should be denied.

I. **THE COURT'S ORDERS DO NOT REQUIRE CLARIFICATION AS TO HOW FUTURE B3 CASES SHOULD BE MANAGED.**

Downs's Motion is unfounded and contrary to settled precedent in MDL 2179. This Court's orders have always required the parties to any B3 case that becomes part of MDL 2179 to comply with its PTOs—in particular, PTOs 63, 66, and 68. That is true for cases filed in the Eastern District of Louisiana following transfer by the JPML no less than for cases filed directly in this District. That approach has allowed all B3 cases to be treated consistently from a case management perspective and to all have the benefit of the efficient early disclosure process developed by the Court over the course of several years.[5] Nothing in the B3 CMO changes or obscures that requirement. Instead, the CMO makes clear that the Court will continue to consolidate any new B3 cases in the Eastern District of Louisiana into MDL 2179 for compliance with the PTO process. (B3 CMO at 8.) With regard to B3 cases that may be filed in

---

[5] Likewise, PTOs 63, 66, and 68 were developed to apply to B3 plaintiffs who are pursuing their claims as Gulf Coast residents just as much as to B3 plaintiffs who worked as cleanup workers. Downs complains that it is unfair for plaintiffs like Johnson who were not cleanup workers to be subject to this Court's "strict and burdensome pretrial orders" when defendants are unlikely to have a significant number of plaintiff-specific documents to produce to those plaintiffs under PTO 68. (Mem. at 8.) But Downs's argument ignores the fact that hundreds of resident B3 plaintiffs were required to—and did—comply with those PTOs before their cases were severed to proceed outside MDL 2179. Neither this Court nor the Fifth Circuit has ever deemed this Court's PTOs to be an undue burden on resident plaintiffs, let alone a burden that would justify eliminating the PTO requirements for *all* future B3 cases filed outside of this District—including any future B3 cases filed by cleanup workers.

9

other districts—and hence within the jurisdiction of other judges—the CMO is appropriately silent:  Consistent with the MDL statute (28 U.S.C. § 1407), which entrusts decisions about multidistrict transfer to the MDL Panel, the B3 CMO neither requires nor forbids transfer of cases to MDL 2179.  Neither does it exempt such cases from compliance with the PTOs should they be transferred to this Court.

The MDL Panel has not asked for, and does not require, clarification or correction of the Court's B3 CMO.  Despite Downs's assertion that the JPML suffered from "a lack of guidance" about the meaning of the B3 CMO, the Transfer Order demonstrates that the Panel grasped its meaning clearly.  Indeed, the Panel was under no false impression that the B3 CMO *required* that it transfer future B3 cases to MDL 2179.  Rather, the Panel appropriately made its own determination that transfer would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation, including because it would require new plaintiffs to follow the same pretrial orders that have allowed for the effective and efficient management of all previously filed B3 cases. (Transfer Order at 2 ("Plaintiff further argues that a February 2021 case management order indicates that the transferee judge did not intend that further B3 tag-alongs should be transferred to the MDL . . . .  But the case management order does not address the question whether B3 cases filed outside the transferee court should be transferred to the MDL . . . .  As such, it does not provide a ground to deny transfer.").)  Downs's suggestion that the Panel was confused or misled by the B3 CMO is without basis.  The JPML's decision to transfer Plaintiff's case was reasonable and appropriate and does not require correction or admonition from this Court.

Likewise, no clarification is needed as to the application of the Court's orders to Plaintiff's case.  Having been transferred to this Court and consolidated with the MDL,

10

Plaintiff's case is subject to PTOs 63, 66, and 68. Following the Panel's order, her case was filed in this Court on December 9, 2021, and the Court entered the B3 CMO in her case the same day. (Exhibit 1 (E.D. La. Docket Report for Case No. 2:21-cv-02243) ("Date Filed: 12/09/2021").) Consistent with the B3 CMO, the parties must comply with the PTOs by March 9, 2022—ninety days from the date Plaintiff's case was filed in this Court.

Although the Downs Law Group informed the JPML that it was seeking clarification whether "B3 cases filed outside the transferee court . . . are exempt from complying with the pretrial orders" (M. Law Motion to Vacate Reply Br. at 1 n.3), there does not appear to be any dispute that Ms. Johnson is required to comply with the Court's PTOs. Nothing in Downs's Motion asks the Court to order that Plaintiff need not comply with its orders now that her case is part of MDL 2179. To the contrary, Downs has agreed that the B3 CMO applies to Ms. Johnson's case and that she is required to comply with the Court's PTOs by March 9, 2022. (*See* Exhibit 2 (Jan. 4, 2022 Email from S. Ajwani to BP Counsel) (stating that "the 90 days deadline for completion of the PTOs would end on March 9, 2022" for Ms. Johnson's case)).

Accordingly, there appears to be no dispute that Plaintiff is required to comply with the Court's PTOs 63, 66, and 68 and that her obligation to do so is unaltered by the fact that her case was first filed in another jurisdiction. Upon compliance with those PTOs, Ms. Johnson may seek a suggestion of remand of her case to the transferor court, consistent with 28 U.S.C. § 1407 and the Court's prior practice in this MDL. No clarification of the Court's orders is needed as to her case.

