**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| IN RE: | **OIL SPILL BY THE OIL RIG** | ) | **MDL NO: 2179** |
| | **"DEEPWATER HORIZON" IN** | ) | |
| | **THE GULF OF MEXICO, ON** | ) | **SECTION: J** |
| | **APRIL 20, 2010** | ) | |
| | | ) | |
| Relates to: 2:14-cv-657 | | | |
| | **Melancon Rimes, LLC et. al.** | ) | **Judge Barbier** |
| | **v. Downs Law Group, LLC, et. al.** | ) | **Mag. Judge Currault** |
| | | ) | |
| | | ) | |

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO RULE 12(b)(2)
AND 12(b)(6)**

COMES NOW, Defendants  Downs Law Group, P.A., Craig T. Downs, and  Jeremy D.

Friedman, and hereby files their Joint Memorandum of Law in Support of Their Motion to

Dismiss the Plaintiffs' Amended Complaint pursuant to Rule 12(b)(2) and 12(b)(6).

## I.  Introduction

This is a case involving newly crafted factual allegations by the Plaintiffs Melancon |

Rimes, LLC ("Melancon") and Sterbcow Law Group, LLC ("Sterbcow") relating to claims for

Breach of Fiduciary Duty and violation of Louisiana's Unfair Trade Practices and Consumer

Protection Law ("LUTPA").    After initially filing a lawsuit in the state court in Miami-Dade

County, Florida in the case of *Sterbcow Law Group, LLC et. al. v. The Downs Law Group, P.A.*,

claiming that the parties entered into a written attorney participation agreement, whereby they

claimed they were entitled to recover 10% of the "net recovery from the BP litigation settlement

funds for work performed subsequent to the objection and the appeal,[1]" the Plaintiffs have now

have changed course and alleged the following:

> Defendants, a Florida law firm and Florida attorneys, initiated a joint venture agreement with Plaintiffs, two Louisiana law firms and Louisiana attorneys, specifically for the purpose of soliciting and representing Louisiana residents for the BP MDL and with the agreement that attorneys' fees would be shared between the parties.  (Amended Complaint, Paragraph 3)

Essentially, having discovered that their claims under the contract were invalid, the Plaintiffs

have now come to this Court and completely disclaimed the actual written agreement between

the parties which governs any subsequent work that may be performed by the Plaintiffs in

relation to the Defendant Downs' clients.  Instead they now allege that a subsequent "oral" joint

venture agreement was entered into by all five parties herein, i.e. both Plaintiff law firms, the

Downs Law Group, P.A., Craig Downs, individually, and Jeremy Friedman, individually

concerning additional work to be performed in regards to the Downs' clients.

In regards to this alleged "joint venture" agreement, the Plaintiffs fail to allege any of the

terms governing the parties.  They fail to allege the scope of work to be performed by the

attorneys, fail to allege when the agreement began, fail to allege the roles of the various parties to

the agreement, and fail to allege the responsibilities to pay expenses as to each party therein.    In

addition, the Plaintiffs have failed to allege the amount of attorneys fees that they were due to be

paid based upon the undefined scope of work they were to perform.  Essentially, the Plaintiffs

have failed to plead the existence of any term of the oral joint venture agreement or explain how

this new oral agreement now superceded the clear terms of the Attorneys Participation

Agreement and negated its application to the parties herein.

---

[1] The Plaintiffs attached a copy of the attorneys participation agreement to the original state court complaint.

As more fully described below, not only does this Court lack personal jurisdiction over one or more of the Defendants, but the Plaintiffs have again failed to state a cause of action for which relief can be granted. For these reasons, the Court should dismiss the Plaintiffs' Amended Complaint with prejudice.

## II. <u>Material Facts</u>

The Defendant Downs Law Group, P.A.("Downs") is a Florida law firm with its principal place of business in Miami-Dade County, Florida. Defendant Craig Downs ("C.Downs") is the owner of the law firm. Defendant Jeremy Friedman ("Friedman") is an employee of the Defendant Downs Law Group P.A. Defendant Friedman additionally serves as counsel for the Downs Law Group, P.A. as to outside matters that the law firm has been named a party therein.

In 2012 the Downs represented certain clients who had claims related the multi-district class action Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico in Case No. MDL 2179. At or about that time, a Class Action Medical Benefits settlement agreement ("settlement agreement") had been proposed by certain class representatives which were seeking approval by the Court. Certain clients of the Downs had objections to the settlement agreement and further had a position as to how the settlement agreement could be improved.

As a result, Downs, on behalf of these certain clients, sought to file these objections to the settlement agreement in this Court. At or about that time, it was determined that in order to do so properly, the Downs and C. Downs required the assistance of local counsel in Louisiana in the relation to the filing of the objection. Defendant Friedman, an employee attorney at the firm, was not working on the "BP group of cases." Rather, Friedman had other duties at the firm including his own separate caseload involving commercial and real estate matters.

As part of his real estate practice, Mr. Friedman became acquainted with Plaintiff's

3

principal, Marx Sterbcow, a Louisiana attorney located in New Orleans, who referred various

cases to Downs.   As a result, and based on his relationship with Mr. Stebcow, Defendant

Friedman suggested that Sterbcow speak with C. Downs about serving as local counsel for the

objections to the class action settlement agreement.  Defendant Friedman advised Sterbcow as to

what Downs was looking to do as part of the objection and further asked, on behalf of Downs,  if

he would serve as local counsel for these objections.  Ultimately Downs and Sterbcow, along

Sterbcow's associated law firm, Plaintiff Melancon | Rimes, LLC, another Louisiana law firm,

agreed to serve as local counsel for the objections for these certain clients.

