UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | OIL SPILL BY THE OIL RIG ) | MDL NO: 2179 |
| | "DEEPWATER HORIZON" IN ) | |
| | THE GULF OF MEXICO, ON ) | SECTION: J |
| | APRIL 20, 2010 ) | |
| | ) | |
| Relates to: 2:14-cv-657 | | |
| | Melancon Rimes, LLC et. al. ) | Judge Barbier |
| | v. Downs Law Group, LLC, et. al. ) | Mag. Judge Currault |
| | ) | |
| | ) | |

## DEFENDANTS' REPLY TO PLAINTIFF"S RESPONSE TO DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO RULE 12(b)(2) AND 12(b)(6)

COMES NOW, Defendants Downs Law Group, P.A., Craig T. Downs, and Jeremy D. Friedman, and hereby files their Reply to Defendants' Joint Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(2) and 12(b)(6).

The Plaintiffs have raised various arguments as part of its Response to the Plaintiffs' Motion to Dismiss. Their main focus is on the fact that a new "Joint Venture Agreement" was created by the parties that governed the relationship after the objections had been completed. They now claim in this matter that the original Attorney Participation Agreement "is irrelevant" and had nothing to do with any additional work the parties allegedly agreed the Plaintiffs would perform on behalf of the clients. However, this new position directly contradicts the Plaintiffs alleged facts in the original case that was filed in the state of Florida, fails to address the lack of specificity of any term of a new "joint venture agreement" and fails to address many of the arguments raised in the Defendants' Joint Motion to Dismiss and supporting Memorandum of

1

law. For these reasons the Defendants' Motion to Dismiss should be granted accordingly.

## I.    This Court lacks Personal Jurisdiction over the individual Defendants

"The plaintiff bears the burden of proof on a motion to dismiss for lack of personal jurisdiction. Presenting prima facie evidence is sufficient for the plaintiff to meet her burden of proof. The Court may exercise personal jurisdiction over a nonresident defendant if '(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Hernandez v. TransUnion Inc.*, 2020 WL 1492979 (E.D. La. Mar. 27, 2020) The main focus of the inquiry of personal jurisdiction is "the relationship among the defendant, the forum, and the litigation. Minimum contacts are contacts that 'give rise to general or specific jurisdiction.'" *Id.* "Courts exercise general jurisdiction over any action where the defendant has 'continuous and systematic general business contacts' with the forum state. If the contacts are less pervasive, courts may exercise specific jurisdiction in a suit arising out of or related to the defendant's contact with the forum." *Id.* Here, the Plaintiffs have presented no evidence to support either general or personal jurisdiction over the individual Defendants, Jeremy Friedman or Craig Downs.

In regards to Jeremy Friedman, the Plaintiff has failed to identify any evidence to establish continuous and systemic general business contacts with the state of Louisiana. Without any affidavit, sworn testimony or any admissible evidence, they simply allege that Mr. Friedman, from Florida, spoke with Marx Sterbcow about the objections. They further state that he flew to New Orleans, Louisiana, **once**, to attend a fairness hearing on the objections. Finally, they allege that he was admitted to the Federal Court in Louisiana pro hac vice in a case from 2006. No actual evidence was submitted by the Plaintiffs to prove any of these allegations or disprove any

statements set forth in Friedman's affidavit.

Notwithstanding, taking the three instances as true for purposes of this Motion, they clearly do not establish continuous and systematic general business contacts in the state of Louisiana. Attending one hearing on a different issue, litigating an unrelated case sixteen years ago, and contacting a Louisiana attorney from Florida would not qualify as contacts sufficient for this court to exercise personal jurisdiction over Mr. Friedman.

As to specific jurisdiction, the Plaintiffs themselves are insisting that the objection to the class action settlement and agreement related thereto has nothing to do with this current case and their joint venture agreement. Thus, any claim of travel for the objections aspect of the representation would have no relevance to an inquiry of specific jurisdiction. The Plaintiffs have submitted no evidence showing that Mr. Friedman has any contacts related to this case. There is no evidence that Mr. Friedman ever signed up any clients, came to the state of Louisiana for these purposes, litigated any of the cases in this state and took any actions in the state of Louisiana concerning an alleged oral joint venture agreement. Without such evidence, or even any allegation of sufficient contacts, dismissal is likewise proper as to Mr. Friedman based on a lack of personal jurisdiction.

Similarly, as to Craig Downs, there is likewise no evidence submitted, or any sufficient allegations, that Mr. Downs personally engaged in activities that would permit this Court to exercise personal jurisdiction over him individually, either general or specific. Rather, any allegations regarding contacts involving Mr. Downs, and Mr. Friedman for that matter, involve actions taken as representatives of the Downs Law Group, P.A. "It is settled that jurisdiction over individual officers and **employees** of a corporation may not be predicated merely upon jurisdiction over the corporation itself." *Cobb Industries, Inc. v. Hight*, 469 So.2d 1060, 1063

(La.App. 2nd Cir.1985)(emphasis added). "This doctrine is often times referred to as the "fiduciary shield doctrine" and has its origin in judicial interpretations of long-arm statutes." *Id.*; *Columbia Briargate Co. v. First National Bank in Dallas*, 713 F.2d 1052 (4th Cir.1983), cert. denied, *Pearson v. Columbia Briargate Co.*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984).

