# IN RE: OIL SPILL by "Deepwater Horizon"
# DIRECT FILING SHORT FORM[1]

**Authorized by Order of the Court, Civil Action No. 10 md 2179 Rec. Doc. 982**
**(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)**

MDL 2179     SECTION: J     JUDGE CARL BARBIER

**CLAIM IN LIMITATION--JOINDER IN MASTER ANSWER--INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE FORM**

By submitting this document, I am asserting a claim in *Complaint and Petition of Triton Asset Leasing GmbH, et al.*, No. 10-2771; adopt and incorporate the Master Answer [Rec. Doc. 244] to the *Complaint and Petition of Triton Asset Leasing Gmbh, et al.*, in No. 10-2771; and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 879] for private economic losses ("B1 Bundle") filed in MDL No. 2179 (10 md 2179); and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 881] for post-explosion injuries ("B3 Bundle") filed in MDL No. 2179 (10 md 2179).

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Barksdale | Gordon | | |

| Phone Number | E-Mail Address |
|---|---|
| 713-358-9350 | Gbarksdale@pipelineservicesintl.com |

| Address | City / State / Zip |
|---|---|
| 3430 South Sam Houston Parkway East | Houston, TX 77047 |

**INDIVIDUAL CLAIM** ☐     **BUSINESS CLAIM** ☒

| Employer Name | Business Name |
|---|---|
| | Pipeline Services International, LLC |

| Job Title / Description | Type of Business |
|---|---|
| | Commissioning and Decommissioning of Pipelines |

| Address | Address |
|---|---|
| | 3430 South Sam Houston Parkway East, Suite 100 |

| City / State / Zip | City / State / Zip |
|---|---|
| | Houston, TX 77047 |

| Last 4 digits of your Social Security Number | Last 4 digits of your Tax ID Number |
|---|---|
| | xx-xxx2258 |

| Attorney Name | Firm Name |
|---|---|
| Edwin Armistead Easterby | Williams Kherkher Hart & Boundas, LLP |

| Address | City / State / Zip |
|---|---|
| 8441 Gulf Freeway, Suite 210 | Houston, TX 77017 |

| Phone Number | E-Mail Address |
|---|---|
| 713-230-2200 | aeasterby@williamskherkher.com |

Claim filed with BP? YES ☒ NO ☐     Claim Filed with GCCF?: YES ☐ NO ☒

If yes, BP Claim No.: 1002726-01     If yes, Claimant Identification No.:

**Claim Type (Please check all that apply):**

☐ Damage or destruction to real or personal property
☒ Earnings/Profit Loss
☐ Personal Injury/Death

☐ Fear of Future Injury and/or Medical Monitoring
☐ Loss of Subsistence use of Natural Resources
☐ Removal and/or clean-up costs
☐ Other: _____

---

[1] **This form should be filed with the U.S. District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130**, in Civil Action No. 10-8888. While this Direct Filing Short Form is to be filed in CA No. 10-8888, by prior order of the Court, (Rec. Doc. 246, C.A. No. 10-2771 and Rec. Doc. 982 in MDL 2179), the filing of this form in C.A. No. 10-8888 shall be deemed to be simultaneously filed in C.A. 10-2771 and MDL 2179. Plaintiff Liaison Counsel, after being notified electronically by the Clerk of Court of the filing of this Short Form, shall promptly serve this form through the Lexis Nexis service system on Defense Liaison.

1

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Brief Description:**

1. For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury. For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred. For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

Plaintiff has provided a detailed description together with this Short-Form Joinder, which is incorporated fully herein. (see attachment hereto). Plaintiff timely submitted a conforming OPA presentment to the designated Responsible Party on January 15, 2013, including a sum-certain demand for $16,702,920.00. Where applicable, Plaintiff's claim package included documents and materials demonstrating: (a) that real or personal property or natural resources have been injured, destroyed, or lost; (b) Plaintiff had reduced revenue/income/variable profit (and the amount of that reduction) resulting from the April 20, 2010 Gulf Oil Spill; (c) Plaintiff's revenue/income/variable profit in comparable periods and during the applicable loss period (as established by tax returns, financial statements, and similar documents). In addition, Plaintiff submitted information regarding whether Plaintiff undertook alternate employment/business, whether such alternate employment/business was available, and the amount (if any) of income received (including documents relating to any saved overhead and other normal expenses not incurred as a result of the Incident).

2. For personal injury claims, describe the injury, how and when it was sustained, and identify all health care providers and employers 2008 to present and complete authorization forms for each.

N/A

3. For post-explosion claims related to clean-up or removal, include your role in the clean-up activities, the name of your employer, and where you were working.

