Linda L. Fernandez
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

## Summary of Claim

The property located at 2725 Bayou Road is held in life-time usufruct by Linda L. Fernandez and held in naked ownership by her children. (Attached hereto as "Exhibit A" is the Judgment of Possession regarding the property) Prior to Hurricane Katrina, the building thereon (the Fernandez Building) was leased by Fernandez Nursing Home, Inc., doing business as an elderly residential facility. The damage inflicted by Hurricane Katrina rendered the building uninhabitable and the nursing facility, therefore, inoperable.

In the aftermath of Hurricane Katrina, after overcoming the personal obstacles associated with rebuilding her home, Mrs. Fernandez sought to return the building to commercial use by finding tenants for the building that would provide an income stream. Financial constraints prevented her from renovating the building without assured tenants. Therefore, when community members advised her that British Petroleum (BP) was interested in finding a place for housing its multitude of workers in the area who were working to clean and contain the Macondo oil spill, she believed the Fernandez Building would be appropriate. Once a decision was made to discuss options with BP, Mrs. Fernandez assumed the financial responsibility for the project, but relied on her sons, Ronnie, Rick, and Danny Fernandez to manage the interactions with BP and its subcontractors.

One of the first contacts regarding rental of the building was with Ms. Nan Touchard who represented Housing, Hopedale Staging Area. She acted as a sub-contractor for BP and focused on locating appropriate housing for personnel. She visited the building site on June 1, 2010 and took pictures. At that time, the building had not been completely cleared of debris. The family was waiting to see whether or not BP was interested before investing any money. Mr. Danny Fernandez accompanied Ms. Touchard for the tour of the building. When he was told by Ms. Touchard that the Fernandez Building met BPs requirements of being within the levee system and being located near the BP containment and cleaning base camp, he rented dumpsters and began the cleanout of the building.

No work was done after the debris in the building was removed until additional pictures were forwarded to Ms. Touchard. She continued to indicate that the building met all of BPs needs. Then, Mr. Ronnie Fernandez spoke with Mr. Harlan Ross of BP who indicated that BP was interested in the completion of the building, and, thereafter, interested a long-term contract for use of the building. The facility was perfect to meet their needs and would be used immediately if it was ready. Time was of the essence. With this news, Mrs. Fernandez took steps to secure financing and hire a contractor, Andrew Frisard, of Trustmark Homes, LLC to complete the renovation. (Attached hereto as "Exhibit B" is a copy of the construction contract)

1

Linda L. Fernandez
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

     Ms. Touchard remained in contact with the Fernandez family regarding the progress on the building. A few weeks after the initial visit, Ms. Touchard made another on-site visit to the property where she met and talked with Ronnie Fernandez. At that time, Ms. Touchard asked if the property could provide bunk beds in the rooms. Mr. Fernandez agreed. She also stated that other facilities which were housing personnel had difficulty because shower facilities were limited. She requested that the Fernandez Building be equipped with 1 shower per 3 people. Ronnie Fernandez, again, agreed and modifications were made to the plans by Trustmark Homes. Because "time was of the essence," by June 28th, Trustmark had rented slab saws and begun the necessary work to install the additional showers. (Attached as "Exhibit C" are pictures detailing the breaks in the concrete slab that were required to accommodate the additional shower request) Prior to the renovations the building held 5 showers. After the renovations, space was made for 22 shower stalls. The additional shower stalls began to be delivered around July 9th.

     According to the discussions with Ms. Touchard and Harlan Ross, the Fernandez Building would begin housing 52 tenants as soon as the front portion was complete. Once the entire building was finished, it would be available for housing approximately 92 persons. At maximum capacity there would be 23 completed rooms with 4 persons to a room. The Building would be used to provide long-term housing for both the containment and clean-up crew and the executives working in the area.

     In mid-July Christine Gammeri of ALE Solutions, a company sub-contracted by BP to secure disaster housing, also became involved with the plans. The involvement of yet another sub-contractor asking for information and reviewing the plans caused the Fernandez family to continue to move forward with the BP-specific construction requests. Ms. Gammeri asked for and was forwarded floor plans, pictures, and other information regarding the completion of the building. She agreed that the building was perfect as it was the only viable commercial entity for housing within the levee system. Ronnie Fernandez was also put in touch with Deb Whitmer of BP Solar to discuss the use of solar panels to make the building more energy efficient. At every turn and with every conversation, the Fernandez family believed that BP was committed to finishing this building according to its specifications and then using the facility as long-term, comfortable, convenient housing for its clean-up personnel.

     Around the same time ALE Solutions became involved, Harlan Ross advised Ronnie Fernandez that central command was in transition. Mr. Ross was moving on to another assignment and a different team would continue the process of overseeing the containment and cleanup. Harlan Ross advised that housing was going to still be necessary and that the next team would work with them on the building completion.

