## ATTACHMENT "A"

### The Economic Impact of the Oil Spill and Injuries to Plaintiff

1.      The Oil Spill has and continues to impact the Gulf Coast's and Alabama's shorelines and coastal areas, threatening Plaintiff's livelihoods and business operations.

2.      Plaintiff owned real property located within the coastal areas impacted by the Oil Spill.

3.      Plaintiff is a Real Estate Developer who develops residential, commercial, and/or industrial properties, and, as such, is excluded from the Deepwater Horizon Economic and Property Damages Settlement Class.

4.      Plaintiff does not meet the descriptions of any Damage Categories within the Economic and Property Damages Settlement, and, as such, is excluded from the Economic Class.

5.      As a direct and foreseeable result of the Oil Spill, Claimant suffered lost profits due to lost real property sales directly and foreseeably caused by the Oil Spill.

6.      At the time of the Oil Spill, Plaintiff along with 77 Sunset Strip, George T. Grau and G.C. Outlaw, III owned a large tract of land in Mobile County, Alabama. The land was purchased in anticipation of Highway 158 being extended to connect Interstates 10 and 65, and for its prime location near US 98.

7.      At that time, the property was located in the fastest growing part of Mobile County, Alabama and rested on 3.5 miles of water frontage. Plaintiff's main purpose was to hold, improve, develop, and/or when profitable, sell the land.

8.      On July 25, 2007, Plaintiff and 77 Sunset Strip, George T. Grau and G.C. Outlaw, III entered into an option agreement with Gulf Coast Entertainment, LLC ("GCE") to sell the property.  The agreement gave exclusive rights to purchase the property to GCE, and as a result,

no other offers were sought or considered.

9.     The agreement was in place to allow GCE enough time to obtain financing and attract investors to purchase the property, and secure an environmental approval permit from the US Corps of Engineers.

10.    GCE made option payments during 2007 & 2008, but due to the additional time and expense required to obtain the environmental approval permit, Plaintiff agreed to suspend the option payment requirement and agreed to accrue the payments until GCE secured financing to close on the purchase.

11.    As GCE was evaluating several different financing agreements, term sheets, and equity partner options since securing the permit and Tax Incentive Financing (TIF) agreements, a final expiration date of February 28, 2013 was agreed upon.

12.    When the Oil Spill occurred, the entire Gulf region became unstable and any enthusiasm for investing in entertainment or retail opportunities became non-existent.  The fallout from the Oil Spill also caused surrounding economies to become strained and negatively affected GCE's ability to generate the revenue necessary to purchase the property.

13.    As a direct and foreseeable result of the Oil Spill and the accompanying ramifications, Plaintiff suffered economic injury and lost profits when GCE backed out of the agreement to purchase the land from Plaintiff.

14.    After GCE backed out of the purchase agreement, Plaintiff was unable to find an alternative purchaser because the Oil Spill had directly and foreseeably caused a depression in the real estate market and would-be buyers were not purchasing real estate in the Gulf Coast areas affected by the Oil Spill.  Thus Plaintiff was left without the expected revenue from GCE.

15.    Soon Claimant could not meet its financial obligations in regard to the property.

16.     Thereafter, the banks began foreclosure proceedings and in September 2011, Plaintiff and 77 Sunset Strip, George T. Grau and G.C. Outlaw, III were forced to execute a Deed In Lieu of Foreclosure.  As a result, all initial investments to acquire the property as well as the potential profit from the sale were lost.

17.     Therefore, as a direct and foreseeable result of the Oil Spill, Claimant has suffered damages and economic injuries, including: lost profits from the sale of real property; loss in the value of the real property due to Plaintiff losing the property in lieu of foreclosure; loss of profits or earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources; loss of value of Plaintiff's real property; costs to mitigate Plaintiff's damages; costs to assess Plaintiff's damages; carrying costs; and other losses and damages.

## "PRESENTMENT" UNDER OPA

18.     To the extent required by law, and/or by consent and/or stipulation by BP, Plaintiffs have satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b) by the submission of their claims to the BP OPA Claims Program, the Deepwater Horizon Court-Supervised Settlement Program and/or the Gulf Coast Claims Facility.

19.     In particular, on January 18, 2013, Plaintiff submitted a completed "BP Claims Program – Claim Form for Individuals and Businesses" and a Notice of Claim packet including a "sum certain" damage amount, a description of the incident and claim, and supporting documentation to BP as the "responsible party" under OPA via e-mail to the email address provided by the BP Claims Program, and followed by sending a hardcopy of all documents to the responsible party via US Mail.

20.     BP did not settle Plaintiff's claim by payment within 90 days of presentment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, and *in solido,* as follows:

1. Economic and compensatory damages in amounts to be determined at trial;

2. Punitive Damages;

3. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

4. Reasonable claims preparation expenses;

5. Attorneys' fees;

6. Costs of litigation; and

7. Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

## RESERVATION OF RIGHTS

### *Right to a Trial by Jury*

Plaintiff demands a jury trial for any and all claims pleaded herein in which a jury trial is available by law.

### *Right to File Amendments*

Plaintiff reserves the right to amend this complaint and/or file additional complaints to supplement Plaintiff's present claims or assert additional claims against the Defendants named herein and/or against any additional parties.