# PADEN & PADEN, PC
## Attorneys at Law

ROBERT E. PADEN (1931-2002)  
R. SHAN PADEN (spaden@padenlawyers.com)  
RALPH E. COLEMAN, JR. (rcoleman@padenlawyers.com)  
RODERICK J. EVANS (revans@padenlawyers.com)  
T. MORGAN DUNCAN (mduncan@padenlawyers.com)

1813 3rd Avenue N. Ste 200  
Bessemer, Alabama 35020  
Phone (205) 432-0270  
Fax (205) 432-0275

April 19, 2013

**VIA E-MAIL**

BP Oil Company, Inc.  
Attention: Claims Department  
P.O. Box 330919  
Houston, Texas 77233  
E-Mail bpclaimsprogram@bp.com

**RE: PRESENTMENT OF CLAIM – FIRST FINANCIAL BANK**

To Whom It May Concern:

      Our firm represents the interests of First Financial Bank, a corporation located at 1630 4th Avenue North, Bessemer, Alabama 35020 in Jefferson County. First Financial Bank also has branches in Tuscaloosa County, Bibb County, and Shelby County located in Alabama. Per the requirements of the Oil Pollution Act, this letter hereby serves as our client's presentment of claim against BP Oil Company for damages suffered as a consequence of the April 20, 2010 Deepwater Horizon oil spill. Our client is alleging damages in the amount of $3,445,890.32. As the attached documents show, First Financial Bank suffered damages relating to mortgages it held on properties in the Gulf region, an increase in foreclosure sales that resulted in a loss, and a general loss of business due to the financial hardship of those in the state of Alabama and the other effected areas. Please take the time to review the documentation provided to you and get back to us at your earliest convenience.

Sincerely,

Shan Paden

Brief Description:

1. The Bank incurred losses in net earnings, resulting from the oil spill, in two ways –
    a. A second mortgage loan for $1 million was made by the Bank at West Beach in Gulf Shores, Alabama, behind a first mortgage for under $3 million. The Bank was well collateralized at the time of the loan in 2005, with an appraisal of over $8 million. The borrowers were unable to repay the loan in 2008. The lender with the first mortgage on the loan contended that the Bank had committed to buy their first mortgage loan for approximately $3 million, when it was not the case. In 2011, the Court determined that the Bank was correct. See Attachment A. The Bank could now collect its second mortgage loan balance from a sale of the property. However, the impact of the oil spill had decreased property values so much, subsequent to April 2010, that the Bank was unable to collect the amount owed from a sale of the property. The loss was $1,035,890.32, comprised of $927,361.88 for write-off of the loan and $108,528.44 for attorney fees and appraisals. Attachment B is an Account Ledger from the records of the Bank which summarizes pertinent information on this account. Also, Attachment C is a detail of costs incurred that should have been recovered from the sale of the property. The Bank requests compensation in the amount of $1,035,890.32.
    b. The volume of business for the Bank decreased significantly in 2012, due to the negative impact of the oil spill on the economy in Alabama. Total income decreased from $10,378,000 in 2009 to $8,761,000 in 2010, or $1,617,000. The cost of Other Real Estate Expense increased from $1,664,000 in 2009 to $4,133,000 in 2010, or $2,469,000. The cost of Provision for Loan Losses increased from $2,569,000 in 2009 to $2,826,000 in 2010, or $257,000. These cost increases result from borrowers being unable to repay the Bank, forcing the Bank to foreclose on the collateral and sell at a loss. The Net Loss for the Bank was $2,410,000 higher in 2010 over 2009. The Bank has been able to improve, together with its customers, since the year of the oil spill. See Attachment D. The Bank requests compensation in the amount of $2,410,000.00.

The total compensation requested by the Bank is $3,445,890.32.

*West Beach file*

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 10-12165
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-00731-WS-M

FIRST FINANCIAL BANK,

                                        Plaintiff - Appellee,

versus

CS ASSETS, LLC,

                                        Defendant - Appellant,

WEST BEACH, LLC,

                                        Defendant.

Appeals from the United States District Court
for the Southern District of Alabama

(July 22, 2011)

Before TJOFLAT, EDMONDSON and CARNES, Circuit Judges.

