# IN RE: OIL SPILL by "Deepwater Horizon"
# AMENDMENT TO DIRECT FILING SHORT FORM (or PLAINTIFF PROFILE FORM)

Authorized by Order of the Court, Civil Action No. 10-md-2179 Rec. Doc. 4043
(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)

**Please include any information that adds to or is different from your original Short Form or Plaintiff Profile Form.**
*(It will be presumed, for all spaces left blank on this form, that the information is the same.)*

MDL 2179 and Civil Action No. 10-2771       SECTION: J       JUDGE CARL BARBIER

**CLAIM IN LIMITATION / JOINDER IN MASTER ANSWER / INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE AMENDMENT FORM**

By submitting this document, I, or the business I am authorized to act for, hereby amend the claims or information provided in the Short Form (or Plaintiff Profile Form) identified below.

**Short Form** filed?    YES ■    NO ☐

**If yes, list your Original Short Form Document Number** (this is the document filing number to you upon filing your Short Form with the Court).

Short Form Document No.: 621    (filed in No. 10-8888).

**Plaintiff Profile Form** served?    YES ☐    NO ■

**If yes, list your "LexisNexis® File & Serve" Number** (this is the 8-digit number stamped on the Plaintiff Profile Form when it is filed on LexisNexis® File & Serve).

LexisNexis® File & Serve No.: _____

If yes, please provide the following information about your original case:

Original Case Caption: _____
Original Civil Action No.: _____
Originating Court: _____
EDLA Civil Action No.: _____

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Weitzer | Stephen | | |

| Phone Number | E-Mail Address |
|---|---|
| | |

| Address | City / State / Zip |
|---|---|
| 557 Danbury Road | Wilton, CT 06897 |

| INDIVIDUAL CLAIM ☐ | BUSINESS CLAIM ✓ |
|---|---|
| Employer Name | Business Name: Arista Industries, Inc. |
| Job Title / Description | Type of Business: Seafood Wholesale/Distribution |
| Address | Address: 557 Danbury Road |
| City / State / Zip | City / State / Zip: Wilton, CT 06897 |

---

[1] **If amending a Short Form**, this form should be filed with the U.S. District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130, in Civil Action No. 10-8888.   **If amending a Plaintiff Profile Form**, this form should be served on all counsel using LexisNexis® File & Serve, as provided in Pre-Trial Order No. 12 [Doc. 600].

| Last 4 digits of Social Security Number | Last 4 digits of Tax ID Number 2791 |
|---|---|
| Attorney Name (if applicable) John E. Tomlinson | Firm Name (if applicable) Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. |
| Address 218 Commerce Street | City / State / Zip Montgomery, AL 36104 |
| Phone Number (334) 269-2343 | E-Mail Address John.Tomlinson@BeasleyAllen.com |
| Claim filed with BP?  YES ✓  NO ☐<br>If yes, list BP Claim No.: 1003066-01 | Claim Filed with GCCF?  YES ✓  NO ☐<br>If yes, list Claimant Identification No.: 3460268 |

**Claim Type (Please check all that apply):**

☐ Damage or destruction to real or personal property
✓ Earnings/Profit Loss
☐ Personal Injury/Death
☐ Fear of Future Injury and/or Medical Monitoring
☐ Loss of Subsistence use of Natural Resources
☐ Removal and/or clean-up costs
☐ VoO Charter Dispute
☐ Other _____

2

**Brief Description:**

1. For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury. For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred. For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

Claimant Arista Industries, Inc. ("Arista") has filed a Complaint for damages in the United States District Court, Eastern District of Louisiana on April 20, 2013. Out of an abundance of caution, Arista hereby amends its original Short Form Joinder as follows: For a description of the nature of the injury, please see attachment "A" to this form.

2. For personal injury claims, describe the injury, as well as how and when it was sustained. Also, Bundle A plaintiffs should identify all health care providers from January 1, 2008 to present, and complete authorizations for release of medical records for each. Bundle B3 plaintiffs should identify all health care providers from April 20, 2010 to present, and complete authorizations for release of medical records for each. Bundle A plaintiffs should also identify all employers from January 1, 2008 to present and complete authorizations for release of employee/personnel records for each employer. Bundle B3 plaintiffs should identify all employers from January 1, 2010, and provide authorizations, if your personal injury took place after April 20, 2010 and you are claiming damages for lost work-time as a result of those personal injuries.[2] [Additional authorizations may be required.]

3. For post-explosion claims related to clean-up or removal, include your role or your business's role in the clean-up activities, the name of your employer (if applicable), and where you were working.

