**IN RE: OIL SPILL by "Deepwater Horizon"**

**AMENDMENT TO DIRECT FILING SHORT FORM (or PLAINTIFF PROFILE F...)**

Authorized by Order of the Court, Civil Action No. 10-md-2179 Rec. Doc. 4043
(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)

LexisNexis File & Serve
39867239
Sep 16 2011
4:09PM

**Please include any information that adds to or is different from your original Short Form or Plaintiff Profile Form.**
*(It will be presumed, for all spaces left blank on this form, that the information is the same.)*

| MDL 2179 and Civil Action No. 10-2771 | SECTION: J | JUDGE CARL BARBIER |

**CLAIM IN LIMITATION / JOINDER IN MASTER ANSWER / INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE AMENDMENT FORM**

By submitting this document, I, or the business I am authorized to act for, hereby amend the claims or information provided in the Short Form (or Plaintiff Profile Form) identified below.

**Short Form** filed?   YES ■   NO ☐

If yes, list your Original Short Form Document Number (this is the document filing number to you upon filing your Short Form with the Court).

Short Form Document No.: **14703**   (filed in No. 10-8888).

**Plaintiff Profile Form** served?   YES ☐   NO ☐

If yes, list your "LexisNexis® File & Serve" Number (this is the 8-digit number stamped on the Plaintiff Profile Form when it is filed on LexisNexis® File & Serve).

LexisNexis® File & Serve No.: _____

If yes, please provide the following information about your original case:

Original Case Caption: _____
Original Civil Action No.: _____
Originating Court: _____
EDLA Civil Action No.: _____

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
|  |  |  |  |

| Phone Number | E-Mail Address |
|---|---|
|  |  |
| Address | City / State / Zip |
|  |  |

| INDIVIDUAL CLAIM ☐ | BUSINESS CLAIM ✓ |
|---|---|
| Employer Name | Business Name: **BNP, LLC** |
| Job Title / Description | Type of Business: **Real Estate Developer** |
| Address | Address: **11800 Front Beach Rd** |
| City / State / Zip | City / State / Zip: **Panama City Beach, FL 32407** |

---

[1] **If amending a Short Form**, this form should be filed with the U.S. District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130, in Civil Action No. 10-8888.   **If amending a Plaintiff Profile Form**, this form should be served on all counsel using LexisNexis® File & Serve, as provided in Pre-Trial Order No. 12 [Doc. 600].

1

| Last 4 digits of Social Security Number | Last 4 digits of Tax ID Number 7434 |
|---|---|
| Attorney Name (if applicable) Christopher D. Boutwell | Firm Name (if applicable) Beasley Allen Law Firm |
| Address 218 Commerce Street | City / State / Zip Montgomery, AL 36103 |
| Phone Number 334-269-2343 | E-Mail Address chris.boutwell@beasleyallen.com |
| Claim filed with BP?   YES ☑   NO ☐ | Claim Filed with GCCF?   YES ☑   NO ☐ |
| If yes, list BP Claim No.: 686612434047 & 1001288-01 | If yes, list Claimant Identification No.: 3451266 |

**Claim Type (Please check all that apply):**

☑ Damage or destruction to real or personal property
☑ Earnings/Profit Loss
☐ Personal Injury/Death
☐ Fear of Future Injury and/or Medical Monitoring
☐ Loss of Subsistence use of Natural Resources
☐ Removal and/or clean-up costs
☐ VoO Charter Dispute
☑ Other _____ loss of property value _____

**Brief Description:**

1. **For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury. For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred. For claims relating to fishing of any type, include the type and location of fishing grounds at issue.**

   For a description of the nature of Plaintiff's injury, please see Attachment "A" to this Form.

   * Plaintiff, BNP Investment Properties, LLC, has filed a Complaint for damaged in the US District Court for the Northern District of Florida. Out of an abundance of caution, Plaintiff hereby amends its original Short Form Joinder as stated herein and in Attachment "A."

   ** To the extent required by law, Plaintiff, BNP Investment Properties, LLC, has satisfied all administrative requirements of 33 U.S.C § 2713 (a) and (b) by presentment of their notice of claim to the responsible party. Therefore, out of an abundance of caution, Plaintiff amends its original Short Form Joinder as stated herein and in Attachment "A."

