# IN RE: OIL SPILL by "Deepwater Horizon"
# DIRECT FILING SHORT FORM[1]

**Authorized by Order of the Court, Civil Action No. 10 md 2179 Rec. Doc. 982**
**(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)**

MDL 2179            SECTION: J            JUDGE CARL BARBIER

**CLAIM IN LIMITATION--JOINDER IN MASTER ANSWER--INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE FORM**

By submitting this document, I am asserting a claim in *Complaint and Petition of Triton Asset Leasing GmbH, et al.*, No. 10-2771; adopt and incorporate the Master Answer [Rec. Doc. 244] to the *Complaint and Petition of Triton Asset Leasing Gmbh, et al.*, in No. 10-2771; and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 879] for private economic losses ("B1 Bundle") filed in MDL No. 2179 (10 md 2179); and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 881] for post-explosion injuries ("B3 Bundle") filed in MDL No. 2179 (10 md 2179).

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Canary | Leura | G. | |

| Phone Number | E-Mail Address |
|---|---|
| (334) 517-7180 | |

| Address | City / State / Zip |
|---|---|
| 201 South Union Street | Montgomery, Alabama 36130-4369 |

| INDIVIDUAL CLAIM ☐ | BUSINESS CLAIM ☑ |
|---|---|
| Employer Name | Business Name: The Retirement Systems of Alabama |
| Job Title / Description | Type of Business: Pension Fund |
| Address | Address: 201 South Union Street |
| City / State / Zip | City / State / Zip: Montgomery, Alabama 36130-4369 |
| Last 4 digits of your Social Security Number | Last 4 digits of your Tax ID Number: 4586/4399 |

| Attorney Name | Firm Name |
|---|---|
| John E. Tomlinson | Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. |
| Address: Post Office Box 4160 | City / State / Zip: Montgomery, Alabama 36103-4160 |
| Phone Number: (334) 269-2343 | E-Mail Address: john.tomlinson@beasleyallen.com |

| Claim filed with BP? | YES ☑ NO ☐ | Claim Filed with GCCF?: | YES ☐ NO ☑ |
|---|---|---|---|
| If yes, BP Claim No.: | | If yes, Claimant Identification No.: | |

**Claim Type (Please check all that apply):**

☐ Damage or destruction to real or personal property
☑ Earnings/Profit Loss
☐ Personal Injury/Death

☐ Fear of Future Injury and/or Medical Monitoring
☐ Loss of Subsistence use of Natural Resources
☐ Removal and/or clean-up costs
☐ Other: _____

---

[1] This form should be filed with the U.S. District Court for the Eastern District of Louisiana in New Orleans, Louisiana in Civil Action No. 10-8888. While this Direct Filing Short Form is to be filed in CA No. 10-8888, by prior order of the Court, (Rec. Doc. 246, C.A. No. 10-2771 and Rec. Doc. 982 in MDL 2179), the filing of this form in C.A. No. 10-8888 shall be deemed to be simultaneously filed in C.A. 10-2771 and MDL 2179. Plaintiff Liaison Counsel, after being notified electronically by the Clerk of Court of the filing of this Short Form, shall promptly serve this form through the Lexis Nexis service system on Defense Liaison.

1

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Brief Description:**

1. For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury. For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred. For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

Claimant The Retirement Systems of Alabama ("RSA") has filed a Complaint for damages in the United States District Court, Middle District of Alabama on April 19, 2013. Out of an abundance of caution, RSA hereby files this Short Form Joinder. For a description of the nature of the injury, please see attachment "A" to this form.

2. For personal injury claims, describe the injury, how and when it was sustained, and identify all health care providers and employers 2008 to present and complete authorization forms for each.

3. For post-explosion claims related to clean-up or removal, include your role in the clean-up activities, the name of your employer, and where you were working.

