**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
(Transferred from Southern District of Alabama Civil Action No. 10-293)**

| | | |
|---|---|---|
| In Re:  OIL SPILL by the OIL RIG §<br>"DEEPWATER HORIZON" §<br>in the GULF OF MEXICO §<br>on APRIL 20, 2010 §<br>§ | | MDL No. 2179<br><br>Section: J |
| This Document relates to: §<br>§ | | |
| Civil Action No. 2:10-cv-03253 - §<br>*Moore, et al. v. BP PLC, et al.* § | | Judge Barbier<br>Magistrate Judge Shushan |

<u>**SECOND AMENDED COMPLAINT**</u>

**NOW COME PLAINTIFFS,** Sarah H. Moore, Tommy Henderson, S.J. Henderson, Tim Henderson, Hettie Harrington, Mobile Management, LLC, William Henderson, Bruce Henderson, Lorraine Lee, Laura Woddail, Marilyn Roberts, Newell Robinson, Kathryn Steinemann, Kathryn Dexter Fillippeli, Mary H. Waite, Robert S. Waite III, Mary Ellen Dumas, William Berry Dumas, Jessica Dexter Taylor, Roderick B. Dexter, Helen Dexter McDavid, and William Dexter, through undersigned counsel, who allege, aver and represent as follows:

<u>**Nature of the Action**</u>

1.  On or about April 20, 2010, the *Deepwater Horizon* drilling platform exploded and sank, causing a spill of over 200 million gallons of crude oil from the Macondo Well, MC-252, and resulting in the worst maritime environmental disaster in United States history.

2.  Plaintiffs have suffered economic injury, damage and/or losses as a result of the oil spill.

<u>**THE PARTIES, JURISDICTION AND VENUE**</u>

3.  Plaintiff Sarah H. Moore is a resident citizen of the State of Alabama.  Plaintiff Moore derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below.

1

Exhibit "1"

Plaintiff Moore owns property in Mobile County, Alabama including a percentage of 1,660 acres of marshland, which includes Township 8 South, Range 2 West, Sections 20, 21, 28 and 29; parts of Sections 9, 10 and 16; as well as Cat Island (Section 31), collectively referred to as "the Marshland." Plaintiff Moore also owns a percentage of 546 acres at the mouth of the West Fowl River, which includes Township 8 South, Range 2 West, parts of Sections 3, 4, 9 and 30, collectively referred to as "West Fowl River Property." Plaintiff Moore owns 6.25 percent of the Marshland and 5.556 percent of the West Fowl River Property. Plaintiff Moore's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff Moore leases the oyster beds for a profit.

4. Plaintiff Tommy Henderson is a resident citizen of the State of Alabama. Plaintiff Henderson derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Henderson owns 6.25 percent of the Marshland and 5.556 percent of the West Fowl River Property, described above. Plaintiff Henderson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff Tommy Henderson leases the oyster beds for a profit.

5. Plaintiff S.J. Henderson is a resident citizen of the State of Alabama. Plaintiff Henderson derives substantial income from the natural resources of the Gulf of Mexico from owning

and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Henderson owns 6.25 percent of the Marshland and 5.556 percent of the West Fowl River Property, described above. Plaintiff Henderson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff S.J. Henderson leases the oyster beds for a profit.

6. Plaintiff Tim Henderson is a resident citizen of the State of Alabama. Plaintiff Henderson derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Henderson owns 6.25 percent of the Marshland and 5.556 percent of the West Fowl River Property, described above. Plaintiff Henderson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff Tim Henderson leases the oyster beds for a profit.

7. Plaintiff Hettie Harrington is a resident citizen of the State of Alabama. Plaintiff Harrington derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Harrington owns 25 percent of the Marshland and 11.111 percent of the

West Fowl River Property, described above.  Plaintiff Harrington's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Harrington leases the oyster beds for a profit.

