## IN RE: OIL SPILL by "Deepwater Horizon"

## AMENDMENT TO DIRECT FILING SHORT FORM (or PLAINTIFF PROFILE F...



LEXISNEXIS® FILE & SERVE
39867239
E-SERVICE
Sep 16 2011
4:09PM

Authorized by Order of the Court, Civil Action No. 10-md-2179 Rec. Doc. 4043
(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)

**Please include any information that adds to or is different from your original Short Form or Plaintiff Profile Form.**
*(It will be presumed, for all spaces left blank on this form, that the information is the same.)*

| MDL 2179 and Civil Action No. 10-2771 | SECTION: J | JUDGE CARL BARBIER |
|---|---|---|

**CLAIM IN LIMITATION / JOINDER IN MASTER ANSWER / INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE AMENDMENT FORM**

By submitting this document, I, or the business I am authorized to act for, hereby amend the claims or information provided in the Short Form (or Plaintiff Profile Form) identified below.

---

Short Form filed?     YES ☑   NO ☐

If yes, list your Original Short Form Document Number (this is the document filing number to you upon filing your Short Form with the Court).

Short Form Document No.: __79634_____ (filed in No. 10-8888).

---

Plaintiff Profile Form served?     YES ☐   NO ☐

If yes, list your "LexisNexis® File & Serve" Number (this is the 8-digit number stamped on the Plaintiff Profile Form when it is filed on LexisNexis® File & Serve).

LexisNexis® File & Serve No.: _____

If yes, please provide the following information about your original case:

Original Case Caption: _____

Original Civil Action No.: _____

Originating Court: _____

EDLA Civil Action No.: _____

---

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Steinemann | Kathryn | Holland | |

| Phone Number (404) 231-1131 | | E-Mail Address Kaysteinemann@gmail.com |
|---|---|---|
| Address 3454 Paces Place NW | | City / State / Zip Atlanta, GA  30327 |

| INDIVIDUAL CLAIM ☑ | | BUSINESS CLAIM ☐ |
|---|---|---|
| Employer Name | | Business Name |
| Job Title / Description Real Property Owner | | Type of Business |
| Address See attached Property Description | | Address |
| City / State / Zip | | City / State / Zip |

---

¹  **If amending a Short Form,** this form should be filed with the U.S. District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130, in Civil Action No. 10-8888.   **If amending a Plaintiff Profile Form,** this form should be served on all counsel using LexisNexis® File & Serve, as provided in Pre-Trial Order No. 12 [Doc. 600].

| Last 4 digits of Social Security Number 2822 | Last 4 digits of Tax ID Number |
|---|---|
| Attorney Name (if applicable) Allison E. White | Firm Name (if applicable) Cunningham Bounds, LLC |
| Address 1601 Dauphin Street | City / State / Zip Mobile, AL  36604 |
| Phone Number 251-471-6191 | E-Mail Address aew@cunninghambounds.com |

Claim filed with BP?     YES ☐  NO ☑

If yes, list BP Claim No.: _____

Claim Filed with GCCF?     YES ☐  NO ☑

If yes, list Claimant Identification No.: _____

**Claim Type (Please check all that apply):**

☑ Damage or destruction to real or personal property
☑ Earnings/Profit Loss
☐ Personal Injury/Death
☐ Fear of Future Injury and/or Medical Monitoring
☑ Loss of Subsistence use of Natural Resources
☑ Removal and/or clean-up costs
☐ VoO Charter Dispute
☐ Other _____

**Brief Description:**

1. For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury. For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred. For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

See attached

_____

_____

_____

_____

2. For personal injury claims, describe the injury, as well as how and when it was sustained.  Also, Bundle A plaintiffs should identify all health care providers from January 1, 2008 to present, and complete authorizations for release of medical records for each.  Bundle B3 plaintiffs should identify all health care providers from April 20, 2010 to present, and complete authorizations for release of medical records for each. Bundle A plaintiffs should also identify all employers from January 1, 2008 to present and complete authorizations for release of employee/personnel records for each employer.  Bundle B3 plaintiffs should identify all employers from January 1, 2010, and provide authorizations, if your personal injury took place after April 20, 2010 and you are claiming damages for lost work-time as a result of those personal injuries.[2] [Additional authorizations may be required.]

