# ATTACHMENT "A"

### The Economic Impact of the Oil Spill and Injuries to Plaintiff

1. The Oil Spill and the Spill response have also caused damage to real property situated along the Gulf Coast resulting in physical damage and diminution in property values.

2. The Oil Spill impacted and continues to impact the Gulf Coast's and Alabama's shorelines, beaches, and waters threatening Plaintiff's livelihood, business operations, profits, and earning capacity.

3. Plaintiff was formed in April 2004 for the purpose of developing a commercial, residential, industrial, and recreational development in Mobile County, Alabama, that was to include Alabama Motorsports Park (the "development").

4. The development was to be constructed on a large tract of land in Mobile County, Alabama, and was planned as a mixed-use, master-planned, regional, family recreation, destination designed around an oval race track, road course and karting track.

5. The project's master plan included hospitality, destination retail, office, RV, light industrial and upscale residential elements that surround a number of uniquely themed entertainment elements and motorsports venues.

6. The project was to be located in the fastest growing section of Mobile County and the business plan provided the developer the ability to maximize revenues from the sale, lease and development of appreciating surrounding land.

7. The fair values of the site lots were accelerated due to the TIF agreement in place with the cities of Prichard and Saraland, and Mobile County; the TIF would rebate sales taxes to retailers to reimburse their construction costs. Plaintiff believes that this was the largest TIF in U.S. history.

8. Plaintiff entered into an option agreement to purchase an initial tract of land. The agreement included monthly option payments and interest to the land owners/sellers.

9. In addition, Plaintiff entered into a purchase agreement to acquire additional acreage including an earnest money deposit.

10. Plaintiff received its permit from the U.S. Army Corps of Engineers in December 2008.

11. Plaintiff's investors included individuals and entities involved in the motorsports industry, former politicians and several successful businessmen who made significant contributions and loans to Plaintiff.

12. Plaintiff had several financing and venture capital options they were considering during the startup phase.

13. Some of Plaintiff's financing options included using the real property upon which Plaintiff was to construct its development as collateral for the borrowed funds.

14. However, as a result of the Oil Spill's harmful impact on the real estate market and real estate values along the Gulf Coast, and in particular, on the real property upon which Plaintiff was to construct its development, caused the lenders with whom Plaintiff had its existing commitments to provide financing to withdraw their commitments, and/or drastically lower the amount of financing they were willing to extend to Plaintiff using the subject property as collateral.

15. As a direct and foreseeable result of the Oil Spill, Plaintiff was unable to find alternate or replacement financing options in order to continue with its development.

16. As a direct and foreseeable result of the Oil Spill, Plaintiff was unable to acquire the real property and, therefore, unable to construct the development.

17. As a direct and foreseeable result of the Oil Spill, Plaintiff has suspended its development plans.

18. Because Plaintiff was forced to suspend its development plans it has been denied the benefit of the income, profit, and earning capacity that the development would have generated.

19. Plaintiff continued to operate its business and is still actively working to build the development, but the project has floundered as a proximate, direct and foreseeable result of the Oil Spill.

20. As a direct and foreseeable result of the Oil Spill, Plaintiff has suffered economic losses associated with the failure of its planned real estate development, including: loss of profits and/or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources; loss of funds invested pursuant to the terms of the real property purchase agreement; costs for plans, studies, permits and other out-of-pocket expenses related to development; costs to mitigate Plaintiff's damages; costs to assess Plaintiff's damages, carrying costs; and other losses and damages.

## "PRESENTMENT" UNDER OPA

21. To the extent required by law, and/or by consent and/or stipulation by BP, Plaintiffs have satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b) by the submission of their claims to the BP OPA Claims Program, the Deepwater Horizon Court-Supervised Settlement Program and/or the Gulf Coast Claims Facility.

22. In particular, on January 18, 2013, Plaintiff submitted a completed "BP Claims Program – Claim Form for Individuals and Businesses" and a Notice of Claim packet including a "sum certain" damage amount, a description of the incident and claim, and supporting

documentation to BP as the "responsible party" under OPA via e-mail to the email address provided by the BP Claims Program, and followed by sending a hardcopy of all documents to the responsible party via US Mail.

23. BP did not settle Plaintiff's claim by payment within 90 days of presentment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, and *in solido,* as follows:

1. Economic and compensatory damages in amounts to be determined at trial;
2. Punitive Damages;
3. Pre-judgment and post-judgment interest at the maximum rate allowable by law;
4. Reasonable claims preparation expenses;
5. Attorneys' fees;
6. Costs of litigation; and
7. Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

## RESERVATION OF RIGHTS

### *Right to a Trial by Jury*

Plaintiff demands a jury trial for any and all claims pleaded herein in which a jury trial is available by law.

### *Right to File Amendments*

Plaintiff reserves the right to amend this complaint and/or file additional complaints to supplement Plaintiff's present claims or assert additional claims against the Defendants named herein and/or against any additional parties.