# IN RE: OIL SPILL by "Deepwater Horizon"
# DIRECT FILING SHORT FORM[1]

Authorized by Order of the Court, Civil Action No. 10 md 2179 Rec. Doc. 982
(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)

MDL 2179     SECTION: J     JUDGE CARL BARBIER

**CLAIM IN LIMITATION–JOINDER IN MASTER ANSWER–INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE FORM**

By submitting this document, I am asserting a claim in *Complaint and Petition of Triton Asset Leasing GmbH, et al.*, No. 10-2771; adopt and incorporate the Master Answer [Rec. Doc. 244] to the *Complaint and Petition of Triton Asset Leasing Gmbh, et al.*, in No. 10-2771; and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 879] for private economic losses ("B1 Bundle") filed in MDL No. 2179 (10 md 2179); and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 881] for post-explosion injuries ("B3 Bundle") filed in MDL No. 2179 (10 md 2179).

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Bass | Sharon | | |

| Phone Number | E-Mail Address |
|---|---|
| 228-327-0948 | |

| Address | City / State / Zip |
|---|---|
| 17413 Popcorn Ave. | Vancleave, MS 39565 |

INDIVIDUAL CLAIM [X]     BUSINESS CLAIM [ ]

| Employer Name | Business Name |
|---|---|
| City of Biloxi | |
| **Job Title / Description** | **Type of Business** |
| Human Resources | |
| **Address** | **Address** |
| 140 Lameuse St. | |
| **City / State / Zip** | **City / State / Zip** |
| Biloxi, MS 39530 | |
| **Last 4 digits of your Social Security Number** | **Last 4 digits of your Tax ID Number** |
| 3137 | |

| Attorney Name | Firm Name |
|---|---|
| Mark Watts | Hornsby Watts, PLLC |
| **Address** | **City / State / Zip** |
| 1025 Howard Ave. | Biloxi, MS 39530 |
| **Phone Number** | **E-Mail Address** |
| 228-207-2990 | mvw@hornsbywatts.com |

Claim filed with BP? YES [X] NO [ ]     Claim Filed with GCCF?: YES [ ] NO [X]

If yes, BP Claim No.:     If yes, Claimant Identification No.:

**Claim Type (Please check all that apply):**
- [ ] Damage or destruction to real or personal property
- [X] Earnings/Profit Loss
- [ ] Personal Injury/Death
- [ ] Fear of Future Injury and/or Medical Monitoring
- [ ] Loss of Subsistence use of Natural Resources
- [ ] Removal and/or clean-up costs
- [ ] Other:

---

[1] This form should be filed with the U.S. District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130, in Civil Action No. 10-8888. While this Direct Filing Short Form is to be filed in CA No. 10-8888, by prior order of the Court, (Rec. Doc. 246, C.A. No. 10-2771 and Rec. Doc. 982 in MDL 2179), the filing of this form in C.A. No. 10-8888 shall be deemed to be simultaneously filed in C.A. 10-2771 and MDL 2179. Plaintiff Liaison Counsel, after being notified electronically by the Clerk of Court of the filing of this Short Form, shall promptly serve this form through the Lexis Nexis service system on Defense Liaison.

1

The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.

**Brief Description:**

1. For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury. For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred. For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

- Lost wages and employee benefits
- See attached letter dated January 18, 2013

2. For personal injury claims, describe the injury, how and when it was sustained, and identify all health care providers and employers 2008 to present and complete authorization forms for each.

N/A

3. For post-explosion claims related to clean-up or removal, include your role in the clean-up activities, the name of your employer, and where you were working.

N/A

2

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

Please check the box(es) below that you think apply to you and your claims:
**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

- [ ] 1. Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.
- [ ] 2. Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.
- [ ] 3. Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.
- [ ] 4. Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.
- [ ] 5. Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.
- [ ] 6. Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.
- [ ] 7. Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.
- [ ] 8. Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.
- [ ] 9. Bank, financial institution, or retail business that suffered losses as a result of the spill.
- [ ] 10. Person who utilizes natural resources for subsistence.
- [x] 11. Other: Municipal employee

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Cleanup (Bundle B3)**

- [ ] 1. Boat captain or crew involved in the Vessels of Opportunity program.
- [ ] 2. Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.
- [ ] 3. Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.
- [ ] 4. Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.
- [ ] 5. Resident who lives or works in close proximity to coastal waters.
- [ ] 6. Other: _____

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 11), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

_/s/_
Claimant or Attorney Signature

Mark Watts
Print Name

4-18-13
Date

3

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

January 18, 2013

*Via U.S. Mail, Facsimile @ (866) 542-4785 and*
*E-Mail @ bpclaimsprogram@bp.com*
BP
P.O. Box 330919
Houston, Texas 77233-0919

Re: *PRESENTMENT FOR BP CLAIMS UNDER OIL POLLUTION ACT*

Dear Sir or Madam:

Please consider this letter and its attachments as a formal demand for BP to compensate our clients for past and future economic losses resulting from the Deepwater Horizon Oil Spill, and as presentment on behalf of our clients as required under the Oil Pollution Act (hereinafter "OPA"). The names and identification of our clients is attached hereto. Our clients are comprised of police officers, firefighters and other city employees from the cities of Biloxi, Gulfport, and D'Iberville, Mississippi. We hereby offer to settle each of their claims for the sum certain of $125,000.00 for each person.

