# IN RE: OIL SPILL by "Deepwater Horizon"
# DIRECT FILING SHORT FORM[1]

Authorized by Order of the Court, Civil Action No. 10 md 2179 Rec. Doc. 982
(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)

| MDL 2179 | SECTION: J | JUDGE CARL BARBIER |
|---|---|---|

## CLAIM IN LIMITATION--JOINDER IN MASTER ANSWER--INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE FORM

By submitting this document, I am asserting a claim in *Complaint and Petition of Triton Asset Leasing GmbH, et al.*, No. 10-2771; adopt and incorporate the Master Answer [Rec. Doc. 244] to the *Complaint and Petition of Triton Asset Leasing Gmbh, et al.*, in No. 10-2771; and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 879] for private economic losses ("B1 Bundle") filed in MDL No. 2179 (10 md 2179); and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 881] for post-explosion injuries ("B3 Bundle") filed in MDL No. 2179 (10 md 2179).

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| | | | |

| Phone Number | E-Mail Address |
|---|---|
| | |

| Address | City / State / Zip |
|---|---|
| | |

**INDIVIDUAL CLAIM** ☐    **BUSINESS CLAIM** ☑

| Employer Name | Business Name<br>PrimeSouth Bank |
|---|---|
| Job Title / Description | Type of Business<br>Financial Institution |
| Address | Address<br>1217 Gilmer Avenue |
| City / State / Zip | City / State / Zip<br>Tallassee, Alabama 36078 |
| Last 4 digits of your Social Security Number | Last 4 digits of your Tax ID Number<br>5051 |

| Attorney Name<br>A. Brantley Fry | Firm Name<br>Beasley, Allen, Crow, Methvin, Portis, and Miles, P.C. |
|---|---|
| Address<br>250 Commerce Street | City / State / Zip<br>Montgomery, Alabama 36104 |
| Phone Number<br>334.269.2343 | E-Mail Address<br>brantley.fry@beasleyallen.com |

| Claim filed with BP?   YES ☑   NO ☐ | Claim Filed with GCCF?:   YES ☐   NO ☑ |
|---|---|
| If yes, BP Claim No.: 1101655 | If yes, Claimant Identification No.: |

**Claim Type (Please check all that apply):**

☑ Damage or destruction to real or personal property
☑ Earnings/Profit Loss
☐ Personal Injury/Death

☐ Fear of Future Injury and/or Medical Monitoring
☐ Loss of Subsistence use of Natural Resources
☐ Removal and/or clean-up costs
☑ Other: Loss of property value

---

[1] This form should be filed with the U.S. District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130, in Civil Action No. 10-8888. While this Direct Filing Short Form is to be filed in CA No. 10-8888, by prior order of the Court, (Rec. Doc. 246, C.A. No. 10-2771 and Rec. Doc. 982 in MDL 2179), the filing of this form in C.A. No. 10-8888 shall be deemed to be simultaneously filed in C.A. 10-2771 and MDL 2179. Plaintiff Liaison Counsel, after being notified electronically by the Clerk of Court of the filing of this Short Form, shall promptly serve this form through the Lexis Nexis service system on Defense Liaison.

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Brief Description:**

1. For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury. For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred. For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

On June 28, 2013, Plaintiff made formal presentment of its claims to BP, and Plaintiff has filed a Complaint for damages in the Middle District of Alabama. Out of an abundance of caution, Plaintiff hereby this Short Form Joinder as follows:

For a description of the nature of the injury, please see Attachment A to this form.

2. For personal injury claims, describe the injury, how and when it was sustained, and identify all health care providers and employers 2008 to present and complete authorization forms for each.

3. For post-explosion claims related to clean-up or removal, include your role in the clean-up activities, the name of your employer, and where you were working.