## II.  THE COURT'S ORDERS DO NOT REQUIRE CORRECTION AS TO HOW FUTURE B3 CASES SHOULD BE MANAGED.

In permitting the continued transfer of B3 cases to MDL 2179 for compliance with the Court's PTOs, the B3 CMO adopts a prudent approach with regard to future B3 cases and does not need to be corrected.  Defendants respectfully suggest that individual determinations as to whether transfer is warranted under 28 U.S.C. § 1407 will continue to result in better outcomes than a blanket rule against transfer of new B3 cases, which would prevent transfer and consolidation even when the parties agree that transfer would be appropriate and serve the interests of justice and efficiency.

In overseeing this MDL for over many years, this Court has developed tremendous expertise concerning the complex facts and legal theories involved in the B3 cases.  Thus, even though this MDL is in its late stages, addressing any newly-filed B3 action first in the MDL promotes the efficient resolution of any threshold legal issues that may be raised in a new B3 case.  Moreover, as the MDL Panel emphasized, the Court has established effective procedures in its PTOs for early disclosure of information about the factual and legal bases for new B3 cases that is essential for determining if and how those claims should proceed further.  That PTO compliance process is now largely self-executing and presents minimal burden to the Court.

In opposing transfer of future B3 cases to MDL 2179, Downs asserts that transfer would infringe upon plaintiffs' constitutional rights to Due Process by delaying their day in court and subject plaintiffs to "the functional equivalent of an impermissible 'Lone Pine' order" in the form of this Court's PTOs.  (Mem. at 7, 11.)  The JPML was not persuaded by those arguments when Plaintiff presented them to the Panel,[6] and this Court should reject them as well.  Courts

---

[6]  *See* Transfer Order at 2 ("[P]laintiff maintains that transfer of her action would be inefficient and would result in inconvenience and delay.  Again, we are not persuaded.  The procedures for B3 cases in the MDL were

have routinely rejected the argument that MDL transfer would result in an unconstitutional delay or other burden on plaintiffs' Due Process rights. *See, e.g.*, *In re Sugar Industry Antitrust Litigation*, 399 F. Supp. 1397, 1400 (J.P.M.L. 1975) ("We have considered this constitutional argument and find it without merit."). Similarly, the Fifth Circuit has upheld the Court's use of PTOs 63, 66, and 68 in multiple rulings,[7] and Downs's suggestion that requiring compliance with those orders is "the equivalent of an impermissible 'Lone Pine' order" lacks any merit.

To preclude transfer of new related cases to MDL 2179 or to exclude them from the court's PTOs would create inefficiencies and result in inconsistent treatment of cases. At present, all B3 cases pending outside the Eastern District of Louisiana (with the exception of the recently-filed *Marian Law* case, which the Southern District of Alabama has stayed pending a final JPML decision on transfer) have completed this Court's PTO process. Those other courts have relied on that fact in developing their own case management plans for their B3 cases. (*See, e.g.*, Exhibit 3 (B3 Case Management Order entered by the United States District Court for the Southern District of Alabama) at 3 (discussing how this Court's PTO process provided "information necessary to the Court's effective management" of the B3 cases).) Precluding transfer of B3 cases filed outside the Eastern District of Louisiana and exempting them from compliance with the Court's PTOs would result in those cases proceeding on an unequal footing from all other B3 cases. As the JPML correctly recognized, there is no reason to exempt such cases from a process applicable to all other B3 cases.

---

established as an efficient means of identifying those actions that warrant assignment to a trial court for further proceedings. And as we repeatedly have held, while it might inconvenience some parties, transfer of a particular action often is necessary to further the expeditious resolution of the litigation taken as a whole.").

[7] *In re Deepwater Horizon (Graham)*, 922 F.3d 660 (5th Cir. 2019) (PTO 63); *In re Deepwater Horizon (Alvarado)*, 988 F.3d 192 (5th Cir. 2021) (PTO 66); *In re Deepwater Horizon (Moore)*, 17 F.4th 528 (5th Cir. 2021) (PTO 68).

## CONCLUSION

The Court's B3 CMO is both clear and correct as to how future B3 cases are to be managed. Downs has offered no valid basis for the Court to clarify or correct its order, and its Motion should be denied.

Dated: February 14, 2022                    Respectfully submitted,

*/s/ Devin C. Reid*

R. Keith Jarrett (Bar # 16984)
Devin C. Reid (Bar # 32645)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

A. Katrine Jakola, P.C.
(katie.jakola@kirkland.com)
Martin L. Roth
(martin.roth@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

*Attorneys for BP America Production Company and BP Exploration & Production Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Defendants' Response in Opposition to the Downs Law Group's Motion for Clarification or Correction of the B3 Case Management Order** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February, 2022.

*/s/ Devin C. Reid*
Devin C. Reid