The parties thereafter entered into a written agreement called the "Attorney Participation

Agreement" which specifically set forth the obligations of each party and the compensation each

party would be receiving.  As set forth therein, the compensation was based on a contingency, i.e.

the Downs Law Group, P.A. recovering fees as a result of being successful with the objections.

The parties agreed that in relation to the objections, Sterbcow and Melancon would receive 10%,

jointly, of the fees the Defendant Downs recovered for the objections.  The individual

Defendants, Craig Downs and Jeremy Friedman were not parties to that agreement.

The scope of work to be performed by Sterbcow and Melancon was specifically laid out

in the Attorney Participation Agreement paragraphs 1(A) through 1(D).  The only services that

Melancon and Sterbcow agreed to perform were those services described in the agreement, all of

which related to the objections to the class action settlement.

In fact, at the demand of Plaintiffs Sterbcow and Melancon, an additional paragraph was

inserted in the contract, paragraph 3,  which stated that the Plaintiffs were not obligated to

perform any other services under the agreement for this percentage.  And, if additional services

were requested, the percentages set forth in the agreement would be adjusted to reflect any additional work being performed by the Plaintiffs.  The Plaintiffs were not required to undertake any new work.  Finally, the parties further agreed that the governing law as to the agreement would be Florida law.

Upon entering into the agreement, and due to the fact that Sterbcow and Melancon would be providing legal services for the clients along with Downs as to the objections only, their names were added to certain contingency fee agreements with the clients. These agreements, as set forth therein, were also governed by Florida law.   Neither Sterbcow nor Melancon executed any of the client retainer agreements.  Rather, their names were placed into the agreements to notify the clients that they were also providing services related to the objections.

Sterbcow and Melancon subsequently did in fact provide legal services to the certain clients that filed objections.  Specifically, they assisted with the preparation of the objections. They further assisted with the appearance for the attorneys pro hac vice in this case  from the state of Florida.  In addition, they assisted with the oral argument at the Final Fairness hearing on November 8, 2012.  Finally, they provided assistance with the filing of a notice of appeal.  The appeal was thereafter withdrawn and no further work was performed related thereto.

The Defendants' clients were unsuccessful in regards to the objections.  As result, Downs did not receive any attorneys fees related thereto.  And, for this reason, the Plaintiffs similarly did not receive any attorneys for their work on the objections.

In total,  the Plaintiffs worked pursuant to the Attorneys Participation Agreement from August 26, 2012 through November 8, 2012, and shortly thereafter in regards to the filing and then withdrawing of the Notice of Appeal.  The total amount of time worked in regards to the

objections and the agreement was under four months.  Any work performed was specified in the Attorneys Participation Agreement and limited to that scope.  The Plaintiffs time spent on this matter was minimal and limited by the specific terms of the agreement.

Subsequently, Downs sought additional clients that had suffered injuries in relation to the incident as described in the settlement agreement.  By this time, Defendant Friedman had no further involvement in this group of cases other then to offer legal advice to the Defendant Downs, as its counsel, concerning issues that arose pertinent to Downs in these cases.

In relation to these new prospective clients, the Plaintiffs agreed to permit Downs to utilize his physical office space to assist in signing up these clients.  At no time did the parties ever discuss that Sterbcow or Melancon would receive compensation for any "legal" services that they would be providing in relation to the new clients concerning permitting the use of the offices nor were any provided.  Rather, during the time that this was occurring, Mr. Sterbcow requested that the Defendant Downs pay rent for the use of the space.

At no time did any of the Plaintiffs ever discuss with the Defendants about a new oral "joint venture agreement" that would supercede the terms of the Attorney Participation Agreement.   There was no discussion of any additional compensation, no discussion of cost splitting, and no discussion as to any new scope of services that the Plaintiffs would provide to the Downs' clients.  In addition there was no discussion as to expanding the services of the Plaintiffs pursuant to the  "additional services" provision in the Attorneys Participation Agreement.

Defendant Friedman additionally had no participation in any way to the subsequent efforts by Downs to sign up and represent new clients in Louisiana after the objections had been

denied.  He never attended the offices of Sterbcow or Melancon, never traveled to the state of Louisiana for this group of cases, never spoke with any of the new clients, never prepared any of the documents for the clients to execute, never filed any documents with the court or performed any other legal services for these clients.

During the course of these new client sign-ups, and *prior* to any significant work being performed on their behalf by Downs, Downs discovered that the original retainer agreements related to the objections were being used for the new clients going forward even *after* the objections had already been denied and all appeals had been withdrawn.  For this reason, C. Downs, Defendant Friedman's direct supervising attorney, asked for a legal opinion as to how to proceed such that Sterbcow and Melancon were not performing any further legal work for these clients and/or there was no agreement for them to do so in the future yet their names remained on some of the retainer agreements.

Defendant Friedman then sent an attorney-client privileged email to Downs, as its counsel, and provided certain legal advice, at the specific request of his supervising attorney, Craig Downs.  This advice included advising the current clients of the work performed by the Plaintiffs, that such work had been completed, and that no additional work would be performed by these parties.

Subsequently, the Plaintiffs illegally obtained a copy of the attorney-client privileged communication from a former employee of Downs.   Attempting to take advantage of the situation, Defendant Melancon contacted the Defendant Downs and sought to find out how many retainer agreements had their names on them.  He created a fake pretense that he needed to know for purposes of his malpractice insurance.    Neither of the Plaintiffs were aware of this

information because neither of them ever actually executed the retainer agreements, saw the retainer agreements, or performed any services related thereto.