The Plaintiffs allege that Mr. Downs is acting as counsel on behalf of the Downs Law Group, P.A. for various legal actions in the state of Louisiana. Any such representation is as an officer and/or employee of the entity Downs Law Group, P.A. Thus, any actions that he took on behalf of the Downs Law Group, P.A. would be irrelevant to establish personal jurisdiction over them individually. As any alleged evidence relates to actions taken by Mr. Downs on behalf of Downs Law Group, P.A., and nothing was submitted to establish that he engaged in any contacts with the state of Louisiana personally, this Court should similarly dismiss all claims against Mr. Downs for a lack of personal jurisdiction.[1]

## II.     The Plaintiffs' allegation of the creation of a "joint venture agreement" contradicts its original pleadings in Miami-Dade County, Florida

In the Plaintiffs' complaint filed in the original Miami-Dade County Florida action, the Plaintiffs allege that they entered into the Attorney Participation Agreement with the Defendants on August 26, 2012. They allege that the claims, *subsequent to the objections*, have been filed and "are awaiting settlement determination." (Plaintiff's Miami-Dade County Complaint, Paragraph 13). The Plaintiffs additionally allege that they are "counsel of record" for the BP

---

[1] The evidence as to Mr. Friedman also demonstrates that any contacts claimed by the Plaintiffs were all done as an employee of the Downs Law Group and thus cannot sustain any argument that Mr. Friedman should personally be subjected to this court's jurisdiction.

4

litigation and that they are entitled to 10% of the fees from the BP litigation settlement funds for cases that occurred *after* the objections were adjudicated. They further allege that the Defendants sent "new letters and retainer agreements to each and every client involved in this matter and informed them that the "Plaintiffs are not their lawyers" " (Plaintiff's Miami-Dade County Complaint, Paragraph 15).

These factual allegations are the same allegations in the Amended Complaint in this case with one exception, i.e. now the Plaintiffs have switched from the Attorneys Participation Agreement governing the relationship to a new oral joint venture agreement. These factual allegations directly contradict each other and demonstrate that this oral joint venture agreement is a fiction created by the Plaintiffs due to their dissatisfaction of the outcome of the proceedings in Miami-Dade County, Florida. Had a separate joint venture agreement been created subsequent to the Attorneys Participation Agreement that governed the receipt of any attorneys fees by the Plaintiffs, the Plaintiff would have alleged it in the earlier proceedings. Instead, they now claim that the very same fees that were due pursuant to the Attorneys Participation Agreement are instead due pursuant to an oral Joint Venture Agreement and that the Attorneys Participation Agreement is completely irrelevant to these proceedings.

Based on the above this court should ignore any new attempts by the Plaintiffs to change the facts of the relationship between the parties which was at all times limited to adjudicating the objections under the Attorneys Participation Agreement . Once that ceased the Plaintiffs did not perform any services for the clients nor were they retained to do so. As a result, the Plaintiffs are not entitled to any attorneys fees for work they did not perform.

## III. The Plaintiffs again fail to allege with any specificity the terms of the joint venture agreement

The Defendants stated in their Memorandum of Law that the Plaintiffs failed to plead with any specificity the terms of the alleged oral joint venture agreement. Upon given the opportunity to do so the Plaintiff continue to avoid this obligation. Nowhere in their Response to the Motion to Dismiss do they describe when the agreement was entered into, where the agreement was entered into, the terms of the agreement, the fee split, the splitting of costs, and/or the splitting of duties or responsibilities. Instead, the Plaintiffs take the position that under Louisiana law they can share equally in any attorneys fees even if they performed no services for the clients as the amount of time and labor furnished by the Plaintiffs would be irrelevant.[2]

The Plaintiffs' position, however, does not address the existence of such agreement in the first place. Even if the *amount* of work performed was irrelevant, which seems difficult to believe that the Plaintiffs can come to this Court and claim that they are entitled to payment without performing any services for the clients, the issue of whether an agreement existed in the first place remains outstanding. As the Plaintiffs have not alleged the terms of any such agreement with any specificity, dismissal of both claims that rely on the existence of a joint venture agreement is proper.

## IV. The Defendants do not have a fiduciary duty to pay attorneys fees to the Plaintiffs

The Plaintiffs' two causes of action both rely on the Defendants having a fiduciary duty to pay the Plaintiffs attorneys fees regardless of whether any work was performed. However, no such fiduciary duty exists under Louisiana law. The Defendants cited to *Scheffler v. Adams and*

---

[2] On page 11 of their Response they argue that "the amount of time and labor furnished by the two attorneys is immaterial to the division of fees."