N/A

***The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.***

**Please check the box(es) below that you think apply to you and your claims:**
**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

- [ ] 1. Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.
- [ ] 2. Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.
- [ ] 3. Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.
- [x] 4. Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.
- [ ] 5. Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.
- [ ] 6. Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.
- [ ] 7. Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.
- [ ] 8. Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.
- [ ] 9. Bank, financial institution, or retail business that suffered losses as a result of the spill.
- [ ] 10. Person who utilizes natural resources for subsistence.
- [x] 11. Other: Oil and Gas Industry (excluded from Class Action Settlement Agreement)

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Cleanup (Bundle B3)**

- [ ] 1. Boat captain or crew involved in the Vessels of Opportunity program.
- [ ] 2. Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.
- [ ] 3. Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.
- [ ] 4. Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.
- [ ] 5. Resident who lives or works in close proximity to coastal waters.
- [ ] 6. Other:

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 11), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

/s/ Edwin Armistead Easterby
Claimant or Attorney Signature

Edwin Armistead Easterby
Print Name

4/17/13
Date

3

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

Pipeline Services International, LLC
EIN 26-0412258

**PLAINTIFF'S SUPPLEMENT TO DIRECT FILING SHORT FORM
REGARDING THE NATURE OF PLAINTIFF'S INJURY**

Pipeline Services International, LLC ("Plaintiff") submits this Supplement to Direct Filing Short Form Regarding the Nature of Plaintiff's Injury.

A.   **Plaintiff Incurred Economic Losses as a result of the Oil Spill.**

Plaintiff incurred substantial economic losses resulting from the April 20, 2010, Oil Spill. Plaintiff is a pipeline services company (involved in pipeline pre-commissioning and de-commissioning) that historically derived virtually all of its income from operations in the Gulf of Mexico. After the April 20, 2010, Oil Spill, there was a Moratorium on deepwater drilling in the Gulf of Mexico. Additionally, significant changes have also occurred on the regulatory side as a direct result of the Oil Spill. On October 1, 2011, the Bureau of Ocean Energy Management, Regulation and Enforcement (BOEMRE), formerly the Minerals Management Service (MMS), was replaced by the Bureau of Ocean Energy Management (BOEM) and the Bureau of Safety and Environmental Enforcement (BSEE) as part of a major reorganization. Since these regulatory changes BOERME and BSEE have been slow and very deliberate about approving new deepwater drilling permits. While the offshore drilling ban ended on October 12, 2010, in December 2010 the Obama administration announced that it would not allow drilling in the eastern Gulf of Mexico near Florida. The oil spill has adversely impacted the permitting process related to both deepwater and shallow-water drilling. The uncertainty and lack of clarity regarding the new regulations have led to a slowdown in the issuance of permits for even shallow water drilling. Between the explosion on April 20, 2010 and October 18, 2010, federal regulators gave approval to only 12 shallow water wells. This is well below the approval levels of 2008, when the government was permitting an average of 16.8 wells per month, and the 2009 levels of 8.5 per month. In the first quarter of 2010, about 10 wells were approved every month. *All dressed up, nowhere to go*, Houston Chronicle, October 18, 2010. See also *Shell: Drilling Ban Fallout Will Endure*, Wall Street Journal, October 28, 2010. Plaintiff's offshore business (particularly pre-commissioning) was severely impacted by the Oil Spill. This is further illustrated by the November 2011 Deepwater Drilling Permit Update prepared by Cambridge Energy Research Associates, Inc. ("CERA") which was provided in Plaintiff's OPA Presentment claim. The CERA study correctly concludes that Gulf of Mexico drilling permitting is still significantly below the pre-moratorium level. Information contained in the CERA study is available on www.bsee.gov.

Plaintiff, in response to the Oil Spill, Moratorium, and regulatory changes that threatened its core business model, sought to mitigate its damages by focusing more heavily on onshore activities. This was a fundamental change in Plaintiff's business plan, particularly as the onshore work is less profitable and more competitive.

1

Pipeline Services International, LLC
EIN 26-0412258

Plaintiff's transition to onshore work can be seen in the monthly financial statements attached to its OPA Presentment claim package.

Additionally, Plaintiff had a large invoice that was not paid due to the counter-party ATP Oil and Gas declaring bankruptcy in August of 2011 as a result of the Oil Spill and drilling moratorium. Plaintiff has included this invoice in its damage calculations. Thus, because: (i) Plaintiff relied completely on the Gulf of Mexico for its revenue; (ii) the Moratorium was a direct result of the Oil Spill; and (iii) Plaintiff took commercially reasonable steps to mitigate its losses Plaintiff's damages resulted from the Oil Spill.