Linda L. Fernandez
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

Shortly thereafter, a third on-site visit took place. In attendance were Danny Fernandez, Rick Fernandez, Ronnie Fernandez, Nan Touchard, Andy Frisard, the Trustmark Homes Contractor, Keith Bowden, a representative of BPs new central command, and Scott Phelps, a construction contractor for BP. The group walked through the building and they were impressed with the floor plan. Several things were discussed during this meeting including the fact that BP assets could be stored on the property in the event of a hurricane since the property was within the levee system; and that more parking was needed, so a crushed gravel parking lot was added to the plans. Additionally, Mr. Phelps indicated that he could provide a 24/7 crew to get the work done if that became necessary. In response to this positive meeting, Trustmark Homes "picked up the pace" and moved as quickly as possible toward completion.

Unfortunately, while the Fernandez family was moving ahead according to plan, BP began to drag its feet, but failed to notify anyone of its change of plans. Finally, after a cancelled conference call and several unreturned phone calls, Rick Fernandez and Andrew Frisard went to Breton Sound Marina on August 4th, to speak personally with the BP representatives there. At that time, they were told that BP was closing up shop for the time being and plans related to clean-up were on hold. It was not until weeks later with no contact from BP that the Fernandez family learned that "on hold" meant that there would be no further activity.

As a result, Mrs. Fernandez has incurred substantial damages. She has incurred $312,432.66 of expenses for the renovations done by Trustmark Homes, LLC, prior to BP withdrawing from the agreement. This money was spent in good faith to prepare the building for use by BP. Additionally, because of its open and unfinished state, the building must be completed. Trustmark has estimated that the cost to complete the building is an additional $447,745.53. Should she continue the renovations, Mrs. Fernandez is contractually obligated to use Trustmark Homes, LLC. However, in the interest of reaching an expedited resolution, Mrs. Fernandez is willing, as Scott Phelps suggested, to allow BP to have its construction company complete the building, as long as Trustmark Homes, LLC, is reimbursed for the lost profit that it would have earned if the company had been able to complete the construction. Trustmark's Home's lost profit totals $54,537.71. (Attached as "Exhibit D" is the Trustmark Homes, LLC breakdown of total interior and exterior costs, delineated as spent to date or needed to complete)

Mrs. Fernandez would not have begun renovation of this building if not for BPs assertion that they would use the building for long-term housing. She is not financially able to take on this type of project without a guarantee of an income stream. She believed BPs representatives, who visited the site numerous times and asked for specific renovation

3

Linda L. Fernandez
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

changes. Now she owns a partially-renovated building designed to fit the purpose outlined by BP which limits its marketability for other endeavors. If she can even come up with the money to finish the building, she will have difficulty finding another tenant to occupy this building and will, therefore, lose a significant amount of profit. Conversely, she can't leave the building open and unoccupied with partially completed plumbing and electrical work done. Mrs. Fernandez is left with hundreds of thousands of dollars in debt; an unfinished building; and a narrow prospect for finding other tenants only because she chose to rely upon BPs assertions that they needed this facility completed promptly.

Had BP lived up to its promises, the building would have been occupied by 92 BP personnel. Although the Fernandez family was led to believe in June that long-term housing was needed, according to Mrs. Touchard, BP had changed their methods and only signed contracts for housing for minimum 3-month intervals. Since exact changes were made to the plans to meet BPs requests, Mrs. Fernandez expected the property to be leased for much longer. However, because she feels BP is responsible for the costs to complete the building, this damage request is limited to the minimum leasing timeframe. The prevailing rental rate in the community ranges from $65 to $100 per person per day. Therefore, Mrs. Fernandez would have earned between $538,200 and $828,000 for housing 92 people for 90 days at between $65 and $100 per day. Even considering her limited overhead to be 30%, her lost income ranges between $346,740 and $579,600, for an average of $463,170 lost income. That does not take into account that the initial contract for housing could have been longer considering that the building "perfectly" met BPs needs. Her lost income could be substantially higher than these figures.

In summary, Mrs. Fernandez' three-part damage claim is as follows:

$ 312,432.66 for expenses incurred repairing the building according to BP specifications.

$ 447,745.53 cost to complete the partially renovated building that followed the dictates of BPs housing needs. Alternatively, Mrs. Fernandez would accept $ 54,537.71 to be paid as lost profits to Trustmark Homes, LLC, and she would then allow a BP contractor to complete construction.

$ 463,170 lost income for rental profit that would have been made upon completion of the building. This is assuming a minimum rental period of 3 months. Understandably, considering the cost of repair, the Fernandez family anticipated a lengthier rental period once the building was operational.

4