*Attachment A*

PER CURIAM:

Defendant-Appellant CS Assets, LLC ("CS Assets") appeals the district court's order granting the motion for voluntary dismissal of Plaintiff-Appellee First Financial Bank ("Bank"). No reversible error has been shown; we affirm.

Both CS Assets and Bank were mortgagees on certain property in Baldwin County, Alabama. CS Assets held a senior mortgage; Bank was the junior mortgagee. After the mortgagor defaulted on both mortgage loans, CS Assets foreclosed on the property; CS Assets was the purchaser at the foreclosure sale. CS Assets and Bank were unable to agree upon a redemption price; Bank then filed a redemption action against CS Assets pursuant to Alabama's statutory redemption law.[1] Alabama Code §§ 6-5-247, et seq. Bank deposited over three million dollars in the court registry to cover the redemption.

Both parties moved for summary judgment advancing what each believed to be an equitable redemption price. In its summary judgment motion, Bank alerted the court to the possibility that it might seek voluntary dismissal if the redemption price were set at an amount higher than it was willing to pay. When the court

---

[1] Bank's redemption action sought to redeem seven parcels foreclosed upon by CS Assets. CS Assets objected to inclusion of two of the parcels because Bank was no mortgagee on those parcels. The district court granted CS Bank's partial motion to dismiss those two parcels but cautioned that CS Assets had waived its right, if any, to object to piecemeal redemption.

2

determined the redemption price, the court did not enter judgment; it instead heard the parties on the propriety of disbursement of funds and entry of final judgment. Bank filed a motion for voluntary dismissal of its redemption claim with prejudice pursuant to Fed.R.Civ.P. 41(a)(2). Bank's motion to dismiss with prejudice was granted.

We review the grant of voluntary dismissal for abuse of discretion. See Pontenberg v. Boston Scientific Corp., 252 F.3d 1253, 1255 (11th Cir. 2001) ("The district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2)."). And "in most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice." Id.

CS Assets contends that the district court abused its discretion. According to CS Assets, it was entitled to entry of judgment in the amount of the redemption price already determined by the district court. The district court fully considered and rejected CS Asset's claimed entitlement: no Alabama authority recognizes the legal rights claimed by CS Assets as a redemption defendant. And, as the district court order explains, the Alabama Supreme Court has twice indicated -- albeit in dicta -- that a redemption defendant cannot compel the redemptioner to complete the purchase of property subject to the redemption action at the redemption price

3

set by the court. See Rhoden v. Miller, 495 So.2d 54, 58 n.3 (Ala. 1986) ("judgment ordering redemption ... merely allows the plaintiff to purchase the property from the defendant....Failure to comply with the terms of the judgment results only in the plaintiff's losing his right of redemption. The defendant cannot enforce payment."); Byrd v. Southeast Enterprises, Inc., 812 So.2d 266, 268 n.2 (Ala. 2001) (same).

We see no error in the district court's reasoned decision and no abuse of discretion. For the reasons set out in the district court's 8 April 2010 order, CS Assets failed to show it would suffer legal prejudice from the grant of Bank's voluntary motion to dismiss with prejudice.[2] And because we conclude the dismissal with prejudice is due to be affirmed, we need not address the many issues raised by both parties about the redemption price set out in the district court's 13 January 2010 order.

AFFIRMED.

---

[2] We recognize that the clear expressions of the Alabama Supreme Court on the right of redemptioners to walk away from a court-determined redemption price were not holdings of those cases. Nonetheless, we reject CS Assets' contention that this appeal raises an issue appropriate for certification to the Alabama Supreme Court. The Alabama Supreme Court has spoken clearly and unequivocally on this issue. For us, these pronouncements provide sufficient and significant guidance on how the Alabama Supreme Court would rule if presented with this issue. See Jennings v. BIC Corp., 181 F.3d 1250, 1254-55 (11th Cir. 1999).

05113134.310

04-779704

**West Beach, LLC**
**West Beach Boulevard**
**Gulf Shores, AL**

| CHARGES | CREDITS | BALANCE | REFERENCE | | |
|---|---|---|---|---|---|
| | | | DATE | TLR | NUMBER |
| 927,461.88 | | 927,461.88 | 11-30-07 | | JV 82744 |
| late charge | 100.00 | 927,361.88 | 11-30-07 | | 82744 |
| | 927,361.88 | .00 | 3-28-08 | | JV 83697 |

Jr to GL 01110127

Charged off 12-31-09

Original loan of $1,000,000 was made for the purchase of another property that we did take a mtg. int. in.