---

[2] All authorization forms should be sent directly to Liskow & Lewis, One Shell Square, 701 Poydras Street, Suite 5000, New Orleans, LA 70139-5099, or served on all counsel using LexisNexis® File & Serve, as provided in Pre-Trial Order No. 12 [Doc. 600]. Any and all documents obtained in connection with these authorizations shall be treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 13), and subject to full copies of same being made available to the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

Please check the box(es) below that you think apply to you and your claims:
**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

- [ ] 1. Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.
- [x] 2. Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.
- [ ] 3. Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.
- [ ] 4. Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.
- [ ] 5. Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.
- [ ] 6. Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.
- [ ] 7. Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.
- [ ] 8. Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.
- [ ] 9. Bank, financial institution, or retail business that suffered losses as a result of the spill.
- [ ] 10. Person who utilizes natural resources for subsistence.
- [ ] 11. Other: _____

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Clean-Up (Bundle B3)**

- [ ] 1. Boat captain or crew involved in the Vessels of Opportunity program.
- [ ] 2. Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.
- [ ] 3. Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.
- [ ] 4. Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.
- [ ] 5. Resident who lives or works in close proximity to coastal waters.
- [ ] 6. Other: _____

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 13), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

s/ John E. Tomlinson
_____
Claimant or Attorney Signature

John E. Tomlinson
_____
Print Name

04/20/2013
_____
Date

## ATTACHMENT "A"

### The Economic Impact of the Oil Spill and Injuries to Arista

1. During the summer of 2010, an oil slick with a range of thousands of miles formed and could be seen from space. Additionally, thick, voluminous plumes of oil were identified in deep waters within the Gulf of Mexico. The Oil Spill caused this slick and these plumes to form. Oil washed ashore in the Gulf of Mexico and damaged marine animals' coastal habits.

2. The Oil Spill has impacted and continues to impact the Gulf of Mexico, and the Gulf Coast's and Louisiana's shorelines, estuaries, bayous, bays and Waters of the Coastal Zone, threatening Arista's livelihood, business operations, loss of profits and/or impairment of earning capacity.

3. The oil from the *Deepwater Horizon* Oil Spill contains benzene, toluene, polyaromatic hydrocarbons and other compounds (collectively referred to as Total Petroleum Hydrocarbons, or "TPH"), all of which are known carcinogens. The oil from the *Deepwater Horizon* Oil Spill also contains mercury, lead and other heavy metals that are hazardous to the health of people and aquatic life.

4. The oil released is extremely hazardous to marine life in the Gulf of Mexico and the waters of the states bordering the Gulf of Mexico. It is especially hazardous to marine life at the bottom of the food chain, including creatures such as plankton, shrimp, and crabs.

5. These plankton, shrimp, and other marine creatures are vital to entire marine ecosystem, and the damaged sustained by these tiny marine creatures threatens the entire marine the species regularly sought by commercial and recreational fishermen.

6. As of July 2, 2010 and continuing for some time, the National Oceanic and Atmospheric Administration prohibited commercial and recreational fishing in an area covering

80,228 square miles or approximately thirty-three percent (33%) of the Gulf of Mexico, have been closed due to the Oil Spill.

7. Exposure to crude oil and dispersants as a result of the *Deepwater Horizon* Oil Spill has caused and is continuing to cause environmental damages to the marine ecosystem and aquatic species for years to come. As noted by Dr. Lisa Kaplowitz of the U.S. Department of Health and Human services in her June 15, 2010 testimony before Congress, "Oil can remain toxic in the environment for years."

8. Moreover, chemical dispersants used by BP have been reported to be negatively impacting the health and safety of those assisting in the clean-up of the Oil Spill. The potential lasting toxic effects of these chemicals could further endanger the ability of individuals and entities to derive income and revenue from business operations located in the areas along the Gulf Coast and from sources tied to the seafood, fishing, and tourism industries in the Gulf region.

9. Preliminary economic projections on the impact to the Gulf of Mexico's fishing industry alone estimated that damages could be in the billions of dollars.

10. As the Oil Spill immediately damaged the seafood harvesting and processing industry and the immediate tourist trade, the integral nature of the economy of the Gulf Coast results in damage throughout the states of Mississippi, Alabama, Louisiana, Texas, and Florida. By way of example, when the fishermen are not able to harvest and the processors not able to sell, they are not able to make payments on their mortgages, which results in defaults in loans, and they are not able to maintain their employees, reducing the employees' income, which results in reduced spending, resulting in reduced sales at all retail establishments throughout the state. This chain of causation is continuous and not broken throughout the geographical area of

the Gulf Coast.