2. **For personal injury claims, describe the injury, as well as how and when it was sustained. Also, Bundle A plaintiffs should identify all health care providers from January 1, 2008 to present, and complete authorizations for release of medical records for each. Bundle B3 plaintiffs should identify all health care providers from April 20, 2010 to present, and complete authorizations for release of medical records for each. Bundle A plaintiffs should also identify all employers from January 1, 2008 to present and complete authorizations for release of employee/personnel records for each employer. Bundle B3 plaintiffs should identify all employers from January 1, 2010, and provide authorizations, if your personal injury took place after April 20, 2010 and you are claiming damages for lost work-time as a result of those personal injuries.[2] [Additional authorizations may be required.]**

3. **For post-explosion claims related to clean-up or removal, include your role or your business's role in the clean-up activities, the name of your employer (if applicable), and where you were working.**

---

[2] All authorization forms should be sent directly to Liskow & Lewis, One Shell Square, 701 Poydras Street, Suite 5000, New Orleans, LA 70139-5099, or served on all counsel using LexisNexis® File & Serve, as provided in Pre-Trial Order No. 12 [Doc. 600]. Any and all documents obtained in connection with these authorizations shall be treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 13), and subject to full copies of same being made available to the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

Please check the box(es) below that you think apply to you and your claims:

**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

☐ 1. Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.

☐ 2. Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.

☐ 3. Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.

☑ 4. Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.

☐ 5. Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.

☐ 6. Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.

☑ 7. Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.

☑ 8. Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.

☐ 9. Bank, financial institution, or retail business that suffered losses as a result of the spill.

☐ 10. Person who utilizes natural resources for subsistence.

☑ 11. Other: Real estate developer

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Clean-Up (Bundle B3)**

☐ 1. Boat captain or crew involved in the Vessels of Opportunity program.

☐ 2. Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.

☐ 3. Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.

☐ 4. Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.

☐ 5. Resident who lives or works in close proximity to coastal waters.

☐ 6. Other: _____

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 13), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

/s/Christopher D. Boutwell
_____
Claimant or Attorney Signature

Christopher D. Boutwell
_____
Print Name

April 21, 2013
_____
Date

# ATTACHMENT "A"

### The Economic Impact of the Oil Spill and Injuries to Plaintiff

1. The Oil Spill and the Spill response caused damage to real property, including Plaintiff's property, situated along the Gulf Coast resulting in physical damage and diminution in property values.

2. The Oil Spill impacted and continues to impact the Gulf Coast's and Florida's shorelines, beaches, and waters damaging and causing losses to Plaintiff's livelihood, business operations, profits, and earning capacity.

3. Prior to the Oil Spill, Plaintiff had developed portions of a large commercial and residential real estate development located on the shores of the Gulf of Mexico in Panama City Beach, Bay County, Florida. This development included a Gulf-front residential condominium development with multiple residential units. The condominium development, called Grand Panama Beach Resort, is located at 11807 Front Beach Road, Panama City Beach, Bay County, Florida ("Grand Panama").

4. As of April 20, 2010, Plaintiff had not declared bankruptcy, initiated total or partial asset liquidation, or debt restructuring. Also, Plaintiff was in compliance with all covenants regarding outstanding debt.

5. At all times relevant hereto and described below, Plaintiff owned a group or inventory of condominium units at the Grand Panama.

6. On or about March 29, 2010, Plaintiff offered for bulk sale its entire inventory of condominium units at the Grand Panama.

7. Plaintiff offered 73 units for sale for and issued a deadline of April 21, 2010 for potential buyers to submit offers to purchase.

8. Prior to the deadline for the submission of purchase offers, Plaintiff sold 5 condominium units and was offering the remaining 68 units in the bulk sale.

9. Plaintiff's market offering of Grand Panama condominiums yielded a great deal of interest. Many prospective buyers contacted Plaintiff's real estate agent, to pursue the purchase of Plaintiff's Grand Panama condominium inventory.

10. Plaintiff received Letters of Intent from, *inter alia*, Courtland Realty Investments and ABG Sundal Collier Rental Estate, Inc.

11. As it is a common industry practice for sophisticated buyers and sellers of investment real estate to operate under a Letter of Intent until the closing of the transaction, these Letters of Intent indicated both buyers' commitment to purchase the condominium inventory.

12. On April 21, 2010, Plaintiff received a Letter of Intent from Courtland Realty Investments ("Courtland Realty") offering to purchase Plaintiff's 68 condominium units.

13. Plaintiff also received a Letter of Intent from ABG Sundal Collier Rental Estate, Inc., ("ABG") offering to purchase Plaintiff's 68 condominium units.

14. Following these Letters of Intent, Plaintiff made a counter-offer to Courtland Realty.

15. On April 30, 2010, Courtland Realty responded to Plaintiff's counter offer by offering to purchase 53 of Plaintiff's Grand Panama units.

16. Closing would have occurred in June 2010.

17. Likewise, on April 28, 2010, ABG responded to Plaintiff's counter offer by offering to purchase 60 of Plaintiff's Grand Panama units.