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Please check the box(es) below that you think apply to you and your claims:**
**<u>Non-governmental Economic Loss and Property Damage Claims (Bundle B1)</u>**

- [ ] 1. Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.
- [ ] 2. Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.
- [ ] 3. Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.
- [x] 4. Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.
- [ ] 5. Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.
- [ ] 6. Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.
- [x] 7. Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.
- [x] 8. Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.
- [ ] 9. Bank, financial institution, or retail business that suffered losses as a result of the spill.
- [ ] 10. Person who utilizes natural resources for subsistence.
- [ ] 11. Other: _____

**<u>Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Cleanup (Bundle B3)</u>**

- [ ] 1. Boat captain or crew involved in the Vessels of Opportunity program.
- [ ] 2. Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.
- [ ] 3. Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.
- [ ] 4. Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.
- [ ] 5. Resident who lives or works in close proximity to coastal waters.
- [ ] 6. Other: _____

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 11), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

s/ John E. Tomlinson
Claimant or Attorney Signature

John E. Tomlinson
Print Name

04/20/2013
Date

3

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

## ATTACHMENT "A"

### The Economic Impact of the Oil Spill and Injuries to RSA

1. During the summer of 2010, an oil slick with a range of thousands of miles formed and could be seen from space. Additionally, thick, voluminous plumes of oil were identified in deep waters within the Gulf of Mexico. The Oil Spill caused this slick and these plumes to form. Oil washed ashore in the Gulf of Mexico and damaged marine animals' coastal habitats.

2. The Oil Spill has impacted and continues to impact the Gulf of Mexico, and the Gulf Coast's and Alabama's shorelines, threatening RSA's livelihood, business operations, profits, and earning capacity.

3. The oil from the *Deepwater Horizon* Oil Spill contains benzene, toluene, polyaromatic hydrocarbons and other compounds (collectively referred to as Total Petroleum Hydrocarbons, or "TPH"), all of which are known carcinogens. The oil from the *Deepwater Horizon* Oil Spill also contains mercury, lead and other heavy metals that are hazardous to the health of people and aquatic life.

4. The oil released is extremely hazardous to marine life in the Gulf of Mexico and the waters of the states bordering the Gulf of Mexico. It is especially hazardous to marine life at the bottom of the food chain, including creatures such as plankton, shrimp, and crabs.

5. These plankton, shrimp, and other marine creatures are vital to entire marine ecosystem, and the damaged sustained by these tiny marine creatures threatens the entire marine the species regularly sought by commercial and recreational fishermen.

6. As of July 2, 2010 and continuing for some time, the National Oceanic and Atmospheric Administration prohibited commercial and recreational fishing in an area covering 80,228 square miles or approximately thirty-three percent (33%) of the Gulf of Mexico, have

been closed due to the Oil Spill.

7. Exposure to crude oil and dispersants as a result of the *Deepwater Horizon* Oil Spill has caused and is continuing to cause environmental damages to the marine ecosystem and aquatic species for years to come. As noted by Dr. Lisa Kaplowitz of the U.S. Department of Health and Human services in her June 15, 2010 testimony before Congress, "Oil can remain toxic in the environment for years."

8. Moreover, chemical dispersants used by BP have been reported to be negatively impacting the health and safety of those assisting in the clean-up of the Oil Spill. The potential lasting toxic effects of these chemicals could further endanger the ability of individuals and entities to derive income and revenue from business operations located in the areas along the Gulf Coast and from sources tied to the seafood, fishing, and tourism industries in the Gulf region.

9. Preliminary economic projections on the impact to the Gulf of Mexico's fishing industry alone estimated that damages could be in the billions of dollars.

10. A study done for the U.S. Travel Association projected that the Oil Spill would result in at least $7.6 billion in lost tourism revenue in 2010 alone. Tourism accounts for approximately 46 percent of the Gulf Coast economy annually, and damage to this core industry damages the broader economy of the Gulf Coast as well.

11. Tourism suffered not only in coastal areas and counties whose shores the oil reached, but across the entire Gulf Coast, including coastal areas that risked, but did not actually experience, contamination during the Oil Spill. By way of example, the Mississippi coast had a 50 percent cancellation rate on reservations generally; a May 2010 survey by the Louisiana Tourism Commission indicated that 26 percent of Americans who had planned to visit Louisiana

were no longer planning to visit after the Oil Spill began.

12. Alabama saw a dramatic drop in tourism, including a 60 percent drop in visitations and an 80 percent drop in home rentals. Overall, the combination of tourism and fishing losses in Alabama in 2010 will probably yield adverse impacts of $.7 billion in economic output, $498.9 million in earnings, and 24,880 jobs, according to a report by the Center for Business and Economic Research at the University of Alabama.