8. Plaintiff Mobile Management, LLC is a family owned LLC in the State of Alabama whose members are residents of Alabama.  Plaintiff Mobile Management, LLC derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Mobile Management, LLC owns 12.50 percent of the Marshland and 8.332 percent of the West Fowl River Property, described above.   Plaintiff Mobile Management, LLC's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Mobile Management, LLC leases the oyster beds for a profit.

9. Plaintiff William Henderson is a resident citizen of the State of Alabama.  Plaintiff Henderson derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below.  Plaintiff Henderson owns 3.125 percent of the Marshland and 2.083 percent of the West Fowl River Property, described above.   Plaintiff Henderson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code

of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff William Henderson leases the oyster beds for a profit.

10. Plaintiff Bruce Henderson is a resident citizen of the State of Alabama.  Plaintiff Henderson derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below.  Plaintiff Henderson owns 3.125 percent of the Marshland and 2.083 percent of the West Fowl River Property, described above.  Plaintiff Henderson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Bruce Henderson leases the oyster beds for a profit.

11. Plaintiff Lorraine Lee is a resident citizen of the State of Alabama.  Plaintiff Lee derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below.  Plaintiff Lee owns 3.125 percent of the Marshland and 2.083 percent of the West Fowl River Property, described above.  Plaintiff Lee's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Lee leases the oyster beds for a profit.

12. Plaintiff Laura Woddail is a resident citizen of the State of Alabama.  Plaintiff Woddail

derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Woddail owns 3.125 percent of the Marshland and 2.083 percent of the West Fowl River Property, described above.  Plaintiff Woddail's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Woddail leases the oyster beds for a profit.

13. Plaintiff Marilyn "Lynn" Roberts is a resident citizen of the State of Alabama.  Plaintiff Roberts derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below.  Plaintiff Roberts owns 12.5 percent of the Marshland and 8.333 percent of the West Fowl River Property, described above.  Plaintiff Roberts' Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Roberts leases the oyster beds for a profit.

14. Plaintiff Dr. Newell Robinson is a resident citizen of the State of New York.  Plaintiff Robinson derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described

below.  Plaintiff Robinson owns 6.25 percent of the Marshland and 4.167 percent of the West Fowl River Property, described above.  Plaintiff Robinson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Robinson leases the oyster beds for a profit.

15. Plaintiff Kathryn Steinemann is a resident citizen of the State of Georgia.  Plaintiff Steinemann derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below.  Plaintiff Steinemann owns 6.25 percent of the Marshland and 4.167 percent of the West Fowl River Property, described above.  Plaintiff Steinemann's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Steinemann leases the oyster beds for a profit.

16. Plaintiff Kathryn Dexter Fillippeli is a resident citizen of the State of Alabama.  Plaintiff Fillippeli derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below.  Plaintiff Fillippeli owns 5.556 percent of the West Fowl River Property, described above.

17.  Plaintiff Mary H. Waite is a resident citizen of the State of Alabama.  Plaintiff Waite derives substantial income from the natural resources of the Gulf of Mexico from owning

7

real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Mary H. Waite owns 3.704 percent of the West Fowl River Property, described above.

18. Plaintiff Robert S. Waite III is a resident citizen of the State of Alabama. Plaintiff Waite derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Robert S. Waite owns 3.704 percent of the West Fowl River Property, described above.

19. Plaintiff Mary Ellen Dumas is a resident citizen of the State of Alabama. Plaintiff Dumas derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Mary Ellen Dumas owns 1.852 percent of the West Fowl River Property, described above.

20. Plaintiff William Barry Dumas is a resident citizen of the State of Alabama. Plaintiff Dumas derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff William Barry Dumas owns 1.852 percent of the West Fowl River Property, described above.

21. Plaintiff Jessica Dexter Taylor is a resident citizen of the State of Alabama. Plaintiff Taylor derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the

events described herein, has suffered damages that are more fully described below. Plaintiff Taylor owns 5.556 percent of the West Fowl River Property, described above.