_____

_____

_____

_____

_____

3. For post-explosion claims related to clean-up or removal, include your role or your business's role in the clean-up activities, the name of your employer (if applicable), and where you were working.

_____

_____

_____

_____

---

[2] All authorization forms should be sent directly to Liskow & Lewis, One Shell Square, 701 Poydras Street, Suite 5000, New Orleans, LA 70139-S099, or served on all counsel using LexisNexis® File & Serve, as provided in Pre-Trial Order No. 12 [Doc. 600]. Any and all documents obtained in connection with these authorizations shall be treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 13), and subject to full copies of same being made available to the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

Please check the box(es) below that you think apply to you and your claims:

**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

☐ 1.  Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.

☐ 2.  Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.

☐ 3.  Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.

☐ 4.  Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.

☐ 5.  Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.

☐ 6.  Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.

☑ 7  Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.

☐ 8.  Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.

☐ 9.  Bank, financial institution, or retail business that suffered losses as a result of the spill.

☐ 10.  Person who utilizes natural resources for subsistence.

☐ 11.  Other: _____

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Clean-Up (Bundle B3)**

☐ 1.  Boat captain or crew involved in the Vessels of Opportunity program.

☐ 2.  Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.

☐ 3.  Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.

☐ 4.  Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.

☐ 5.  Resident who lives or works in close proximity to coastal waters.

☐ 6.  Other: _____

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 13), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

_Allison E. White_
Claimant or Attorney Signature

Allison E. White
Print Name

4/22/13
Date

## PROPERTY DESCRIPTION

Owner and/or lessee of real property on Gulf Coast bays and estuaries, including oyster beds and associated marshland to wit:

In Mobile County, Alabama percentage of 1,660 acres of marshland, which includes Township 8 South, Range 2 West, Sections 20, 21, 28 and 29; parts of Sections 9, 10 and 16; as well as Cat Island (Section 31, collectively referred to as "the Marshland."

In Mobile County, Alabama a percentage of 546 acres at the mouth of the West Fowl River, which includes Township 8 South, Range 2 West, parts of Sections 3, 4, 9 and 30, collectively referred to as "West Fowl River Property.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA
### (Transferred from Southern District of Alabama Civil Action No. 10-293)

| | | |
|---|---|---|
| In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 | § § § § § | MDL No. 2179 |
| | § | Section: J |
| This Document relates to: | § § | |
| Civil Action No. 2:10-cv-03253 - *Moore, et al. v. BP PLC, et al.* | § § § | Judge Barbier Magistrate Judge Shushan |

## SECOND AMENDED COMPLAINT

**NOW COME PLAINTIFFS,** Sarah H. Moore, Tommy Henderson, S.J. Henderson, Tim Henderson, Hettie Harrington, Mobile Management, LLC, William Henderson, Bruce Henderson, Lorraine Lee, Laura Woddail, Marilyn Roberts, Newell Robinson, Kathryn Steinemann, Kathryn Dexter Fillippeli, Mary H. Waite, Robert S. Waite III, Mary Ellen Dumas, William Berry Dumas, Jessica Dexter Taylor, Roderick B. Dexter, Helen Dexter McDavid, and William Dexter, through undersigned counsel, who allege, aver and represent as follows:

### Nature of the Action

1.  On or about April 20, 2010, the *Deepwater Horizon* drilling platform exploded and sank, causing a spill of over 200 million gallons of crude oil from the Macondo Well, MC-252, and resulting in the worst maritime environmental disaster in United States history.

2.  Plaintiffs have suffered economic injury, damage and/or losses as a result of the oil spill.

### THE PARTIES, JURISDICTION AND VENUE

3.  Plaintiff Sarah H. Moore is a resident citizen of the State of Alabama. Plaintiff Moore derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below.

1

Plaintiff Moore owns property in Mobile County, Alabama including a percentage of 1,660 acres of marshland, which includes Township 8 South, Range 2 West, Sections 20, 21, 28 and 29; parts of Sections 9, 10 and 16; as well as Cat Island (Section 31), collectively referred to as "the Marshland." Plaintiff Moore also owns a percentage of 546 acres at the mouth of the West Fowl River, which includes Township 8 South, Range 2 West, parts of Sections 3, 4, 9 and 30, collectively referred to as "West Fowl River Property." Plaintiff Moore owns 6.25 percent of the Marshland and 5.556 percent of the West Fowl River Property. Plaintiff Moore's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff Moore leases the oyster beds for a profit.