At this time our offer to settle does not include a demand for punitive damages and we are willing to settle now for the amount of the sum certain set forth in our settlement demand. However, we reserve the right in the future to demand and recover punitive damages and additional costs as allowed by law in addition to the sum certain demanded herein. This demand is submitted in satisfaction of the presentation requirements set forth in 33 U.S.C. §2713.

A demand for settlement herein is for a sum certain pursuant to the OPA. However, it is believed that the damages set forth herein will continue to accrue on into the future and will be much larger should this case not be resolved and not be settled at this point in time. Claimant reserves the right to seek much larger amounts.

Below, we are presenting a brief general explanation of the claims of our clients and their factual bases. This summary is not a waiver of our clients' rights, positions, or arguments, and this summary is obviously subject to augmentation, supplementation, and correction as this matter develops.

## EXPLANATION OF CLAIM

The Gulf of Mexico Oil Spill had a dramatic impact on the entire Gulf Coast economy. This included a dramatic impact on areas that had oil upon their coast, as well as areas where oil was not actually located. This is because the nature and breath and width of the oil spill were

expected to affect the entire American Gulf Coast area. So, even for areas that did not actually physically have oil, the economies were affected, particularly in the year 2010, but also including subsequent years.

An example is the tourism industry: The tourism industry was affected along the entire Gulf Coast, even for those areas where BP oil did not reach. This is because the tourist public believed that BP oil would hit the entire Coast and, based on that perception, decided to change their vacation plans for the summer of 2010, and beyond, as a result of the BP oil spill. In other words, the threat of BP oil was enough to deter people from coming to the Gulf Coast. Accordingly, literally hundreds of thousands of tourists changed and modified their vacation plans so that summer vacations were taken in other regions. This effect persisted even until 2011, and still persists today.

In addition, the effect of the BP oil spill on the seafood industry cannot be overestimated. People all over the United States, who eat shrimp and oysters and Gulf of Mexico seafood, perceived that Gulf of Mexico seafood was tainted and nutritionally defective. Accordingly, consumers all over the United States refused to eat, accept, buy or consume Gulf Coast seafood. This perception had an effect on the Gulf Coast Seafood industry. This consumer issue was in addition to the direct impact on the Gulf Coast seafood industry (namely, fishing waters were closed for substantial parts of 2010 and the fisheries were negatively impacted with regard to spawning and reproduction).

In addition to the impact on tourism and seafood, there was also an impact on the energy industry. As a direct result of the BP oil spill, the energy industry effectively was shut down in the Gulf of Mexico. The regulatory environment stiffened and the moratorium was placed in effect, and all because of the BP oil spill.

The catastrophic effect on the tourism industry, the energy industry, and the seafood industry, affected every other industry, business, person, individual, worker, employee and taxpayer within the Gulf Coast area.

As employees of governmental entities, our clients' wages and benefits are dependent upon the municipalities' ability to generate revenue in various ways. For example, sales tax. When sales of products and/or services go down, the revenue of the governmental entity goes down. Likewise, some governmental entities generate revenue through property taxes. When economic activity in a county goes down, there is a corresponding decrease in property tax values and, therefore, a corresponding decrease in property tax revenue. Therefore, the well-being of any particular employee of a governmental entity and/or municipality is tied to the well-being and economic activity of the economic interests within that governmental entity.

Here, there was a slowdown in economic activity. That slowdown in economic activity resulted in lower tax revenues. That lack of growth was both because outside entities delayed and/or refused to come into the area and because the entities that were already in the area experienced slower growth than anticipated.

Some of this impaired revenue shows up in 2010, and some of this impairment shows up in years after 2010. Our clients have a direct tie to the Gulf Coast and the Gulf Coast economy, and accordingly makes this claim for damages.

Therefore, employees of governmental entities are dependent upon revenue from these people and/or businesses also suffered. Accordingly, our clients being presented herein have damages as a result of the BP oil spill. That is reflected in the significant drop in wages as reflected herein on their W-2's and/or payroll records. Moreover, our clients suffered the loss of long-term benefits such as health care, dental care, and longevity pay. Finally, our clients have suffered and will continue to suffer

As demonstrated above, the impacts of the BP spill on the tourism, seafood, and energy industries had a tremendous adverse effect on the municipalities of the Gulf Coast, and in turn, a direct effect on the wages of benefits of our clients.

The Mississippi coastal economy is an interwoven network of commercial and residential development, tourism, and natural fisheries industries. The physical damage upon the area's natural resources by the BP oil spill have negatively impacted the infrastructure of the coastal economy at all levels and in all business sectors.

That BP oil spill effect not only affected 2010, but carried forward. It is unknown at this time exactly how far that effect will proceed into the future.

These attachments are incorporated by reference to this presentment for all purposes. Our clients also incorporate into these Claims all information and documentation previously provided to either BP or GCCF, and if any further documentation be requested, we will be happy to cooperate.

This will confirm that the undersigned counsel is the attorney of record for the attached list of clients and with regard to BP's ability to communicate with our clients, we will be representing our client in connection with this claim and/or funding request and ask that BP direct all communications through the undersigned counsel of record using the address and contact information herein.

Please consider this presentment under the OPA. Thank you very much for your consideration in this matter, and we look forward to hearing from you.

Sincerely,

HORNSBY WATTS, PLLC

/s/ Mark V. Watts

MARK V. WATTS