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Please check the box(es) below that you think apply to you and your claims:**
**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

- ☐ 1. Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.
- ☐ 2. Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.
- ☐ 3. Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.
- ☐ 4. Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.
- ☐ 5. Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.
- ☐ 6. Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.
- ☐ 7. Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.
- ☐ 8. Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.
- ☒ 9. Bank, financial institution, or retail business that suffered losses as a result of the spill.
- ☐ 10. Person who utilizes natural resources for subsistence.
- ☐ 11. Other:_____

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Cleanup (Bundle B3)**

- ☐ 1. Boat captain or crew involved in the Vessels of Opportunity program.
- ☐ 2. Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.
- ☐ 3. Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.
- ☐ 4. Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.
- ☐ 5. Resident who lives or works in close proximity to coastal waters.
- ☐ 6. Other:_____

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 11), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

A Brantley Fry
Claimant or Attorney Signature

A. Brantley Fry
Print Name

August 23, 2013
Date

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

# ATTACHMENT A

**The Economic Impact of the Oil Spill and Injuries to PrimeSouth Bank**

1. The Oil Spill has and continues to impact the Gulf Coast's and Alabama and Florida's shorelines, threatening Plaintiff's business operations.

2. Plaintiff is a commercial and retail bank currently operating three offices in Elmore County, Alabama.

3. Plaintiff, as are all financial institutions, is required to continuously assess and manage its loan portfolio risk as a part of its normal operating procedures pursuant to FDIC regulations and Financial Accounting Standards.

4. Plaintiff provides financial and banking services to customers along the Coastal Zone. Plaintiff's customers depend on tourism, tourism related activities, and the general Gulf Coast economy as a significant source of income. The Spill and the resulting contamination of the Gulf of Mexico coastline have caused, are causing, and will continue to cause a loss of income for individuals and entities along the Gulf Coast, including those who rely on the Gulf of Mexico and/or its marine life for their livelihoods. This loss of income has, is, and will continue to result in a loss of revenue and earnings for Plaintiff.

5. The Gulf Coast is highly dependent on tourism, the main attraction being its beaches. Plaintiff's customers in the Gulf Coast area depend on tourism-related activities as a significant source of income. Those customers were significantly impacted by the Oil Spill, making it difficult for the customers to support their debt service. As a result, Plaintiff has experienced increases in charge offs as well as decreases in the volume of loans, loan interest and ATM fees, a significant source of its income. These damages were incurred as a direct and foreseeable result of the Oil Spill.

6. Plaintiff incurred financial write-downs related to real estate owned by Plaintiff as a direct and foreseeable result of the Oil Spill. Unlike individuals who hold real estate but do not recognize a financial gain or loss until the property is sold, financial institutions recognize diminution in value of Other Real Estate Owned / Foreclosed Real Estate actively in their financial statements as a recognized loss once it is known or quantified and reduces its income to reflect the decrease in the properties' fair market value.

7. Plaintiff incurred additional expenses related to foreclosed real estate property such as: appraisal costs for updated appraisals as a result of the Oil Spill; holding costs (insurance, maintenance, etc.) for the extended period of time required to hold until sold; and attorney fees. These expenses were incurred as a direct and foreseeable result of the Oil Spill.

8. Plaintiff incurred decreases in loan interest income on non-performing loans as a direct and foreseeable result of the Oil Spill.

9. Plaintiff incurred decreases in loan and other fee income as a direct and foreseeable result of the Oil Spill.

10. As a direct result of the Spill, Plaintiff's customers were economically impacted making it difficult for the customers to support their debt service. As a result, Plaintiff experienced significant losses due to the Spill including, but not limited to: the allocation of specific and general reserves, non-accrual loans, loan charge-offs, and other real estate owned write-downs and related expenses. These losses are required under Federal Banking Guidelines to be reserved and accounted for in the financial statements of the entity as the losses become known.

11. Plaintiff incurred charge-offs or increases to its loan loss reserves due specifically to the actual and projected losses on loans as a direct and foreseeable result of the Oil Spill.

12. As a result of the Spill, additional general and specific reserves were allocated to the Plaintiff's loan balance sheet pursuant to Accounting Standards Codification ("ASC") 450-20 and ASC 310-10. These additional reserves represent capital that could no longer be utilized to generate revenue and earnings through the regular course of business.