Upon Mr. Melancon contacting the Defendant Downs with this request, it became clear to the Defendants that Mr. Melancon was not being truthful about the purpose of his request. Rather, it became clear that the Plaintiffs were going to try to use the fact that their names remained on the retainer agreements after their work was completed to try to obtain attorneys fees when they in fact never performed any work nor was there any agreement to do so. At that point Downs explained the situation to the Plaintiffs, i.e. that they were not entitled to any attorneys fees on any of the Downs' clients because no fees were ever recovered in relation to the work performed by the Plaintiffs.

The Plaintiffs thereafter filed their lawsuit in Miami-Dade County, Florida claiming that the Defendants had breached the Attorneys Participation Agreement, that they were interfering with their rights to "their clients" because Downs put their names were on the unsigned retainer agreements, and that **10% of all fees** going forward had to be paid to the Plaintiffs as set forth in the additional work section of the Attorneys Participation Agreement.

The Plaintiffs, however, learned through discovery and depositions in the state case that they cannot recover attorneys fees from clients in Florida unless they actually executed the retainer agreement and performed legal services on their behalf. As the Plaintiffs failed to execute the agreements, failed to perform any work, and that was no agreement to perform any work, the Plaintiffs realized they could not prevail on their case in Florida.

Now, they have changed venue and created a new alternative story about a new "oral joint venture agreement" that all five parties herein entered into, including two of the Defendants

individually.   They now fail to even mention the existence of the terms of the Attorneys

Participation Agreement other then to allege that the parties "agreed" to "jointly" represent

certain clients for the objections.

The Plaintiffs have alleged no identifiable terms as to this new oral joint venture

agreement.  The Plaintiffs failed to identify the scope of work of the agreement, the breakdown

of legal services to be provided by each of the five parties thereto , the compensation to be

received by each of the parties, or the risks involved as to each party, including the allocation of

costs that each of the parties to the agreement are required to pay.

The reason that the Plaintiffs do not identify any terms of this new agreement is because

they are well aware that it never existed.  They alleged in the state court proceedings that the sole

agreement consisted of the attorneys participation agreement and that they were entitled to 10%

of all claims filed by Downs regardless if they did any work on them.  They relied upon the

Attorneys Participation Agreement in the original version of the Complaint.   Now, the Plaintiffs

have created a new story, disclaimed the application of the only agreement that ever existed

between the parties, and have come up with "alternative facts" as to the relationship between the

parties.

This Court was very clear with the Plaintiffs at the hearing in November, 2021.  If they

did not perform legal services for the clients, they were not entitled to recover attorneys fees.

The court further stated that signing up clients does not constitute the performance of a legal

service to which the Plaintiffs would be entitled to compensation, even if they did sign up one or

more clients.  Now, as a result of the Court advising the Plaintiffs of these issues, an entirely new

story has emerged.

Notwithstanding the new allegations, dismissal with prejudice of all Counts of the Amended Complaint is proper as more fully described below.

### III.  Memorandum of Law

**I.      This Court lacks personal jurisdiction over the individual Defendants Jeremy Friedman and Craig Downs.**

This Court lacks personal jurisdiction over the individual Defendants, Jeremy Friedman and Craig Downs.   "Without personal jurisdiction, the Court is powerless to proceed to an adjudication. The plaintiff bears the burden of proof on a motion to dismiss for lack of personal jurisdiction. Presenting prima facie evidence is sufficient for the plaintiff to meet her burden of proof.  The Court may exercise personal jurisdiction over a nonresident defendant if '(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Hernandez v. TransUnion Inc*., 2020 WL 1492979 (E.D. La. Mar. 27, 2020)

"The Louisiana Supreme Court has held that '[t]he limits of the Louisiana Long-arm Statute and the limits of constitutional due process are now coextensive,' accordingly, 'the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements.' " *Id.*  "Because Louisiana's long-arm statute, La. R.S. § 13:3201, extends jurisdiction to the limits of due process, the Court need only consider whether the exercise of jurisdiction in this case satisfies federal due process requirements." *Id.*

"Under federal due process requirements, the Court analyzes whether the nonresident defendant has certain minimum contacts with the forum state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.*   The main focus of the inquiry of personal jurisdiction is "the relationship among the defendant, the forum, and

the litigation.  Minimum contacts are contacts that 'give rise to general or specific jurisdiction.'"
*Id.*

"Courts exercise general jurisdiction over any action where the defendant has 'continuous and systematic general business contacts' with the forum state. If the contacts are less pervasive, courts may exercise specific jurisdiction in a suit arising out of or related to the defendant's contact with the forum." *Id.*  Here, the Plaintiff cannot satisfy its burden of demonstrating that either general or specific jurisdiction exists as to either of the individual Defendants, i.e. Jeremy Friedman or Craig Downs.

### A. *Jeremy Friedman*

The Plaintiff cannot establish, nor is there any evidence to suggest, that this Court has personal jurisdiction, general or specific, as to Defendant Jeremy Friedman.  As demonstrated above, Mr. Friedman's sole involvement in these cases in Louisiana related to the objections filed by certain clients of Downs.  This involvement occurred prior to any of the allegations in the Amended Complaint.