*Reese, LLP*, 950 So. 2d. 651 (La. 2007) for the following proposition:

> Louisiana law recognizes that an attorney's paramount duty is, and must be, to his client. *Penalber v. Blount*, 550 So.2d 577, 581 (La.1989). In fact, our law adheres to the principle that in no other agency relationship is a greater duty of trust imposed than in that involving an attorney's duty to his client. *Plaquemines Parish Commission Council*, 502 So.2d at 1040.

The court further stated:

> ...we conclude that it is fundamental to the attorney-client relationship that an attorney have an undivided loyalty to his or her client. This duty should not be diluted by a fiduciary duty owed to some other person, such as co-counsel, **to protect that person's interest in a prospective fee**. While, as a practical matter, both the client and co-counsel stand to benefit from any recovery, their interests are not always identical. It would be inconsistent with an attorney's duty to exercise independent professional judgment on behalf of his client to impose upon him a fiduciary obligation to take into account the interests of co-counsel in recovering any prospective fee. (emphasis added)
>
> ....
>
> Accordingly, we hold that, as a matter of public policy, based on our authority to regulate the practice of law pursuant to the constitution, **no cause of action will exist between co-counsel based on the theory that co-counsel have a fiduciary duty to protect one another's prospective interests in a fee.** (emphasis added)

*Id. at 653*

Thus, the Louisiana Supreme Court was clear that no fiduciary duty exists between co-counsel in relation to the "recovery of a prospective fee." As such, there can be no claim for breach of a fiduciary duty if no such duty exists in the first place.

The Plaintiffs take the position that *Scheffler* supports their claims such that it held in a footnote that joint venture agreements between attorneys are recognized. The Plaintiffs further argue that the case is factually distinguishable from the instant matter. However, the issue is not whether attorneys can enter into a joint venture agreement. Rather, the issue is whether once the joint venture agreement is created, does that also create a fiduciary duty between counsel in regards to the recovery of prospective attorneys fees. *Scheffler* clearly states that it does not.

7

The Plaintiffs' argument does not address the actual dispute at issue, i.e. the recovery of a fee based on the existence of a fiduciary duty that the Defendants' allegedly breached. Rather, their only response is that joint venture agreements between attorneys are recognized in Louisiana. While there is no dispute that joint venture agreements between attorneys can be created for the representation of clients the Louisiana Supreme Court has stated that this does not create a fiduciary duty in relation to the payment of a prospect fee. As a result, dismissal of all Counts in the Plaintiffs' Complaint is proper.

## V. The Plaintiffs fail to address element the element of causation for its Unfair Trade Practices Claim

The Plaintiff's respond to the Defendants' Motion to Dismiss Count II, their Unfair Trade Practices Act Claim, by stating that a cause of action was alleged by claiming that the Defendants removed the Plaintiffs as counsel from representations of joint clients by sending letters to the clients. They claim that there was a fiduciary duty between the parties, that a joint venture agreement existed, and that this unfair trade practice resulted in the Plaintiff losing profits from the fees associated with the clients' claims.

However, Plaintiffs fail to address the argument of *causation* of damages.[3] The "unfair trade practices" act according to the Plaintiffs is the removal of their names from paragraph 8 of the client retainer agreements which states that the two individual attorneys would assist with the matter. However, there is no allegation that the Plaintiffs suffered any loss simply because their names were removed from paragraph 8. The Plaintiffs did not seek to recover fees from the clients and find out they cannot do so because their names no longer appear on paragraph 8, i.e.

---

[3] The Defendants addressed above the lack of fiduciary duty or existence of a joint venture agreement which would similarly require dismissal of the Unfair Trade Practices Claim.

8

the alleged unfair act. Rather, the Plaintiffs did not recover any fees because there was no agreement for them to represent the clients as well as the fact that they have not performed any services for the clients that would result in such a fee.

As a result, the Plaintiffs cannot claim that the "unfair trade practice" of removing their names from the contingency fee agreements, the sole act alleged in their Amended Complaint, *caused* any loss. There are other reasons as to why they are not entitled to any fees in relation to these clients. However, simply removing their names from paragraph 8 from contingency fee agreements is not one of them.

As the Plaintiffs' only basis for the Unfair Trade Practices Claim is that the Defendants removed their names from the fee agreements, and such an action did not itself cause any actual loss, the elements of this claim cannot be established and dismissal is proper.

## VI. Conclusion

For all of the reasons set forth in the Defendants' Motion to Dismiss and Memorandum of Law related thereto, as well as the above, the Plaintiffs' Amended Complaint should be dismissed with prejudice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been electronically filed with Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send notice of electronic filing to all parties of record on or about the date as set forth above.

I HEREBY CERTIFY that the above was also sent via electronic mail on this 23rd day of March, 2022 to: Jason L. Melancon, Suite B Baton Rouge, LA 70809, jason@melanconrimes.com.

                                    Jeremy D. Friedman, Esq.
                                    The Downs Law Group, PA
                                    3250 Mary Street, Suite 307
                                    Coconut Grove, FL 33133
                                    (305) 444-8226
                                    Attorney for Claimants

                                    __/s/ Jeremy Friedman___
                                    Jeremy D. Friedman
                                    Florida Bar # 134643