/A2

/A FDIC
84 coll.cd.

Foreclosure Date 11-30-07 FC by 1st mtge
Current Appraisal 7,650,000.00   4-20-07
Original Appraisal 8,320,000.  10-29-04
Original Loan 4-7-05  $1,000,000.00
File Maintenance YTD interest (120 or 025) OK
File Maintenance YTD (121)   OK
File Maintenance YTD late charges (117 or 176) 200.00 to $400.00
File Maintenance Credit Bureau Code (698 or 215)

**FIRST FINANCIAL BANK**

oil spill 4/20/2010

Attachment B

|          |                                            |
|----------|--------------------------------------------|
|          | SPK&F legal fees thru today $4/20.00       |
|          | '08 Joseph & Co appraisal $5000.00         |
| 11-6-08  | Johnstone, Adams etc fee Oct 2008 $3676.50 |
| 1-20-09  | " " " " thru 12-31-08 $2160.16             |
| 1-26-09  | SPK&F 11-17-08 to 1-26-09 $780.00          |
| 3-12-09  | SPK&F 1-28-09 to 3-6-09 $500.00            |
| 5-19-09  | Johnstone, Adams etc fee Mar & Apr 2009 $3947.80 |
| 6-8-09   | " " " May 2009 $3574.00                    |
| 6-16-09  | Joseph & Co appraisal $5,000.00            |
| 6-29-09  | SPK&F 3/3/09 - 5/22/09 $880.00             |
| 7-15-09  | Johnstone, Adams etc June 2009 $2262.11    |
| 9-16-09  | " " " July & Aug $2426.50                  |
| 9-18-09  | Appraisal fee to Joseph & Company $3500.   |
| 10-16-09 | SPK&F May 22 - Oct 10, 2009 $1020.00       |
| 12-7-09  | Johnstone, Adams etc Oct & Nov 2009 $12,619.47 |
| 1-14-10  | " " " Dec 2009 $2678.00                    |
| 2-4-10   | " " " Jan 2010 $10,037.00                  |
| 2-22-10  | SPK&F 10/31/09 to 2/22/10 $1240.00         |
| 3-10-10  | Courtney & Morris appraisals $11,702.50    |
| 3-10-10  | Johnstone Adams Feb 2010 $6,735.20         |
| 6/9/10   | Johnstone Adams 5080.90 May 2010           |
| 6-23-10  | SPK&F 2/22/10 to 6/21/10 $770.00           |
| 7-12-10  | Johnstone, Adams $5037.39 June 2010        |
| 8-10-10  | " " $12,365.40 July 2010                   |
| 9-10-10  | " " $877.68 August 2010                    |
| 10/8/10  | " " $2506.84 September 2010                |
| 1-7-11   | " " $20.89 December 2010                   |
| 1-11-11  | " " $64.50 Jan 2011                        |
| 8-8-11   | " " $279.50 July 2011                      |
| 8-29-11  | SPK&F June 2010 - Aug 2011 $580            |
| 9-6-11   | Johnstone, Adams $8600 Aug 2011            |

Total = $108,528.44

Attachment C

**First Financial Bank**
**Income Statement Summary**
**Years Ended December 31, 2009 - December 31, 2012**

(Dollar Amounts in Thousands)

|  | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|
| Total Interest Income | $ 10,378 | $ 8,761 | $ 7,884 | $ 6,546 |
| Total Interest Expense | 4,173 | 3,466 | 2,795 | 2,003 |
| Net Interest Income | 6,205 | 5,295 | 5,089 | 4,543 |
| Provision for Loan Losses | 2,569 | 2,826 | 1,383 | (781) |
| Net Interest Income, after Provision for Loan Losses | 3,636 | 2,469 | 3,706 | 5,324 |
| ORE Expense | 1,664 | 4,133 | 1,340 | 2,302 |
| Noninterest Income/(Expense), net | (5,482) | (4,025) | (3,237) | (2,183) |
| Net Income/(Loss) Before Income Tax | (3,510) | (5,689) | (871) | 839 |
| Income Tax Benefit/(Expense) | 231 | - | (243) | - |
| Net Income/(Loss) | $ (3,279) | $ (5,689) | $ (1,114) | $ 839 |

*Attachment D*