11. The Oil Spill has and continues to affect both the supply of Gulf Seafood and the demand for Gulf seafood. Fishery closures constrained harvesters and disrupted seafood supplies for the Gulf region and other region's processors, distributors, and buyers, including Arista. The disruption of seafood supplies resulted in the loss of some of the Gulf and other region's seafood markets throughout the country, and has induced buyers to use substitutes such as products from other regions or imports.

12. The areas affected by the closures and environmental damage are some of the richest fishing grounds in the Gulf for commercial species such as shrimp, menhaden, and oysters.[1] When comparing commercial landings to the same period in 2009 (January through December), total Gulf landings for all shrimp species in 2010 decreased by 35.6 million pounds (27%).[2] On the state level, shrimp landings decreased by 32% in Louisiana, 60% in Mississippi, 56% in Alabama and nearly 15% in Texas. The decreases in landings resulted in lower revenues, volume, production, profits in the harvesting, processing, wholesale and distribution sectors, including Arista's business.

13. Arista owns and operates a legitimate seafood wholesale and distributing business in Wilton, Connecticut, which has been in business for over 75 years. As part of its day to day business, Arista buys, sells, and ships domestic shrimp/seafood to distributors, restaurant chains and grocery stores throughout the country.

14. Arista directly buys and wholesales a substantial amount of shrimp and other

---

[1] Id 2

[2] NOAA Fisheries Office of Science and Technology, *Fishery Market News*, Monthly Gulf Coast Shrimp Statistics, December 2010, http://www.st.nmfs.noaa.gov/st1/market_news/doc45.txt. (Hereinafter cited as NOAA Fishery Market News).

seafood from the Gulf of Mexico harvesters, processors, and vendors. Arista's access to Gulf shrimp and other seafood through traditional markets plays an important role in maintaining its reputation for quality in product, as well as consistency in price.

15. Due to the Oil Spill, seafood harvesting in the Gulf was drastically reduced. The subsequent fishing and harvesting closures, the environmental impact on critical estuaries and harvesting grounds, along with the great number of boats that have left the Gulf industry as a direct result of the Oil Spill have caused and will continue to cause significant shortages of Gulf shrimp for Arista's seafood wholesale and distribution business. Demand for Gulf seafood has decreased because of changes in consumer perceptions related to the spill, as well as, having caused buyers to use substitutes such as products from other regions or imports. Once seafood buyers switch seafood suppliers, it has been and will be difficult for Arista to regain markets and/or market share.

16. As a direct and foreseeable result of the Oil Spill and Defendants' acts and omissions, Arista's seafood business has suffered and will continue to suffer direct and substantial financial losses, including lost profits and impairment of earning capacity. Arista's overall business value and ability to generate income has diminished due to the limited capacity of Gulf seafood caused by the Oil Spill.

17. As a direct and foreseeable result of the Oil Spill, and the Defendants' acts and omissions, Arista incurred expenses assessing damages resulting from the Spill.

18. As a direct and foreseeable result of the Oil Spill, and the Defendants' acts and omissions, the Arista was forced to hire the undersigned counsel and the undersigned law firm and as incurred attorneys' fees and costs.

19. The types of damages contained herein are by no means exhaustive. There are

many other forms of harm or damage from the Oil Spill that may be unknown, and Arista reserves the right to amend this Complaint as additional information becomes available.

## "Presentment" Under OPA

20. To the extent required by law, and/or by consent and/or stipulation by BP, Arista has satisfied all of the requirements of 33 U.S.C. §§ 2713(a) and (b) by the submission of its claims to the BP OPA Claims Program, the *Deepwater Horizon* Court-Supervised Settlement Program and/or the Gulf Coast Claims Facility.

21. In particular, on January 16, 2013, Arista submitted a "BP Claims Program-Claim Form for Individuals and Businesses" and a "Notice of Claim", including a "sum certain" and a description of the incident and claim as well as supporting documentation to BP as the "responsible party" under OPA via U.S. Mail overnight express and e-mail to the addresses provided by the BP Claims Program.

22. BP failed to settle the Claim by payment within 90 days of presentment.

23. Because Arista asserted claims against the responsible party through its prior Gulf Coast Claims Facility claim on November 23, 2010 (GCCF Claimant ID #3460268) the presentment on or about January 16, 2013, was made (and/or re-made) out of an abundance of caution.

24. Transocean has neither advertised nor established an OPA claims process.

**Plaintiff Demands Trial By Jury**