18. Closing would have occurred in June 2010.

19. After ABG submitted their April 28, 2010 offer, they became convinced that the

Oil Spill was having and would continue to have a negative impact into the foreseeable future on the value and marketability of Grand Panama property and the Florida Gulf Coast real estate market. As a direct and foreseeable result of the BP oil spill, ABG rescinded their offer to purchase 60 of Plaintiff's Grand Panama units.

20. Similarly, after Courtland Realty submitted their April 30, 2010 offer, Courtland Realty sent communications to Plaintiff's real estate agent expressing their opinion that the Oil Spill had damaged the Grand Panama's value and marketability, rescinded their previous offer, and offered to purchase the same 53 of Plaintiff's Grand Panama units for a substantially lower price than they had previously offered.

21. Plaintiff could not accept this offer and after further negations proved futile, Courtland Realty completely withdrew its interest in purchasing Plaintiff's 53 Grand Panama units.

22. As a direct and foreseeable result of the BP oil spill, Plaintiff suffered financial losses, lost income, lost profit and earning capacity, lost reinvestment opportunity, and other damages resulting from the complete loss of this bulk sale.

23. Following the lost bulk sale, Plaintiff continued to aggressively market its inventory of condominium units to potential bulk purchasers and individual purchasers.

24. Because of the lost bulk sale and as a direct and foreseeable result of the Oil Spill, Plaintiff continued to suffer financial losses and damages because Plaintiff continued to incur marketing costs, carrying costs, cost to own and maintain, and other costs associated with owning the condominium units at the Grand Panama.

25. Because of Plaintiff's continued efforts to sell its Grand Panama condominium unit inventory, on April 18, 2011, Plaintiff received a signed Letter of Intent from National Land

Partners ("NLP") to purchase Plaintiff's remaining 50 condominium units at a significantly lower price than the prior cancelled sales and with contractual terms that further reduced Plaintiff's profit from the sale.

26. The sale to NLP was closed on May 9, 2011.

27. As a direct and foreseeable result of the Oil Spill, Plaintiff suffered financial losses, lost income, lost profit and earning capacity, lost reinvestment opportunity, and other damages resulting from lower sales price and less favorable sale term for the NLP sale as compared to the 2010 lost bulk sales.

28. As a direct and foreseeable result of the Oil Spill, Plaintiff suffered damages and losses caused because the Oil Spill prevented tourists from coming to Panama City Beach, therefore, foreclosing Plaintiff of the benefit of extremely favorable sale marketing opportunities and tourism rental revenues that a full tourist season brings to this type of development.

29. As part of its regular business operations, Plaintiff regularly rented its available Grand Panama condominium units to tourists for use as vacation lodging, from which Plaintiff derived income and profits.

30. As a direct and foreseeable result of the Oil Spill, Plaintiff suffered economic losses and damages including: losses and expense to clean-up oil from the Oil Spill from its property and/or prevent the migration or tracking by guests of oil from the Oil Spill onto its property.

31. Oil from the Oil Spill washed up and was deposited on Plaintiff's Gulf of Mexico shoreline.

32. As the property was directly oiled and physically damaged, this severely restricted marketing opportunities and deterred potential buyers from purchasing Grand Panama

condominium units.

33. When the Oil Spill occurred it caused an immediate and negative impact on the marketability, sale price, and property value of residential real property on the Gulf of Mexico, especially properties like Plaintiff's Gulf-front condominium development.

34. As a direct and foreseeable result of the Oil Spill, Plaintiff suffered physical damage to its property because oil from the Oil Spill was deposited or migrated onto portions of Plaintiff's Grand Panama property.

35. Plaintiff incurred losses and expense to clean-up oil from the Oil Spill from its property and/or prevent the migration or tracking by guests of oil from the Oil Spill onto its property.

36. Plaintiff's real property is situated in the Gulf Coast area damaged and negatively affected by the effects of the Oil Spill and as a direct and foreseeable result of the Oil Spill Plaintiff has suffered economic losses, physical damage to or destruction of its real and/or personal property and/or an interference with its property rights regarding its real property, diminution in property value and other damages.

37. In addition to and to compliment Plaintiff's other development activities at the Grand Panama development; Plaintiff planned, designed and took substantial steps toward constructing a waterpark on its property.

38. The waterpark was to be named Grand Adventures Waterpark ("Grand Adventures"). Grand Adventures was intended to compliment the other aspects of the vast Grand Panama Beach Resort and to increase the value and revenue of the whole.

39. Grand Adventures was to sit on a portion of Plaintiff's land between the Grand Panama condominium towers and its office building and commercial retail shopping center

developments.