13. As the Oil Spill immediately damaged the seafood harvesting and processing industry and the immediate tourist trade, the integral nature of the economy of the Gulf Coast results in damage throughout the states of Mississippi, Alabama, Louisiana, Texas, and Florida. By way of example, when the fishermen are not able to harvest and the processors not able to sell, they are not able to make payments on their mortgages, which results in defaults in loans, and they are not able to maintain their employees, reducing the employees' income, which results in reduced spending, resulting in reduced sales at all retail establishments throughout the state. This chain of causation is continuous and not broken throughout the geographical area of the Gulf Coast.

14. The Deepwater Horizon oil spill has caused significant socioeconomic injuries to the Gulf Tourism industry, including Alabama's Gulf Coast and the many tourism related businesses along the well- traveled Alabama Tourism Corridors, including, I-10, Hwy 280, I-65 and I-85. Tourism is a major economic force in the Gulf States. It is a driving economic factor with a $34 billion dollar contribution to the Gulf economy supporting over 400,000 jobs in 2008.[1] This money was primarily gained through visitor spending on private leisure and hospitality. This would include things such as hotel accommodations, restaurants, recreation, and many other vacation or seasonal lifestyle related businesses. Leisure and hospitality make up

---

[1] www.ustravel.org/.../Gulf_**Oil_Spill_**Analysis_**Oxford_Economics_**710.pdf · PDF file

over 15% of all the private employment in the Gulf as compared to the rest of the United States where tourism makes up less than 12% of private employment.[2]

15. After the BP oil spill, various surveys demonstrated that people were no longer as interested in traveling to the Gulf Coast, and those who were interested cancelled their travel plans.[3] Also, several indicators showed double-digit declines in plans to travel to the Gulf Region.[4] It has been demonstrated by studies of previous disasters that the impact of the oil spill could endure beyond the resolution of the crisis and continue to have an effect on the economy and perception of the Gulf.[5]

16. RSA consists of the Teachers Retirement System of Alabama and the Employees Retirement System of Alabama (which includes the Judicial Retirement Fund) and is a body corporate. See Ala. Code Sections 36-27-3, 16-25-2, 36-27-2, and 12-18-2.

17. RSA carries a wide array of assets, including numerous hotel and resorts throughout Alabama, including locations in Point Clear, Auburn, Mobile, Montgomery, Prattville, Birmingham, and Florence, AL. Effective on or about 12/31/2006, RSA was and continues to be the owner of the real and personal property (including the operations) of certain hotels/resorts. These hotel/resorts are located on or adjacent to some of the same properties as the famous Robert Trent Jones Golf Trail, which traverses the State of Alabama along some of the most frequently traveled tourist corridors to Gulf beaches. RSA depends greatly on the revenue and profits from tourism spending.

18. Due to the Oil Spill, the number of tourists/travelers to the Gulf along major Gulf Coast travel corridors decreased, causing a decrease in revenue, profits and earning capacity for

---

[2] Id
[3] Id
[4] Id
[5] Id

RSA through its hotels/resorts.

19. As a direct and forseeable result of the Oil Spill and Defendants' acts and omissions, RSA has suffered and will continue to suffer direct and substantial financial losses and their overall business value and ability to generate income has been diminished.

20. As a direct and foreseeable result of the Oil Spill, and the Defendants' acts and omissions, RSA incurred expenses assessing damages resulting from the Spill.

21. As a direct and foreseeable result of the Oil Spill, and the Defendants' acts and omissions, the RSA was forced to hire the undersigned counsel and the undersigned law firm and as incurred attorneys' fees and costs.

22. The types of damages contained herein are by no means exhaustive. There are many other forms of harm or damage from the Oil Spill that may be unknown, and RSA reserves the right to amend this Complaint as additional information becomes available.

## "Presentment" Under OPA

23. To the extent required by law, and/or by consent and/or stipulation by BP, RSA has satisfied all of the requirements of 33 U.S.C. §§ 2713(a) and (b) by the submission of their claim to the BP OPA Claims Program.

24. In particular, on January 17, 2013, RSA submitted a "BP Claims Program-Claim Form for Individuals and Businesses" and a "Notice of Claim", including a "sum certain" and a description of the claim as well as supporting documentation to BP as the "responsible party" under OPA via U.S. Mail overnight express mail and e-mail to the addresses provided by the BP Claims Program.

25. BP failed to settle the Claim by payment within 90 days of presentment.

26. Transocean has neither advertised nor established an OPA claims process.

**<u>Plaintiff Demands trial by jury</u>**