22. Plaintiff Roderick B. Dexter is a resident citizen of the State of Nevada. Plaintiff Dexter derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Roderick B. Dexter owns 3.704 percent of the West Fowl River Property, described above.

23. Plaintiff Helen Dexter McDavid is a resident citizen of the State of Alabama. Plaintiff McDavid derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff McDavid owns 3.704 percent of the West Fowl River Property, described above.

24. Plaintiff William H. Dexter is a resident citizen of the State of Alabama. Plaintiff Dexter derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff William H. Dexter owns 3.704 percent of the West Fowl River Property, described above.

25. Plaintiffs bring these claims pursuant to Federal General Maritime Law including/and/or the Oil Pollution Act of 1990 ("OPA"), 33 USC §2701, *et seq.*

26. Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction.

27. Jurisdiction also exists before this Court pursuant to the Oil Pollution Act, 33 U.S.C. § 2717(b) (the "OPA").

28. Defendant, BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois.  BP Exploration was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. §2714.  This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

29. Defendant, BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

30. BP Exploration and BP America are generally referred to herein collectively as the "BP Defendants" or "BP."

31. Defendant, Halliburton Energy Services, Inc. is a Delaware corporation with its principal place of business in Houston, Texas.  Halliburton is registered to do and does business in the State of Louisiana.  Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the Deepwater Horizon, as well as onshore engineering support for those operations.

32. Halliburton division Sperry Drilling Services (formerly Sperry Sun Drilling Services)

was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools.   Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations.   "Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

33. Venue is proper in this jurisdiction because the defendants' actions, inactions, and failures directly and proximately caused the damage and harm to the Plaintiffs in this jurisdiction.

**Factual Background**

34. Plaintiffs adopt and incorporate as if fully restated herein the factual allegations, causes of action, and prayer for relief, raised in the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (the "MDL Complaint").

35. Plaintiffs further adopt and incorporate as if restated herein all factual allegations and information contained in their Direct Filing Short Forms/Short Form Joinders, Rec. Doc. No. 79695 (Sarah H. Moore), 79697 (Tommy Henderson), 79694 (S.J. Henderson), 79696 (Tim Henderson), 79277 (Hettie Harrington), 79640 (Mobile Management, LLC), 79700 (William Henderson), 79281 (Bruce Henderson), 79636 (Lorraine Lee), 79635 (Laura Woddail), 79637 (Marilyn Roberts), 79641 (Newell Robinson), 79634 (Kathryn Steinemann), 79288 (Kathryn Dexter Fillippeli), 79265 (Mary H. Waite), 79270 (Robert S. Waite III), 79638 (Mary Ellen Dumas), 79698 (William Berry Dumas), 79294 (Jessica Dexter Taylor), 79693 (Roderick B. Dexter), 79273 (Helen Dexter McDavid), and  79699 (William Dexter), filed by Plaintiffs into No. 10-8888.

36. Plaintiffs further adopt and incorporate as if fully restated herein Plaintiffs' Supplemental

and Amended Responses to Phase One Written Discovery Requests, dated October 8, .2011; Amended Response to Phase One Request for Admission No. 76, dated December 27, 2011; and Supplemental and Amended Responses to Phase One Interrogatories Nos. 6, 7, and 17, dated December 14, 2012.

37. Over 84,000 square miles of the Gulf of Mexico's waters were closed to fishing as a result of the oil spill, representing 35 percent of the Gulf's federal waters available to Alabama commercial and recreational fishermen. In addition, for a period of time, the Alabama Department of Conservation & Natural Resources only allowed recreational catch-and-release fishing in state waters. Federal and state governments had to establish systems to monitor seafood safety to keep oiled products out of the marketplace. In late November 2010, approximately 4,200 square miles of the Gulf were re-closed to shrimping after tar balls were found in shrimpers' nets.