4. Plaintiff Tommy Henderson is a resident citizen of the State of Alabama. Plaintiff Henderson derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Henderson owns 6.25 percent of the Marshland and 5.556 percent of the West Fowl River Property, described above. Plaintiff Henderson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff Tommy Henderson leases the oyster beds for a profit.

5. Plaintiff S.J. Henderson is a resident citizen of the State of Alabama. Plaintiff Henderson derives substantial income from the natural resources of the Gulf of Mexico from owning

and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Henderson owns 6.25 percent of the Marshland and 5.556 percent of the West Fowl River Property, described above. Plaintiff Henderson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff S.J. Henderson leases the oyster beds for a profit.

6. Plaintiff Tim Henderson is a resident citizen of the State of Alabama. Plaintiff Henderson derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Henderson owns 6.25 percent of the Marshland and 5.556 percent of the West Fowl River Property, described above. Plaintiff Henderson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff Tim Henderson leases the oyster beds for a profit.

7. Plaintiff Hettie Harrington is a resident citizen of the State of Alabama. Plaintiff Harrington derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Harrington owns 25 percent of the Marshland and 11.111 percent of the

West Fowl River Property, described above. Plaintiff Harrington's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff Harrington leases the oyster beds for a profit.

8. Plaintiff Mobile Management, LLC is a family owned LLC in the State of Alabama whose members are residents of Alabama. Plaintiff Mobile Management, LLC derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Mobile Management, LLC owns 12.50 percent of the Marshland and 8.332 percent of the West Fowl River Property, described above. Plaintiff Mobile Management, LLC's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff Mobile Management, LLC leases the oyster beds for a profit.

9. Plaintiff William Henderson is a resident citizen of the State of Alabama. Plaintiff Henderson derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Henderson owns 3.125 percent of the Marshland and 2.083 percent of the West Fowl River Property, described above. Plaintiff Henderson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code

4

of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff William Henderson leases the oyster beds for a profit.

10. Plaintiff Bruce Henderson is a resident citizen of the State of Alabama. Plaintiff Henderson derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Henderson owns 3.125 percent of the Marshland and 2.083 percent of the West Fowl River Property, described above. Plaintiff Henderson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff Bruce Henderson leases the oyster beds for a profit.

11. Plaintiff Lorraine Lee is a resident citizen of the State of Alabama. Plaintiff Lee derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Lee owns 3.125 percent of the Marshland and 2.083 percent of the West Fowl River Property, described above. Plaintiff Lee's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline. Plaintiff Lee leases the oyster beds for a profit.

12. Plaintiff Laura Woddail is a resident citizen of the State of Alabama. Plaintiff Woddail

derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Woddail owns 3.125 percent of the Marshland and 2.083 percent of the West Fowl River Property, described above.  Plaintiff Woddail's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Woddail leases the oyster beds for a profit.

13. Plaintiff Marilyn "Lynn" Roberts is a resident citizen of the State of Alabama.  Plaintiff Roberts derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below.  Plaintiff Roberts owns 12.5 percent of the Marshland and 8.333 percent of the West Fowl River Property, described above.  Plaintiff Roberts' Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Roberts leases the oyster beds for a profit.

14. Plaintiff Dr. Newell Robinson is a resident citizen of the State of New York.  Plaintiff Robinson derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described

below.  Plaintiff Robinson owns 6.25 percent of the Marshland and 4.167 percent of the West Fowl River Property, described above.  Plaintiff Robinson's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Robinson leases the oyster beds for a profit.

15. Plaintiff Kathryn Steinemann is a resident citizen of the State of Georgia.  Plaintiff Steinemann derives substantial income from the natural resources of the Gulf of Mexico from owning and leasing oyster beds in the Gulf waters along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below.  Plaintiff Steinemann owns 6.25 percent of the Marshland and 4.167 percent of the West Fowl River Property, described above.  Plaintiff Steinemann's Marshland property includes oyster beds, some of which are owned by Plaintiff pursuant to the Code of Alabama, § 9-12-22, which provides that shore owners have riparian rights for oyster cultures that extend out to 600 yards from the shoreline.  Plaintiff Steinemann leases the oyster beds for a profit.