13. Pursuant to ASC 310, a loan is impaired when, based on current information and events, it is probable that a creditor will be unable to collect all amounts due according to the contractual terms of the loan agreement. Due to the Spill, the Plaintiff's customers were financially harmed. This event made it probable that some customers would be unable to comply with the terms of their loan agreements. As a result, additional specific reserves were allocated to their loans. These additional oil spill related reserves are realized as an actual loss and further impact the future earning capacity of the Plaintiff.

14. Plaintiff suffered losses from non-performing loans from customers impacted by the spill and who were no longer able to make timely payments. Plaintiff was unable to realize the expected interest income on these nonaccrual loans following the oil spill.

15. Plaintiff experienced an increase in loan charge-offs subsequent to the Spill. In addition to forgone interest income, Plaintiff was forced to write off the principal of loans as well for customers adversely impacted by the Spill and who could no longer comply with the terms of the loan agreement.

16. Due to the impact of the recession prior to the Spill, Plaintiff had foreclosed on various properties and maintained ownership of these properties at the time of the Spill. Indications prior to the spill were that values of coastal real estate were stabilizing. However, due to the Spill, coastal real estate values dramatically decreased in value. The properties' loss in value caused the Plaintiff to expend significant sums of money appraising the properties and

to adjust the carrying value of the real estate down to fair market value, thus creating significant losses in 2010 and subsequently. Oil from the *Deepwater Horizon* Oil Spill directly impacted the shores of the Gulf Coast. This impact caused a decrease of property value. As a result of the Spill, properties held by Plaintiff suffered diminution in value and these losses were recognized on Plaintiff's financial statements as they became known.

17. Plaintiff, as a financial institution, realizes diminution in value of Other Real Estate Owned / Foreclosed Real Estate ("OREO") actively in its financial statements as a recognized loss once it is known or quantified and must reduce its income to reflect the decrease in the properties' fair market value pursuant to Federal guidelines.

18. Plaintiff owns and/or leases real property. The Spill and the Spill response have caused damage to real property owned and/or leased by Plaintiff in the Coastal Zone, resulting in physical damage and diminution of property values. Not only have oil and other contaminants polluted real properties throughout the Coastal Zone, but pieces of the destroyed *Deepwater Horizon* vessel have come ashore in some places, damaging real property. The Spill response has also resulted in intrusion on and damage to property, including the annoyance, disruption and physical damage caused by vehicles, heavy machinery, boom, staging areas, and other materials and activities on or near properties owned by the Plaintiff.

19. The types of damages contained herein are by no means exhaustive. There are many other forms of harm or damage from the Spill that may be unknown, and Plaintiff reserves the right to amend this Complaint as additional information becomes available.

20. As a direct and proximate result of the Deepwater Horizon Incident and the Defendants' acts and omissions, Plaintiff incurred expenses assessing damages resulting from the Spill.

21. As a direct and proximate result of the Deepwater Horizon Incident and the Defendants' acts and omissions, the Plaintiff was forced to hire undersigned counsel and the undersigned law firm and has incurred attorneys' fees and costs.

## "PRESENTMENT" UNDER OPA

22. To the extent required by law, and/or by consent and/or stipulation by BP, Plaintiff has satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b) by the submission of their claims to the BP OPA Claims Program.

23. In particular, on June 29, 2013, Plaintiff submitted a Claim in writing and signed in ink, including a "sum certain" and a description of the claim as well as supporting documentation to BP as the "responsible party" under OPA via U.S. Express Mail (Tracking Number: EI 108757638 US US) and e-mail (see Attachment 1).

24. BP denied the claim on August 12, 2013.

# ATTACHMENT 1

**Tracie Harrison**

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | bpclaimsprogram@bp.com |
| **Sent:** | Saturday, June 29, 2013 8:49 AM |
| **Subject:** | Relayed: PrimSouth Bank Presentment |

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

bpclaimsprogram@bp.com (bpclaimsprogram@bp.com)

Subject: PrimSouth Bank Presentment