Mr. Friedman traveled to the state of Louisiana one time in November, 2012 for business purposes for the Final Fairness hearing related to the objections.  He has not conducted business in the state of Louisiana during this time frame.  He is not licensed to practice law in the state of Louisiana nor does he have any clients in this jurisdiction.  He has further conducted no other business activities in the state of Louisiana during this time frame.  In addition, he had not conducted any business in the state of Louisiana for at least five years prior to 2012.  He further does not have any own personal or tangible assets in the state of Louisiana nor does he own any

real estate therein.  As such, Defendant Friedman clearly does not have 'continuous and systematic general business contacts' with the forum state of Louisiana to satisfy the requirements of general jurisdiction. *Id.*

The requirements of specific jurisdiction are similarly not satisfied.  Mr. Friedman's sole direct involvement relates to the objections filed in this case.  The objections were filed and fully adjudicated and resolved prior to the new allegations by the Plaintiffs in regards to services being performed *after* the objections were adjudicated.  He  never attended the offices of the Plaintiffs to sign up any clients,  never signed up any clients, never spoke with any of these clients at issue, never performed any legal services for any of these clients at issue in the state of Louisiana.

The Plaintiffs' sole allegation related to Mr. Friedman for purposes of "specific jurisdiction" is an illegally obtained privileged communication between Friedman and C. Downs concerning the client retainer agreements.  However, this communication occurred entirely in the state of Florida. It related to and solely concerned legal representation of the Downs Law Group in the state of Florida.  The communication occurred as part of the employment of Mr. Friedman in the state of Florida and made to a supervising attorney in the state of Florida.   Mr. Friedman was providing legal advice to the Downs Law Group which he was asked and required to do by his employer.  He did not contact any client or send out any correspondence to any client related to this case in Louisiana, Florida, or any other state for that matter.

There is thus no allegation that Mr. Friedman took any actions in his personal capacity in the state of Louisiana.  All of the allegations relate to activities performed by Defendant Friedman as an employee of the Downs Law Group, P.A.  The Plaintiffs in fact allege for personal jurisdictional purposes that "Mr. Friedman is domiciled in the State of Florida and is an

associate with Downs Law Group." (Amended Complaint, P. 13).  There is no allegations that any actions taken by Defendant Friedman were in his personal capacity, outside of his employment with Downs Law Group, P.A.

"It is settled that jurisdiction over individual officers and **employees** of a corporation may not be predicated merely upon jurisdiction over the corporation itself." *Cobb Industries, Inc. v. Hight*, 469 So.2d 1060, 1063 (La.App. 2nd Cir.1985)(emphasis added). "This doctrine is often times referred to as the "fiduciary shield doctrine" and has its origin in judicial interpretations of long-arm statutes." *Id.; Columbia Briargate Co. v. First National Bank in Dallas*, 713 F.2d 1052 (4th Cir.1983), cert. denied, *Pearson v. Columbia Briargate Co.,* 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984). "It is rooted in the principle that the acts of a corporate officer in his corporate capacity cannot form the basis for jurisdiction over him in an individual capacity.*" Id.* "When dealing with corporate officers, a court must look to the individual and personal contacts, if any, of the officer or employee, with the forum state." *Cobb Industries, Inc.*, supra at 1064, citing *Candy H. v. Redemption Ranch, Inc*., 563 F.Supp. 505 (M.D.Ala.1983).

As all allegations relate to the Defendant Friedman in his capacity as an employee of Downs Law Group, P.A. and there are no facts alleging any personal contacts to the state of Louisiana, this Court lacks personal jurisdiction over the Defendant Friedman.  As a result, the Amended Complaint should be dismissed as to this Defendant accordingly.

### B.  *Craig Downs*

Personal Jurisdiction similarly does not exist over Craig Downs.  Mr. Downs does not personally conduct business in the state of Louisiana.  He does not personally have any offices or employees there nor has he had any during the time of the alleged incidents.  He further does not

own any real estate nor have any additional assets in the state of Louisiana.  For this reason as well, general jurisdiction over Mr. Downs does not exist.

The same would hold for true for specific jurisdiction as Mr. Downs has not personally conducted any business or engaged in any actions personally in relation to the case at issue. Rather, all allegations in the Amended Complaint concerning actions taken by the Downs Law Group, P.A. in regards to the representation of its clients.  There is no allegation or claim that Mr. Downs personally took any actions outside of his capacity as a representative of the Downs Law Group, P.A.

There is similarly no allegations that Defendant C. Downs took any of the actions in his personal capacity, or has any personal contacts in the state of Louisiana.  Thus, in accordance with *Cobb Industries, Inc. v. Hight*, 469 So.2d 1060, 1063 (La.App. 2nd Cir.1985) *et al.*,  the Amended Complaint should be dismissed as to Craig Downs individually due to a lack of personal jurisdiction.

## II.     The Plaintiffs have failed to state a cause of action for Breach of Fiduciary Duty involving Co-Counsel.

The Plaintiffs have failed to state a cause of action in their Count for Breach of Fiduciary Duty involving co-counsel and the recovery of attorneys fees.   The Plaintiffs have alleged that the Defendants breached their fiduciary duty to the Plaintiffs in relation to a co-counsel agreement by manipulating them to "execute revised contingency fee agreements that omitted Plaintiffs' names and thereby "retaining all attorneys fees derived from the joint client BP MDL claims."  (Amended Complaint, P. 39)

The Plaintiffs have further alleged that the Defendants "prevented (Plaintiffs) from representing the clients" and "inducing the Plaintiffs to circumvent Louisiana's prohibitions

against out of state attorney marketing and Florida's limitations on advancing medical costs, etc. (Amended Complaint, P.54-57)   The Plaintiffs additionally allege that the Defendants, through their actions, removed the Plaintiffs' prospective rights to recover attorneys fees from the clients at issue.  (Amended Complaint, P.54)

"The elements of a breach of fiduciary duty claim under Louisiana law, are: (1) the existence of a fiduciary duty on the part of the defendant; (2) an action taken by the defendant in violation of that duty; and (3) damages to the plaintiff as a result of that action." *Hall v. Habul*, 2014 WL 2441177 (M.D. La. May 30, 2014) As the Plaintiffs cannot satisfy all of the elements of the claim, dismissal is proper.