40. Grand Adventures was to include a state-of-the-art waterpark, themed restaurant, and retail store.

41. Plaintiff's development plan called for a late 2010 or early 2011 construction start date for Grand Adventures.

42. As a direct and foreseeable result of the Oil Spill and resulting drop off in tourism, restaurant, retail, and real estate sales, Plaintiff's total resort business performance was severely diminished following the Oil Spill.

43. Following and as a direct and foreseeable result of the Oil Spill, Plaintiff's sales of condominium units had fallen off, rentals of its units to tourists were drastically lower than its expectations based on prior years' performance, and Plaintiff's retail shopping center was struggling to keep its restaurants and retail tenants.

44. This reduction in the Resort's total revenue caused by the Oil Spill and the bleak outlook for a quick post-spill recovery, forced Plaintiff to delay the start of construction on the Grand Adventures project.

45. Even though delayed, Plaintiff continued to plan and take steps toward developing Grand Adventures well into the Fall of 2011.

46. When Plaintiff finally believed it had a prospect for replacing the lost "bulk" sale if its condominium unit inventory, Plaintiff took steps to protect the autonomy of the Grand Adventure project when, and if, the new "bulk" sale was successful. To that end, Plaintiff created Gulf Adventures, LLC, which is wholly owned by the principle owner of BNP Investment Properties, LLC.

47. Shortly thereafter, Plaintiff deeded the property upon which Grand Adventures

was to be situated to Grand Adventures, LLC. Ownership and operation of the Grand Adventures development proceeded unaffected by this in-name-only change.

48. Ultimately, Grand Adventures' delay caused by the Oil Spill's effects on Plaintiff's business and local economic conditions having been weakened by the Oil Spill's effects, caused Plaintiff to suspend its plans for the project indefinitely.

49. As a direct and foreseeable result of the Oil Spill, Plaintiff has been denied the profits from the operation of its business and thus has suffered significant financial losses and other damages, including but not limited to: lost income and profit on the operation of the prospective Grand Adventures Waterpark development; Plaintiff's out-of-pocket costs for the development; a loss of the value of its real property; costs to mitigate Plaintiff's damages; costs to assess Plaintiff's damages, carrying costs; and other losses and damages.

## "PRESENTMENT" UNDER OPA

50. To the extent required by law, and/or by consent and/or stipulation by BP, Plaintiffs have satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b) by the submission of their claims to the BP OPA Claims Program, the Deepwater Horizon Court-Supervised Settlement Program and/or the Gulf Coast Claims Facility.

51. In particular, on December 6, 2012, Plaintiff submitted a completed "BP Claims Program – Claim Form for Individuals and Businesses" and a notice of claim packet including a "sum certain" damage amount, a description of the incident and claim, and supporting documentation to BP as the "responsible party" under OPA via e-mail to the email address provided by the BP Claims Program, and followed by sending a hardcopy of all documents to the responsible party via US Mail. Thereafter, on January 19, 2013, Plaintiff submitted an amendment to its December 6, 2012 notice of claim via e-mail to the email address provided by

the BP Claims Program, and followed by sending a hardcopy of all documents to the responsible party via US Mail.

52. BP did not settle Plaintiff's claim by payment within 90 days of presentment.

53. Because Plaintiff previously presented notice of their claims to BP, as the responsible party, the presentment described above was made (and/or re-made) out of an abundance of caution.

54. Prior to the above described notice of claim, on or about March 11, 2011, Plaintiff presented notice of their claim by filing a claim, included a "sum certain" damage amount, a description of the incident and claim, and supporting documentation, with the Gulf Coast Claims Facility ("GCCF"), Claimant number 3451266.

55. In response to this claim, on or about November 4, 2011, Plaintiff received a $25,000 final offer from the GCCF, which Plaintiff did not accept.

56. On or about May 31, 2012, Plaintiff again presented notice of its claim to the responsible party via the GCCF. The claim included a "sum certain" damage amount, a description of the incident and claim, and supporting documentation.

57. Plaintiff's May 31, 2012 claim was not settled by payment from the GCCF or BP within 90 days of presentment, or since.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, and *in solido,* as follows:

1. Economic and compensatory damages in amounts to be determined at trial;
2. Punitive Damages;
3. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

4. Reasonable claims preparation expenses;

5. Attorneys' fees;

6. Costs of litigation; and

7. Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

## RESERVATION OF RIGHTS

### *Right to a Trial by Jury*

Plaintiff demands a jury trial for any and all claims pleaded herein in which a jury trial is available by law.

### *Right to File Amendments*

Plaintiff reserves the right to amend this complaint and/or file additional complaints to supplement Plaintiff's present claims or assert additional claims against the Defendants named herein and/or against any additional parties.