38. The Alabama Department of Public Health issued a swimming advisory in Gulf waters off Gulf Shores, Orange Beach, and Fort Morgan, and in bay waters immediately adjacent to Fort Morgan, in Bayou St. John, Terry Cove, Cotton Bayou and Old River. This included all Gulf waters out to the three-mile state/federal line. A swimming advisory means that individuals are discouraged from swimming in affected waters due to the presence of oil-related chemicals.

39. On June 1, 2010, reddish brown globs of oil washed ashore on Dauphin Island, Gulf Shores and Orange Beach, Alabama, bringing with them the noxious smell of oil. The oil globs were also accompanied by a dense, dark foam with an oily consistency that gathered in pools. As a result, the Alabama Department of Public Health closed all oyster beds in Alabama due to the presence of oil in Alabama's water.

40. The Gulf region is the home of the world's last, largely-intact network of oyster reefs. The region leads the U.S. commercial oyster production, accounting for nearly 70 percent of total national catch.

41. Damage to the Gulf's oyster beds has and will be felt throughout the Gulf's marine environment, as oyster beds provide shelter and food for several underwater species that are the vital foundation of a commercial and recreational fishing industry, including shrimp, crabs and other shellfish.  In addition, oyster beds protect the land by forming undersea breakwaters that buffer shorelines and wetlands from erosion due to storm surge.

42. The timing of this disaster makes it even more damaging, as it coincides with the peak spawning season for oysters.

43. The oil spill has caused, and will continue to cause, severe damage to the delicate wetlands and inter-tidal zones that line the coast of Alabama, destroying oyster beds and other habitats where fish, shellfish, and crustacean breed, spawn, and mature.

44. The unprecedented amounts of chemical dispersants used by Defendants to accelerate the dispersal of the oil may have significant side-effects as well.  Corexit EC9500A and Corexit EC9527A were the principal dispersants used.  These dispersants are composed of several chemicals, including 2-Butoxy Ethanol, which was identified as a causal agent in the health problems experienced by cleanup workers after the 1989 *Exxon Valdez* oil spill.  In addition, the Hazardous Substance Fact Sheet for 2-Butoxy Ethanol warns that it may be a carcinogen in humans and that "[t]here may be no safe level of exposure to a carcinogen, so all contact should be reduced to the lowest possible level."  Further, the OSHA-required Material Safety Data Sheets ("MSDS") for both versions of Corexit used

indicate they may have a potential to bio-accumulate in the tissues of fish or other organisms.  Additionally, the MSDSs state that if the product becomes a waste, "it could meet the criteria of a hazardous waste as defined by the Resource Conservation and Recovery Act (RCRA) 40 CFR 261."

45. Corexit EC9500A and Corexit EC9527A are more toxic and less effective than at least twelve other EPA-approved dispersants, and are banned from use on oil spills in the United Kingdom.  Defendants stated that they chose to use Corexit because it was available the week of the rig explosion.

46. More than 1.84 million gallons of chemical dispersants were used by July 30, 2010, and additional dispersant use was reported by fishermen in mid-August.  The dispersants were employed both on the surface and at the wellhead 5,000 feet below the surface.  Approximately 771,000 gallons of chemical dispersants were applied at the wellhead, a procedure that had never previously been tried.  Mixing the dispersants with the oil at the wellhead added toxicity to the spill and kept much of the oil below the surface, exposing organisms to more widespread concentrations of oil.  In addition, scientists believe the use of the underwater injection of Corexit into the leak is responsible for the oil plumes discovered below the surface.

47. Oil, dispersants, and other pollutants released by Defendants remain in Gulf waters, the Gulf floor, Alabama waters, and land owned and/or within the jurisdiction of the State of Alabama, and continue to cause damage.  Oil, dispersants, and other pollutants have settled into the sediment on the Gulf floor and the bed underlying waters of Alabama, where it has killed and will continue to kill oysters and other marine life and will continually discharge into, and cause damage to the natural resources of the Gulf of

Mexico and its shorelines, including Alabama's sensitive wetlands, marshlands and estuarine areas.   As a result of the events described herein, Plaintiffs have suffered ascertainable losses and damages, including loss of revenues and diminution of property values, as the oil pollutes the oyster beds along the Alabama shoreline.