16. Plaintiff Kathryn Dexter Fillippeli is a resident citizen of the State of Alabama.  Plaintiff Fillippeli derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Fillippeli owns 5.556 percent of the West Fowl River Property, described above.

17.  Plaintiff Mary H. Waite is a resident citizen of the State of Alabama.  Plaintiff Waite derives substantial income from the natural resources of the Gulf of Mexico from owning

real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Mary H. Waite owns 3.704 percent of the West Fowl River Property, described above.

18. Plaintiff Robert S. Waite III is a resident citizen of the State of Alabama. Plaintiff Waite derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Robert S. Waite owns 3.704 percent of the West Fowl River Property, described above.

19. Plaintiff Mary Ellen Dumas is a resident citizen of the State of Alabama. Plaintiff Dumas derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Mary Ellen Dumas owns 1.852 percent of the West Fowl River Property, described above.

20. Plaintiff William Barry Dumas is a resident citizen of the State of Alabama. Plaintiff Dumas derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff William Barry Dumas owns 1.852 percent of the West Fowl River Property, described above.

21. Plaintiff Jessica Dexter Taylor is a resident citizen of the State of Alabama. Plaintiff Taylor derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the

8

events described herein, has suffered damages that are more fully described below. Plaintiff Taylor owns 5.556 percent of the West Fowl River Property, described above.

22. Plaintiff Roderick B. Dexter is a resident citizen of the State of Nevada. Plaintiff Dexter derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff Roderick B. Dexter owns 3.704 percent of the West Fowl River Property, described above.

23. Plaintiff Helen Dexter McDavid is a resident citizen of the State of Alabama. Plaintiff McDavid derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff McDavid owns 3.704 percent of the West Fowl River Property, described above.

24. Plaintiff William H. Dexter is a resident citizen of the State of Alabama. Plaintiff Dexter derives substantial income from the natural resources of the Gulf of Mexico from owning real property on the Gulf Coast along the Alabama coast and, as a result of the events described herein, has suffered damages that are more fully described below. Plaintiff William H. Dexter owns 3.704 percent of the West Fowl River Property, described above.

25. Plaintiffs bring these claims pursuant to Federal General Maritime Law including/and/or the Oil Pollution Act of 1990 ("OPA"), 33 USC §2701, *et seq.*

26. Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction.

27. Jurisdiction also exists before this Court pursuant to the Oil Pollution Act, 33 U.S.C. § 2717(b) (the "OPA").

28. Defendant, BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois. BP Exploration was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. §2714. This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

29. Defendant, BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

30. BP Exploration and BP America are generally referred to herein collectively as the "BP Defendants" or "BP."

31. Defendant, Halliburton Energy Services, Inc. is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the Deepwater Horizon, as well as onshore engineering support for those operations.

32. Halliburton division Sperry Drilling Services (formerly Sperry Sun Drilling Services)

was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations. "Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

33. Venue is proper in this jurisdiction because the defendants' actions, inactions, and failures directly and proximately caused the damage and harm to the Plaintiffs in this jurisdiction.

## **Factual Background**

34. Plaintiffs adopt and incorporate as if fully restated herein the factual allegations, causes of action, and prayer for relief, raised in the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (the "MDL Complaint").

35. Plaintiffs further adopt and incorporate as if restated herein all factual allegations and information contained in their Direct Filing Short Forms/Short Form Joinders, Rec. Doc. No. 79695 (Sarah H. Moore), 79697 (Tommy Henderson), 79694 (S.J. Henderson), 79696 (Tim Henderson), 79277 (Hettie Harrington), 79640 (Mobile Management, LLC), 79700 (William Henderson), 79281 (Bruce Henderson), 79636 (Lorraine Lee), 79635 (Laura Woddail), 79637 (Marilyn Roberts), 79641 (Newell Robinson), 79634 (Kathryn Steinemann), 79288 (Kathryn Dexter Fillippeli), 79265 (Mary H. Waite), 79270 (Robert S. Waite III), 79638 (Mary Ellen Dumas), 79698 (William Berry Dumas), 79294 (Jessica Dexter Taylor), 79693 (Roderick B. Dexter), 79273 (Helen Dexter McDavid), and 79699 (William Dexter), filed by Plaintiffs into No. 10-8888.