There is no fiduciary duty between co-counsel as it relates to the recovery of prospective attorneys fees from a joint client.[2]   In *Scheffler v. Adams and Reese, LLP*, 950 So. 2d. 651 (La. 2007) the Louisiana Supreme Court considered "whether one co-counsel may sue another for breach of fiduciary duty on the theory that the latter's misconduct in handling the representation reduced or eliminated the prospective fees the former expected to realize from the joint representation." *Lee & Perles, L.L.P v. Resolute Mgmt.,* 2019 WL 4745053 (E.D. La. Sept. 27, 2019) "The Louisiana Supreme Court held 'that, as a matter of public policy, based on our authority to regulate the practice of law pursuant to the constitution, ***no cause of action will exist between co-counsel based on the theory that co-counsel have a fiduciary duty to protect one another's prospective interests in a fee*.**' *Id.* (emphasis added) "The court reasoned that allowing such an action would 'subject an attorney to potential conflicts of interest in trying to serve two masters and potentially compromise the attorney's paramount duty to serve the best interests of

---

[2] There is no oral agreement between the parties as stated above.  However, even if there was for purposes of this motion only, there is no fiduciary duty between co-counsel therein.

the client.'" *Id.*

The *Scheffler* court stated as follows:

Consistent with the underlying principles relied on by the courts in the foregoing cases, Louisiana law recognizes that an attorney's paramount duty is, and must be, to his client. *Penalber v. Blount*, 550 So.2d 577, 581 (La.1989). In fact, our law adheres to the principle that in no other agency relationship is a greater duty of trust imposed than in that involving an attorney's duty to his client. *Plaquemines Parish Commission Council*, 502 So.2d at 1040.

"Indeed, this principle of undivided loyalty is firmly embedded in the Rules of Professional Conduct (RPC), adopted by this court pursuant to its exclusive and plenary power to regulate the practice of law. *Scheffler v. Adams and Reese, LLP*, 950 So. 2d. 651 (La. 2007); LSA–La. Const. art. II, §§ 1, 2. See also, *Chittenden v. State Farm Mutual Automobile Insurance Company*, 788 So.2d 1140, 1148. "Recognizing loyalty as an essential element of the lawyer's relationship to a client, Rule 1.7 of the RPC generally prohibits a lawyer from representing a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests. *Scheffler v. Adams and Reese, LLP*, 950 So. 2d. 651 (La. 2007) "Rule 2.1 of the RPC imposes an affirmative obligation upon a lawyer to exercise independent professional judgment and to render candid advice to his or her client, thereby underscoring the importance of avoiding any divided loyalties that might cloud that independent judgment. "*Id.*

Here, the Plaintiffs allege that the Defendants and the Plaintiffs were "co-counsel" and jointly represented these clients.  They allege that the Defendants took actions by removing their names from contingency fee agreements which removed their prospective contingency fee interests in the clients' cases.   Assuming that this is true for the purposes of the Motion only, the Defendants have no fiduciary duty to the Plaintiffs as a matter of law in regards to ensuring that they Plaintiffs get paid their fees.  The Louisiana Supreme Court has made it absolutely clear that no duty can exist between co-counsel under this circumstance because it is against public policy

and that all obligations and duties should be directed to the client.   As no fiduciary duty exists, the Plaintiffs cannot establish the first element of their claim. As a result, dismissal is proper.

Additionally the Plaintiffs cannot satisfy the third element to a claim for Breach of Fiduciary duty, i.e. damages.  In order to demonstrate that the Plaintiffs suffered any losses, they would have to plead and prove that they actually performed legal services for the clients and that they anticipated payment.  The Plaintiffs have alleged that the Defendants prevented (Plaintiffs) from representing the clients.   If the Court takes this as true, then the Plaintiffs have admitted that they did not perform any legal services for the clients for which payment would otherwise be due.

The Plaintiffs have stated  that the only services that were provided involved "signing up the client" and that they were "prevented" from performing any additional services.  This Court stated at the previous  hearing that signing up a client does not qualify as a "service" for which the attorneys would be entitled to payment.  As a result of this Court's statement, the Plaintiffs have now attempted to change their original claims by stating that they did in fact perform some services for these clients while at the same time being prevented from doing so by the Defendants.

However, the Plaintiffs have failed to plead with any specificity what services were actually performed, the length of time spent on such services by the Plaintiffs, when the services were performed, and to which clients the Plaintiffs performed these services.  The Plaintiffs have further failed to set forth the rate compensation that they were to be paid for such services, and the nature of the cost allocation related thereto.   Without such allegations, the Plaintiffs cannot claim as "damages" work that they had performed and had not received compensation.