48. There are many other potential effects from the oil spill that have not yet become known, and Plaintiffs reserve the right to amend this Complaint once additional information becomes available.

49. Plaintiffs, out of an abundance of caution, made and/or re-made "presentment" of a Claim in accord with 33 USC §§ 2702(b) and 2713, by submitting a description of the claim with a "sum certain" and supporting documentation to BP as the "responsible party" under OPA on or before January 21, 2013.

50. Because Plaintiffs previously asserted a claim against the responsible party through their prior Short Form Joinders and/or by submissions to the Gulf Coast Claims Facility, and/or by submitting a description of the claim with a "sum certain" and supporting documentation to BP as the "responsible party" under OPA via registered mail to BP on or about November 2, 2012, the presentment on or before January 21, 2013 was made (and/or re-made) out of an abundance of caution.

51. BP either denied the claim or otherwise failed to satisfy the claim within 90 days of presentment.

### Claims for Relief

52. Plaintiffs adopt and incorporate as if restated herein, all claims for relief raised in the MDL Complaints and their Short Form Joinders, against the Defendants as responsible parties under the Oil Pollution Act, 33 USC §2701, et seq., which holds responsible

parties liable to plaintiffs for removal costs and damages arising out of the following:

    a.  Loss of Natural Resources;

    b.  Loss or Damage to Real or Personal Property;

    c.  Subsistence Use;

    d.  Loss of Revenues;

    e.  Loss of Profits and/or Earning Capacity; and

    f.  Loss of Public Services.

53. Plaintiffs adopt and incorporate as if restated herein, all claims for relief raised in the MDL Complaints and their Short Form Joinders, against all defendants identifying General Maritime Law causes of action and claims for relief relating to the following:

    a.  Negligence; and

    b.  Gross Negligence and Willful Misconduct.

54. Plaintiffs adopt and incorporate as if restated herein, all claims for relief raised in the MDL Complaints and their Short Form Joinders, against all defendants for Punitive Damages arising out of willful and wanton misconduct and/or gross negligence as alleged and described in the MDL Complaints.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, and *in solido,* as follows:

a.  Economic and compensatory damages in amounts to be determined at trial;

b.  Punitive Damages;

c.  Pre-judgment and post-judgment interest at the maximum rate allowable by law;

d.  Reasonable claims preparation expenses;

e.  Attorneys' fees;

f.  Costs of litigation; and

Such other and further relief available under all applicable state and federal laws and

any relief the Court deems just and appropriate.

RESPECTFULLY SUBMITTED this the 22nd day of April, 2013.

/s/ *Matthew W. McDade*
Michael D. Freeman (ASB-6065-F44M)
M. Todd Lowther (ASB-3992-A60L)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

and

Jonathan P. Dyal (MS Bar No. 99146)
Matthew W. McDade (LSB – 32899)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900
Facsimile: (228) 864-8221


and

Of Counsel:
**Robert T. Cunningham**
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama  36660
Phone:  251-471-6191
Fax:  251-479-1031
E-mail: rtc@cunninghambounds.com

**Steven L. Nicholas**
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama  36660
Phone:  251-471-6191
Fax:  251-479-1031
E-mail: sln@cunninghambounds.com

**Stephen C. Olen**
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama  36660
Phone:  251-471-6191
Fax:  251-479-1031
E-mail: sco@cunninghambounds.com

**Allison E. White,** La. Bar No. 32957
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama  36660
Phone:  251-471-6191
Fax:  251-479-1031
E-mail: aew@cunninghambounds.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Second Amended Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 22nd day of April, 2013.

/s/ *Matthew W. McDade*
Of Counsel