36. Plaintiffs further adopt and incorporate as if fully restated herein Plaintiffs' Supplemental

and Amended Responses to Phase One Written Discovery Requests, dated October 8, 2011; Amended Response to Phase One Request for Admission No. 76, dated December 27, 2011; and Supplemental and Amended Responses to Phase One Interrogatories Nos. 6, 7, and 17, dated December 14, 2012.

37. Over 84,000 square miles of the Gulf of Mexico's waters were closed to fishing as a result of the oil spill, representing 35 percent of the Gulf's federal waters available to Alabama commercial and recreational fishermen. In addition, for a period of time, the Alabama Department of Conservation & Natural Resources only allowed recreational catch-and-release fishing in state waters. Federal and state governments had to establish systems to monitor seafood safety to keep oiled products out of the marketplace. In late November 2010, approximately 4,200 square miles of the Gulf were re-closed to shrimping after tar balls were found in shrimpers' nets.

38. The Alabama Department of Public Health issued a swimming advisory in Gulf waters off Gulf Shores, Orange Beach, and Fort Morgan, and in bay waters immediately adjacent to Fort Morgan, in Bayou St. John, Terry Cove, Cotton Bayou and Old River. This included all Gulf waters out to the three-mile state/federal line. A swimming advisory means that individuals are discouraged from swimming in affected waters due to the presence of oil-related chemicals.

39. On June 1, 2010, reddish brown globs of oil washed ashore on Dauphin Island, Gulf Shores and Orange Beach, Alabama, bringing with them the noxious smell of oil. The oil globs were also accompanied by a dense, dark foam with an oily consistency that gathered in pools. As a result, the Alabama Department of Public Health closed all oyster beds in Alabama due to the presence of oil in Alabama's water.

40. The Gulf region is the home of the world's last, largely-intact network of oyster reefs. The region leads the U.S. commercial oyster production, accounting for nearly 70 percent of total national catch.

41. Damage to the Gulf's oyster beds has and will be felt throughout the Gulf's marine environment, as oyster beds provide shelter and food for several underwater species that are the vital foundation of a commercial and recreational fishing industry, including shrimp, crabs and other shellfish. In addition, oyster beds protect the land by forming undersea breakwaters that buffer shorelines and wetlands from erosion due to storm surge.

42. The timing of this disaster makes it even more damaging, as it coincides with the peak spawning season for oysters.

43. The oil spill has caused, and will continue to cause, severe damage to the delicate wetlands and inter-tidal zones that line the coast of Alabama, destroying oyster beds and other habitats where fish, shellfish, and crustacean breed, spawn, and mature.

44. The unprecedented amounts of chemical dispersants used by Defendants to accelerate the dispersal of the oil may have significant side-effects as well. Corexit EC9500A and Corexit EC9527A were the principal dispersants used. These dispersants are composed of several chemicals, including 2-Butoxy Ethanol, which was identified as a causal agent in the health problems experienced by cleanup workers after the 1989 *Exxon Valdez* oil spill. In addition, the Hazardous Substance Fact Sheet for 2-Butoxy Ethanol warns that it may be a carcinogen in humans and that "[t]here may be no safe level of exposure to a carcinogen, so all contact should be reduced to the lowest possible level." Further, the OSHA-required Material Safety Data Sheets ("MSDS") for both versions of Corexit used

indicate they may have a potential to bio-accumulate in the tissues of fish or other organisms. Additionally, the MSDSs state that if the product becomes a waste, "it could meet the criteria of a hazardous waste as defined by the Resource Conservation and Recovery Act (RCRA) 40 CFR 261."

45. Corexit EC9500A and Corexit EC9527A are more toxic and less effective than at least twelve other EPA-approved dispersants, and are banned from use on oil spills in the United Kingdom. Defendants stated that they chose to use Corexit because it was available the week of the rig explosion.

46. More than 1.84 million gallons of chemical dispersants were used by July 30, 2010, and additional dispersant use was reported by fishermen in mid-August. The dispersants were employed both on the surface and at the wellhead 5,000 feet below the surface. Approximately 771,000 gallons of chemical dispersants were applied at the wellhead, a procedure that had never previously been tried. Mixing the dispersants with the oil at the wellhead added toxicity to the spill and kept much of the oil below the surface, exposing organisms to more widespread concentrations of oil. In addition, scientists believe the use of the underwater injection of Corexit into the leak is responsible for the oil plumes discovered below the surface.