In addition, any work that the Plaintiffs' claim would have been performed in the future would be speculative and unrecoverable.  It "is hornbook law, in antitrust actions as in others, that even if injury and a cause of action have accrued as of a certain date, future damages that

might arise from the conduct sued on are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 339, 91 S. Ct. 795, 806, 28 L. Ed. 2d 77 (1971); *Moe Light, Inc. v. Foreman*, 238 F.2d 817, 818 (CA6 1956); *Chicago & N.W.R. Co. v. De Clow*, 124 F. 142, 143 (CA8 1903); *Culley v. Pennsylvania R. Co.*, 244 F.Supp. 710, 715 (D.C., Del.1965). *Cf. Howard v. Stillwell & Bierce Mfg. Co.,* 139 U.S. 199, 206, 11 S.Ct. 500, 503, 35 L.Ed. 147 (1891).

Here, the Plaintiffs' claim that their damages are for work that they were "prevented" from being able to perform in the future for the clients as a result of the actions of the Defendants.   However, these damages are too speculative in nature to recover.  Even if the Plaintiffs were counsel of record the clients could terminate the Plaintiffs at any time, including for cause, which would negate the right to recover any future fee.  The clients could in fact terminate the Plaintiffs prior to ever providing any legal services.  Similarly, the Plaintiffs could be counsel of record but recover nothing in relation to their work based on the contingent nature of the relationship.[3]

As a result, the amount of damages sought by the Plaintiffs from being prevented from representing the clients are too speculative in nature to recover.  As damages is an element of a claim for breach of fiduciary duty, and this element cannot be satisfied under any circumstance, dismissal with prejudice of this Count is proper.

### III.    The Plaintiffs have failed to properly plead the existence of a joint venture between the parties.

The Plaintiffs additionally allege  that they entered into a "joint venture" agreement with the Defendants, Downs Law Group, P.A., Craig Downs, and Jeremy Friedman.  However, the Plaintiffs fail to plead any specific facts to support such a claim.  "A joint venture is a special

---

[3] There are a variety of factors that go into an attorney receiving a fee for services rendered, none of which are guaranteed in this circumstance.

combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." *Coffee Bay Investors, LLC v. WOGC Company*, 878 So. 2d. 665 (La. App. 1st Cir. 2004). "A joint venture, like a partnership, is a juridical person, distinct from its partners, created by an agreement between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit. *Broadmoor, LLC v. Ernest N. Morial New Orleans Exhibition Hall Authority*, 867 So.2d 651, 663   The requisite criteria for the existence of a joint venture includes the following:

> (A) A contract between two or more persons;
> (B) A juridical entity or person is established;
> (C) Contribution by all parties of either efforts or resources;
> (D) The contribution must be in determinate proportions;
> (E) There must be a joint effort;
> (F) There must be mutual risk vis-a-vis losses;
> (G) There must be a sharing of profits.

*Coffee Bay Investors, LLC v. WOGC Company*, 878 So. 2d. 665 (La. App. 1st Cir. 2004). Here, the Plaintiffs have failed to plead the all of the criteria to establish the existence of a joint venture between the Plaintiff law firms, the Defendants law firms, *and* the two individual Defendant attorneys.

First, there is no contract between *any* of the parties let alone *all* of them that sets forth any rights or obligations related to such an alleged oral joint venture.  There is no allegation as to when any such contract was entered into, the rights and obligations of each of the five parties involved, the distribution of work, etc.  The Plaintiffs further fail to allege what the agreed upon contribution was to be for each of the five parties within this joint venture.  There is also no allegation as to any determinate proportion of the respective contributions of the five parties allegedly part of the joint venture.

There is further no allegation as to what work was to be performed by each of the alleged five members of the joint venture, i.e. the Plaintiff law firms, the Downs Law Group, Craig

Downs, and Jeremy Friedman.  There is no allegation as to the duties that each member agreed to perform or any specificity as to how the work was going to be allocated between the parties therein.

In addition, and quite significantly, there is no allegation of the allocation of the financial risks that each member of the alleged joint venture agreed to undertake.  The Plaintiffs are alleging that a joint venture was created concerning the representation of thousands of clients and to litigate claims, jointly, on their behalf.  However, there is no allegation as to the manner in which the Plaintiffs and the other three members of the joint venture agreed to share in the financial risks of the litigation, including the payment of costs for thousands of clients, payment of expert fees, and/or any additional expenses associated with the litigation of each client's case.  The Plaintiffs have failed to alleged that they paid, agreed to pay, or even discussed the amount of costs that each of the five individuals and/or entities agreed to contribute to the joint venture.

Finally, there is no allegation as to how any profits would be distributed amongst the five members of the alleged joint venture.  There is no allegation as what the fee percentage each of the five members of the alleged joint venture would receive.  There is no allegation as to how much the Plaintiffs were to receive in the event of success as to any particular case.

The Plaintiffs have thus failed to plead *any* of the seven criteria required for a joint venture, let alone *all* of them.  The Plaintiffs have further failed to plead with any specificity when this alleged joint venture was discussed with all five of the parties or where this discussion took place.

The reality is, the Plaintiffs have completely fabricated the existence of any such "joint venture agreement."  The Plaintiffs cannot allege any specific term of agreement between the parties as set forth in *Coffee Bay Investors, LLC* to establish a joint venture because it never existed.  After the objections were denied, Defendant Downs used the offices of the Plaintiffs to sign up clients.  Plaintiff Sterbcow required Downs to pay rent related to the use of the space.

There was never any discussion, let alone any such agreement, that the Plaintiffs and the Defendants entered into an oral joint venture agreement.