47. Oil, dispersants, and other pollutants released by Defendants remain in Gulf waters, the Gulf floor, Alabama waters, and land owned and/or within the jurisdiction of the State of Alabama, and continue to cause damage. Oil, dispersants, and other pollutants have settled into the sediment on the Gulf floor and the bed underlying waters of Alabama, where it has killed and will continue to kill oysters and other marine life and will continually discharge into, and cause damage to the natural resources of the Gulf of

Mexico and its shorelines, including Alabama's sensitive wetlands, marshlands and estuarine areas. As a result of the events described herein, Plaintiffs have suffered ascertainable losses and damages, including loss of revenues and diminution of property values, as the oil pollutes the oyster beds along the Alabama shoreline.

48. There are many other potential effects from the oil spill that have not yet become known, and Plaintiffs reserve the right to amend this Complaint once additional information becomes available.

49. Plaintiffs, out of an abundance of caution, made and/or re-made "presentment" of a Claim in accord with 33 USC §§ 2702(b) and 2713, by submitting a description of the claim with a "sum certain" and supporting documentation to BP as the "responsible party" under OPA on or before January 21, 2013.

50. Because Plaintiffs previously asserted a claim against the responsible party through their prior Short Form Joinders and/or by submissions to the Gulf Coast Claims Facility, and/or by submitting a description of the claim with a "sum certain" and supporting documentation to BP as the "responsible party" under OPA via registered mail to BP on or about November 2, 2012, the presentment on or before January 21, 2013 was made (and/or re-made) out of an abundance of caution.

51. BP either denied the claim or otherwise failed to satisfy the claim within 90 days of presentment.

**Claims for Relief**

52. Plaintiffs adopt and incorporate as if restated herein, all claims for relief raised in the MDL Complaints and their Short Form Joinders, against the Defendants as responsible parties under the Oil Pollution Act, 33 USC §2701, et seq., which holds responsible

parties liable to plaintiffs for removal costs and damages arising out of the following:

    a.  Loss of Natural Resources;

    b.  Loss or Damage to Real or Personal Property;

    c.  Subsistence Use;

    d.  Loss of Revenues;

    e.  Loss of Profits and/or Earning Capacity; and

    f.  Loss of Public Services.

53. Plaintiffs adopt and incorporate as if restated herein, all claims for relief raised in the MDL Complaints and their Short Form Joinders, against all defendants identifying General Maritime Law causes of action and claims for relief relating to the following:

    a.  Negligence; and

    b.  Gross Negligence and Willful Misconduct.

54. Plaintiffs adopt and incorporate as if restated herein, all claims for relief raised in the MDL Complaints and their Short Form Joinders, against all defendants for Punitive Damages arising out of willful and wanton misconduct and/or gross negligence as alleged and described in the MDL Complaints.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, and *in solido,* as follows:

a.  Economic and compensatory damages in amounts to be determined at trial;

b.  Punitive Damages;

c.  Pre-judgment and post-judgment interest at the maximum rate allowable by law;

d.  Reasonable claims preparation expenses;

e.  Attorneys' fees;

f.  Costs of litigation; and

Such other and further relief available under all applicable state and federal laws and

any relief the Court deems just and appropriate.

RESPECTFULLY SUBMITTED this the 22nd day of April, 2013.

/s/ *Matthew W. McDade*
Michael D. Freeman (ASB-6065-F44M)
M. Todd Lowther (ASB-3992-A60L)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

and

Jonathan P. Dyal (MS Bar No. 99146)
Matthew W. McDade (LSB – 32899)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900
Facsimile: (228) 864-8221


and

Of Counsel:
**Robert T. Cunningham**
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama  36660
Phone:  251-471-6191
Fax:  251-479-1031
E-mail: rtc@cunninghambounds.com

17

**Steven L. Nicholas**
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama 36660
Phone: 251-471-6191
Fax: 251-479-1031
E-mail: sln@cunninghambounds.com

**Stephen C. Olen**
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama 36660
Phone: 251-471-6191
Fax: 251-479-1031
E-mail: sco@cunninghambounds.com

**Allison E. White,** La. Bar No. 32957
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama 36660
Phone: 251-471-6191
Fax: 251-479-1031
E-mail: aew@cunninghambounds.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Second Amended Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 22nd day of April, 2013.

/s/ *Matthew W. McDade*
Of Counsel