Notwithstanding, the Plaintiffs have failed to plead any specific facts to establish the existence of joint venture agreement. What constitutes a joint venture agreement is a question of law.  *Grand Isle Campsites, Inc. v. Cheek*, 262 So. 2d. 350 (1972)    Without any such proper factual allegations to support the existence of a joint venture agreement between all five of the Defendants, there is no basis to conclude that one existed.  As there is no fiduciary duty between co-counsel generally as to the recovery of future attorneys' fees, and no joint venture exists between the parties, the Plaintiffs' claims for breach of fiduciary duty must be dismissed with prejudice.

### IV.     The Plaintiffs have failed to state a cause of action for Unfair Trade Practices

The Plaintiffs have failed to state a cause of action for Unfair Trade Practices. The Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA") "prohibits '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'"La. R.S. 51:1405; *Int'l Env't Servs., Inc. v. Maxum Indus., LLC*,, 2014 WL 4629662, (W.D. La. Sept. 15, 2014) "Under the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA), a business action is deemed "unfair" when it offends established public policy and when it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." La. Rev. Stat. Ann. § 51:1401;  *Andretti Sports Mktg. Louisiana, LLC v. Nola Motorsports Host Comm., Inc*., 147 F. Supp. 3d 537 (E.D. La. 2015)

"The elements of a cause of action under the LUTPA are: (1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor[,] or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss."  *Int'l*

*Env't Servs., Inc. v. Maxum Indus., LLC,*, 2014 WL 4629662, (W.D. La. Sept. 15, 2014) ; *Who Dat Yat LLC v. Who Dat? Inc.*, 2011 WL 39043 (E.D.La.2011) The Plaintiffs have failed to state a cause action under LUPTA.

" "LUTPA does not prohibit 'sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions.'" *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 406 (E.D. La. 2016) citing *Monroe Medical Clinic, Inc. v. Hospital Corp. of America*, 522 So.2d 1362, 1365 (La.App. 2 Cir.1988). "In fact, the range of prohibited practices under LUTPA is extremely narrow." *Turner*, 989 F.2d at 1422. "LUTPA actions require a case-by-case analysis to determine whether the subject conduct is a violation of the statute" *Id.*

The sole basis for the Plaintiffs' claim is that the Defendants engaged in unfair competition by "manipulating" the parties joint clients to execute revised contingency fee agreements by removing the names of the Plaintiffs in order to retain all attorneys fees for itself. The claim states the Defendants breached their fiduciary duties as part of their claims and further "disregarded their joint venture obligations."  These allegations, however,  do not establish a claim under the LUPTA.

First, as set forth above, there is no fiduciary duty between co-counsel to protect one another's prospective interests in a fee.  *Scheffler v. Adams and Reese, LLP*, 950 So. 2d. 651 (La. 2007) Thus, to the extent that this Count relies on a  breach of fiduciary duty, which the Plaintiffs claim does in paragraph 67 of their Amended Complaint, this Count must be dismissed with prejudice.

Second, as set forth above, there is no alleged factual basis to support a claim that a "joint venture" was created between the two Plaintiff law firms, the Downs Law Group, Craig Downs,

individually, and Jeremy Friedman individually.  Thus, to the extent that this Count relies on the existence of a joint venture between the parties, which it also does as set forth in paragraph 68 when it alleges a "disregard for the joint venture obligations," this Count must similarly be dismissed with prejudice.

Notwithstanding even if this Count did not rely upon these two theories, the Plaintiffs have failed to satisfy the third element of the claim, i.e. *causation of an ascertainable loss*. *Int'l Env't Servs., Inc. v. Maxum Indus., LLC,*, 2014 WL 4629662, (W.D. La. Sept. 15, 2014) They allege that  the "unfair trade practice" was the Defendants contacting their own clients and advising them that the contingency agreements were being revised to exclude the names of the Plaintiffs.  This specific act did not cause and loss to the Plaintiffs.

However, the removal of the Plaintiffs' names from the contingency agreements did not *cause* the Plaintiffs any damages.  The Plaintiffs do not allege, nor could they, that the very act of requesting that the Defendants own clients sign new retainer agreements "caused" and loss to the Plaintiffs including an inability to recover attorneys fees related to legal services performed.  The Plaintiffs did not perform legal services, expect to get paid, and discover they could not receive payment because their names were removed from the retainer agreements.  Additionally the Plaintiffs do not allege, nor could they, that they attempted to perform legal services for the clients but the clients prevented them from doing so for the sole reason that their names no longer appeared on the retainer agreements.

Rather, the Plaintiffs did not receive any attorneys fees because there was *no agreement for them to do any further work* .  The Plaintiffs did not receive any attorneys fees because *they did not perform any legal services for these clients* where monies were ever distributed.  Thus, the Plaintiffs have failed to state a cause of action under LUTPA because they cannot establish

that the alleged wrongful act "caused" an ascertainable loss, the third element of the claim. *Int'l Env't Servs., Inc. v. Maxum Indus., LLC,*, 2014 WL 4629662, (W.D. La. Sept. 15, 2014)

Finally, the Plaintiffs attempt to rely upon an attorney-client protected communication that they unlawfully took from the Downs Law Group is not only improper but their understanding of it appears to be significantly misplaced.  The correspondence at issue is a legal opinion requested by Downs to its attorney Friedman.  The Plaintiffs' names inadvertently remained on new retainer agreements after all their work was completed.  The parties did not discuss nor did the Plaintiffs ever agree pursuant to paragraph 3 of the agreement to engage in any additional services or receive additional compensation related thereto.

As a result, a decision was made to inform the new clients of what had been done in the past and request that they agree to an amendment of the retainer agreements to properly reflect the representation.  There is nothing improper for Downs to inform its clients on the need to correct the retainer agreements.  For this reason, any such claim that the act of simply communicating with the Downs' own clients is an "unfair trade practice" should be rejected.

For this reason, there is no basis to claim that simply by asking their clients to sign a new retainer agreement to correct an error as to continuing representation, and further providing legal advice to Downs to do so, qualifies as an "unfair trade practice" and dismissal is proper.

**IV.     The Plaintiffs' claims are governed by Florida law.**

All of the Plaintiffs' claims must be dismissed with prejudice as the actions alleged by the Defendants and the Plaintiffs all arise out of the Attorneys Participation Agreement and paragraph 3 therein which governs additional work.  The parties agreed the agreement would be governed by Florida law.

Both of the Counts in the Amended Complaint rely upon Louisiana law rather then

24

Florida law.  As a result, dismissal is proper.

## IV.  Conclusion

Upon the foregoing, the Defendants would request that this Court grant the Defendants'

Motion to Dismiss and dismiss all claims with prejudice and further award the Defendants all

costs associated with this case including both attorneys' fees and costs.


Jeremy D. Friedman, Esq.
The Downs Law Group, PA
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
(305) 444-8226
Attorney for Claimants


__/s/ Jeremy Friedman___
Jeremy D. Friedman
Florida Bar # 134643

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been electronically filed with
Clerk of Court of the United States District Court for the Eastern District of Louisiana by using
the CM/ECF System, which will send notice of electronic filing to all parties of record on or
about the date as set forth above.

I HEREBY CERTIFY that the above was also sent via electronic mail on this 21st day of
February, 2022 to: Craig Robinson, Esq., Robinson Law Offices, LLC


Jeremy D. Friedman, Esq.
The Downs Law Group, PA
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
(305) 444-8226
Attorney for Claimants


__/s/ Jeremy Friedman___
Jeremy D. Friedman
Florida Bar # 134643

25

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| **IN RE:** | **OIL SPILL BY THE OIL RIG** | ) | **MDL NO: 2179** |
| | **"DEEPWATER HORIZON" IN** | ) | |
| | **THE GULF OF MEXICO, ON** | ) | **SECTION: J** |
| | **APRIL 20, 2010** | ) | |
| | | ) | |
| **Relates to:** | **2:14-cv-657** | ) | **Judge Barbier** |
| | **Melancon | Rimes, LLC et. al.** | ) | **Mag. Judge Currault** |
| | **v. Downs Law Group, et. al.** | ) | |
| | | ) | |

## AFFIDAVIT OF JEREMY D. FRIEDMAN, ESQ.

| | |
|---|---|
| **State of Florida** | ) |
| | SS |
| **County of Duval** | ) |

BEFORE ME, the undersigned authority, personally appeared Jeremy D. Friedman, Esq. who after being by me first duly sworn, deposes and says:

1. I, Jeremy Friedman, am an attorney with the law firm of Down Law Group, P.A. located at 6620 Southpoint Dr. S., Suite 450E, Jacksonville, Florida 32216. I have been a member of the Florida Bar since April 14th, 1998. This affidavit is made upon the basis of my personal knowledge concerning my lack of contacts with the state of Louisiana for purposes of demonstrating a lack of personal jurisdiction in the case of *Sterbcow Law Group, LLC et. al. v. The Downs Law Group, P.A.*

2. I am a member of the Florida. My principal office is in Jacksonville Florida. Our firm's main office is in Miami, Florida. I am not licensed to practice law in the state of Louisiana, nor have I ever been.

3. I do not personally own any property or conduct business in the state of Louisiana. I do not represent any clients in the state of Louisiana.

4. I appeared in the case of BP *In Re: Oil Spill By The Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20,2019 , 2:10-md-02179-CJB-DPC* for the limited purpose to represent a small number of clients related to objections they filed to the class action settlement in this case in 2012.  The only time that I have been to Louisiana in relation to this case is for the final fairness hearing in this case.

5. Subsequent thereto I have never personally represented any client in regard to any claim referenced by the Plaintiffs herein.  I have never signed up any clients in the state of Louisiana, provided legal representation to any such client, or practiced law in the state of Louisiana in any form since the final fairness hearing.  I have never been to the state of

Louisiana for any legal or business purpose since the final fairness hearing.

6. I have never entered into a joint venture or co-counsel agreement with the Plaintiffs, Downs Law Group, P.A., or Craig Downs.

7. Subsequent to the final fairness hearing I have served as counsel to the law firm of Downs Law Group, P.A. I have provided legal advice to the Downs Law Group, P.A. concerning its dealings in this case. I have not personally represented any client in this case thereafter. I have additionally provided legal representation to the Downs Law Group, P.A. as a party in various matters concerning BP. Any communications from me referenced in the Amended Complaint are attorney-client communications as part of my legal representation of the Downs Law Group and was unlawfully kept and utilized by the Plaintiffs. Several demands have been made for its return but the Plaintiffs have ignored the same. Any all advice provided to the Downs Law Group was at the request of Downs, my employer, and was absolutely correct at the time, and remains correct to this day.

## VERIFICATION

Pursuant to section 92.525(1)(b) of the Florida Statues, under penalties of perjury, I declare that I have read this Limited Power of Attorney and the facts stated herein are true and correct.

By: _____     Date: __2/21/22__

Jeremy D. Friedman, Esq.

2